# EXHIBIT A

Home                    Search by Justices                    Recent Additions                    Case Type Search



**VUZIX CORPORATION - V. - RICARDO ANTONIO PEARSON**

**INDEX NO.:**             **153125-2018**

**KEY TO LINKS BELOW**

SEARCH AGAIN :  [                    ]  [Search]

CLICK ON COLUMN TITLE TO SORT TABLE

**COUNTY CLERK MINUTES :**

OPEN CASE @ NYSCEF SITE

| COUNTY CLERK INFORMATION |
| --- |
| FULL CAPTION |
| SCANNED DOCUMENTS |
| CC - CIVIL INDEX INQUIRY |

| COURT INFORMATION |
| --- |
| CASE CAPTION |
| CASE INFORMATION |
| ATTORNEYS |
| APPEARANCES |
| MOTIONS |
| COMMENTS |
| ASSIGNED JUSTICE |



| SORT BY | DOC # | DATE DOCUMENT FILED | DOCUMENT | DESCRIPTION | MOTION # |
| --- | --- | --- | --- | --- | --- |
| 1 | 21 | 2019-01-08 | AFFIRMATION/AFFIDAVIT OF SERVICE | - | - |
| 2 | 20 | 2018-12-03 | ORDER - EXPARTE | ORDER DIRECTING MANNER OF SERVICE AND EXTENSION OF TIME TO SERVE. | - |
| 3 | 19 | 2018-11-30 | RJI -RE: OTHER EX PARTE APPLICATION | - | - |
| 4 | 18 | 2018-11-30 | MEMORANDUM OF LAW IN SUPPORT | - | - |
| 5 | 17 | 2018-11-30 | EXHIBIT(S) | VOLUNTARY DISMISSAL IN FEDERAL ACTION | - |
| 6 | 16 | 2018-11-30 | EXHIBIT(S) | LINKEDIN PROFILE PAGE | - |
| 7 | 15 | 2018-11-30 | EXHIBIT(S) | MOXREPORTS CONTACT PAGE | - |
| 8 | 14 | 2018-11-30 | EXHIBIT(S) | MOXREPORTS BIOGRAPHY PAGE | - |
| 9 | 13 | 2018-11-30 | EXHIBIT(S) | MOXREPORTS HOME PAGE | - |
| 10 | 12 | 2018-11-30 | EXHIBIT(S) | SEEKING ALPHA'S TERMS OF USE | - |
| 11 | 11 | 2018-11-30 | EXHIBIT(S) | NYS DIV. OF CORP. INFO. RE: SEEKING ALPHA | - |
| 12 | 10 | 2018-11-30 | EXHIBIT(S) | INTELLIUS REPORT | - |
| 13 | 9 | 2018-11-30 | EXHIBIT(S) | THIRD ATTEMPTED AFFIDAVIT OF SERVICE | - |
| 14 | 8 | 2018-11-30 | EXHIBIT(S) | SEEKING ALPHA PROFILE PAGE | - |

| SORT BY | DOC # | DATE DOCUMENT FILED | DOCUMENT | DESCRIPTION | MOTION # |
|---|---|---|---|---|---|
| 15 | 7 | 2018-11-30 | EXHIBIT(S) | SECOND ATTEMPTED AFFIDAVIT OF SERVICE | - |
| 16 | 6 | 2018-11-30 | EXHIBIT(S) | FIRST ATTEMPTED AFFIDAVIT OF SERVICE | - |
| 17 | 5 | 2018-11-30 | EXHIBIT(S) | INTELLIUS REPORT | - |
| 18 | 4 | 2018-11-30 | EXHIBIT(S) | SUMMONS AND COMPLAINT | - |
| 19 | 3 | 2018-11-30 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP | - | - |
| 20 | 2 | 2018-11-30 | EXPARTE ORDER (PROPOSED) | - | - |
| 21 | 1 | 2018-04-05 | SUMMONS + COMPLAINT | - | - |

Documents that have been entered into the minutes of the County Clerk bear a stamp stating "Filed," followed by the date of filing (entry date) and the words "New York County Clerk's Office." Except in matrimonial cases (documents for which are not included in Scroll), judgments are not entered by the County Clerk until an attorney for a party to the case appears at the Judgment Clerk's desk (Rm. 141B at 60 Centre Street) and requests entry. Copies of unfiled judgments bearing a stamp stating "Unfiled Judgment" and a notice to counsel may be found in Scroll. For technical reasons, some long form orders or other documents that were scanned in the early phase of this project may be categorized here as a "Decision."

NEW SEARCH

60 Centre Street, New York NY 10007 Copyright © 2006 Unified Court System

# DOCKET NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x
VUZIX CORPORATION,

                              Plaintiff,

      -against-

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                        Defendant.
--------------------------------------------------------------------x

Index No.:
Date Purchased:_____

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your answer, or, if the Verified Complaint is not served with this Summons, to serve a notice of appearance, upon the Plaintiff's attorney within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

    The basis for venue is that this action is based on the tortious acts and conduct of Defendant that have caused substantial injury to Plaintiff that occurred within this County. In addition, Defendant transmitted his defamatory articles to Seeking Alpha Inc., the owner and operator of the eponymous website, which has its headquarters at 345 Seventh Avenue, New York, New York.

Dated: New York, New York
      April 5, 2018

Respectfully submitted,

SICHENZIA ROSS FERENCE KESNER LLP

By: _____

    Irwin Weltz
    Thomas Scot Wolinetz
    1185 Avenue of the Americas, 37th Floor
    New York, New York 10036
    Tel. No. (212) 930-9700

*Attorneys for Plaintiff*
*Vuzix Corporation*

To:   Ricardo Antonio Pearson *a/k/a* Richard Pearson
      191 Broadway, Apt 1E
      Dobbs Ferry, New York 10522

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------x
VUZIX CORPORATION,

                              Plaintiff,

      -against-

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                        Defendant.
----------------------------------------------------------------------x

Index No.:
Date Purchased:_____

**VERIFIED COMPLAINT**

Plaintiff Vuzix Corporation ("Vuzix"), by and through its undersigned attorneys, as and for its Verified Complaint against Defendant Ricardo Antonio Pearson *a/k/a* Richard Pearson ("Pearson"), alleges and states as follows:

## NATURE OF THE ACTION

1.     Vuzix brings this action to recover substantial damages against Pearson for his false and defamatory statements. Vuzix is a leading supplier of Smart-Glasses and Augmented Reality technologies and products for the consumer and enterprise markets. It is a growing and well-run company with a seasoned management team, notable investors and strategic partners. In fact, Vuzix has received numerous awards and accolades for its products and designs, and holds 66 patents (43 additional patents pending) and numerous IP licenses in the near-eye display field. Notably, in January 2015, Intel Corporation purchased $24,813,000 of Vuzix's Series A Preferred Stock, and in December 2017 Vuzix entered into a 3-year supply agreement with Toshiba Information Equipment (Hangzhou) Co., Ltd. ("Toshiba") for a Smart Glasses designed and built for them by Vuzix. Vuzix's total revenues have also been growing as Vuzix's overall sales for 2017 exceeded $5 million, which is a 160% increase over the prior year.

2.  Pearson recently published false and defamatory "short and distort" articles about Vuzix via *Moxreports.com* and *Seeking Alpha* (the "Pearson Articles"). Pearson's scheme is that he takes a short position in shares of public companies and then publishes false and defamatory articles about such public companies to drive the share price down in order to obtain a hefty profit for himself when he covers his short position. This is exactly what Pearson did to Vuzix. In fact, as a direct and proximate consequence of Pearson's lies, Vuzix's share price quickly dropped in value from $7.65 to $5.15, a decrease of over 30% in per share value.

## PARTIES

3.  Plaintiff Vuzix Corporation is a Delaware Corporation, with its principal place of business located at 25 Hendrix Road, West Henrietta, New York 14586. Vuzix is publicly traded on NASDAQ under the symbol "VUZI."

4.  Upon information and belief, Defendant Ricardo Antonio Pearson *a/k/a* Richard Pearson is an individual residing at 191 Broadway, Apt 1E, Dobbs Ferry, New York 10522. Pearson used the *Moxreports.com* and *Seeking Alpha* to spread his false and defamatory statements about Vuzix. *Moxreports.com* is a website run by Pearson. *Seeking Alpha* is an internet website focused on the financial markets that publishes content written by its members.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over Pearson pursuant to CPLR § 301 because Pearson is a resident of New York.

6.  Venue is proper in this Court because this action is based on the tortious acts and conduct of Pearson that have caused substantial injury to Vuzix that occurred within this County. In addition, Pearson transmitted his defamatory articles to Seeking Alpha Inc., the

2

owner and operator of the eponymous website, which has its headquarters at 345 Seventh Avenue, New York, New York.

## BACKGROUND

### Vuzix Is An Industry Leader

7.     Founded in 1997, Vuzix is engaged in the design, manufacture, marketing and sale of wearable display devices. These devices are worn like eyeglasses and feature built-in video screens that enable the user to view and interact with video and digital content, including movies, video games, computer data and the Internet.  Vuzix's wearable display products are known commercially as Śmart and Augmented Reality Glasses, Video iWear (Eyewear) and head mounted displays (or HMDs). These products are capable of providing virtual, large high-resolution screens and yet they can fit in a user's pocket or purse and can be viewed practically anywhere and at anytime.

8.     Vuzix's devices can also be used for Augmented Reality applications in which the user has their real world view augmented with computer generated information. Vuzix's products are designed to work with mobile electronic devices, including cell phones, laptop computers, tablets, portable media players and gaming systems.

9.     Vuzix produces and sells two main types of wearable display products: Smart Glasses for a variety of enterprise and commercial users and applications, including Augmented Reality, and Video Viewing glasses for on-the-go users as mobile displays for entertainment and gaming. Vuzix's products are available with varying features, including with and without application running computer processors, and are offered as either monocular or binocular display systems. With its origins in defense research and development for next-generation

3

military display solutions, Vuzix is now focused on pursuing the enterprise and consumer markets for wearable computing and personal Augmented Reality display devices.

10. Since 2005, Vuzix has won numerous Consumer Electronics Show ("CES") awards for innovation, as well as several wireless technology innovation awards, amongst others.

11. As a respected industry pioneer and leader, Vuzix maintains a strong intellectual property portfolio consisting of 66 patents issued and an additional 43 pending. Some of its competitive technology differentiators include Passive and Dynamic Holographic waveguide optics for existing micro displays, user interface gesture control and ambient light transmission control, LED micro scanning display engine, large field of view HD optics, and full color waveguide optics with active development plans for curved see-through optical imaging waveguides.

12. The most recent product introduced by Vuzix is the Vuzix Blade™ (the "Blade"). The Blade is the first Augmented Reality Smart Glasses featuring Vuzix's advanced waveguide optics for hands-free mobile computing connectivity and location aware Augmented Reality content. The Blade provides the user with the wide range of features and capabilities in a natural glasses form factor, and such features range from basic text messaging and answering the phone to overlaying mapping directions, menus, weather, events, stocks, video conferencing, sports updates, social feeds, bio-metrics and more, right in front of the user.

13. The Blade allows the user to intuitively navigate via simple swipes and taps on its eyeglass temple frame, or leverage voice controls and external AI systems. This allows users to leave their phones in their pockets for most functions and adds the ability to connect the information being presented to the real world, including that from cloud based AI solutions like Amazon Alexa. The Blade will help track a user's health levels for fitness activities to getting

4

the *Yelp* score for the user's next dinner and with its built in camera will easily allow social media sharing by simply recording the events at hand. The Blade also delivers a "hands free" connection of the digital world to the real world, providing unprecedented access to location-aware connected information. The Blade's private, see through, full color, bright, high resolution display screen performs both indoors and outdoors.

14.    Vuzix is managed by a seasoned team of experienced and dedicated professionals, including:

a.    ***Paul J. Travers***—Paul J. Travers is a founder, the Chief Executive Officer, President and a Director of Vuzix. Mr. Travers has served as Vuzix's President and Chief Executive Officer since 1997 and as a member of the board of directors since November 1997. Prior to the formation of Vuzix, Mr. Travers founded both e-Tek Labs, Inc. and Forte Technologies Inc. He has been a driving force behind the development of Vuzix's products for the consumer market. With more than 30 years of experience in the consumer electronics field, and 15 years of experience in the virtual reality and virtual display fields, he is a nationally recognized industry expert. He holds an Associate degree in engineering science from Canton, ATC and a Bachelor of Science degree in electrical and computer engineering from Clarkson University.

b.    ***Grant Russell***—Grant Russell is the Chief Financial Officer, Executive Vice-President, Treasurer and a Director of Vuzix. Mr. Russell has served as Vuzix's Chief Financial Officer since 2000 and as a member of the board of directors since April 2009. From 1997 to 2004, Mr. Russell developed and subsequently sold a successful software firm and a new concept computer store and cyber café. In 1984, he co-founded Advanced Gravis Computer ("Gravis"), which, under his leadership as President, grew to become the world's largest PC and Macintosh joystick manufacturer with sales of $44,000,000 worldwide and 220 employees. Gravis was listed on NASDAQ and the Toronto Stock Exchange. In September 1996, Gravis was acquired by a US-based Fortune 100 company in a successful public tender offer. Mr. Russell holds a Bachelor of Commerce degree in Finance from the University of British Columbia and is both a US Certified Public Accountant and a Canadian Chartered Accountant.

c.    ***Paul Boris***—Paul Boris is the Chief Operating Officer and a Director of Vuzix. Mr. Boris joined Vuzix after spending two plus years at General Electric ("GE") in a variety of executive leadership roles including CIO of Advanced Manufacturing Strategy, Site Leader of the Advanced Manufacturing and Software Technology Center and most recently as the Vice President of

5

Manufacturing Industries of GE Digital. As CIO of Advanced Manufacturing Strategy for GE, he focused on driving GE's innovative factory strategy to increase productivity and deliver the optimization of assets and operations. In his most recent role, Mr. Boris focused on defining and enabling GE's commercial strategy for Brilliant Manufacturing by working with companies to accelerate their own digital transformation. Prior to working at GE, Mr. Boris spent over eight years in a variety of executive roles overseeing manufacturing and operations strategy at SAP. Mr. Boris was the dynamic force behind the Perfect Plant initiatives at SAP where he was Global Vice President, Enterprise Operations Management. He served as director at the National Association of Manufacturers, the US's largest industrial trade association for just under five years to 2014. Mr. Boris' breadth of manufacturing operations and technology-related capabilities and experiences enable him to bring significant value to Vuzix.

15.     Vuzix has attracted the attention of significant investors and strategic partners. On January 2, 2015, Intel Corporation purchased $24,813,000 of Series A Preferred Stock. Each share of Series A Preferred Stock is convertible into 100 shares of common stock and votes on an as-converted basis with the common stock. If converted, this represents a 15% ownership stake based upon the current number of outstanding common shares.

16.     On December 6, 2017, Vuzix entered into a supply agreement (the "Master Supply Agreement" or "MSA") with Toshiba. The MSA sets forth the general terms and conditions, including with respect to product quality, product changes, minimum order quantities and deliveries and pricing pursuant to which Vuzix will sell to Toshiba and its affiliates the Smart Glasses product that was developed pursuant to a development agreement between Vuzix and a Toshiba affiliate. Any such sales will be made pursuant to purchase orders which Toshiba may submit to Vuzix in its discretion.

17.     Pursuant to the MSA, Vuzix agreed to sell such product exclusively to Toshiba for a period of up to 12 months, subject to Toshiba's submitting a minimum of $5,000,000 of purchase orders. The product is being co-branded and labelled as a Toshiba product, "Powered

6

by Vuzix" and is expected to be sold on a global basis by Toshiba Client Solutions group, which will bundle the Smart Glasses unit with a specially designed mobile edge computing system that Toshiba principally developed for this program. The MSA has a three year term, subject to earlier termination under certain conditions. Vuzix recently received its first purchase order from Toshiba totaling $1,068,000.

18.     Vuzix continues to grow its business and operations. In fact, overall revenues for 2017 exceeded $5 million, which is a 160% increase over the prior year, and Vuzix now has 63 full-time employees with offices in New York, the United Kingdom, Spain and Japan.

**Pearson's Short And Distort Scheme Directed At Vuzix**

19.     This action arises from a classic "short and distort" scheme. In such a scheme, short-sellers borrow securities, sell them and then drive the price of their target company's stock down by spreading materially false, misleading, defamatory and disparaging information about the company. Once the company's stock drops to an artificially low price, ideally zero, the short-sellers repurchase and return the borrowed securities, pocketing the difference. This is precisely what Pearson has done and continues to do against Vuzix.

20.     On March 16, 2018, Pearson published a short and distort "report" on *Moxreports.com* and on March 20, 2018 Pearson published another hit piece entitled "*Vuzix: Far Worse Than Anyone Had Imagined*" on *Seeking Alpha*. *Seeking Alpha* requires no educational, professional or journalistic credentials to publish on its website. *Seeking Alpha* does not check into the factual authenticity of the posted content or validate that the author's opinions are worthy of merit. Indeed, *Seeking Alpha* disclaims any responsibility for the content of what appears on its website.

7

21.   The Pearson Articles were distributed globally on the Internet. Upon information and belief, the Pearson Articles have been disseminated or linked to other websites, as well.

22.   The Pearson Articles are riddled with false, misleading and defamatory statements about Vuzix. Pearson was motivated by a malicious desire to destroy Vuzix's business and depress its share price so that Pearson could profit from short selling his shares of Vuzix's stock. Not surprisingly, Pearson specifically states in the Pearson Articles that "[t]he author is short VUZI."

**The False And Defamatory Statements**

23.   The statements, implications and meanings set forth in the Pearson Articles that are identified below are among the many false and libelous statements in the Pearson Articles. Pearson knew and intended that the statements set forth in the Pearson Articles, including those identified below, would convey false and defamatory implications and meanings concerning Vuzix to any person reading it or being informed of its contents, as to cause panic and uncertainty regarding investment in Vuzix, including and especially in the eyes of Vuzix shareholders.

24.   The statements, implications and meanings set forth in the Pearson Articles, including those identified below, were published by Pearson with malicious motives, as part of Pearson's desire to damage Vuzix and decrease its share price for his own personal gain and to the detriment of Vuzix's shareholders.

25.   At the time of the publication of the Pearson Articles, Pearson acted with actual malice in that Pearson knew that the defamatory statements, implications and meanings, including those identified below, were false, and nonetheless published them in reckless

8

disregard of their falsity, or alternatively, published them without reasonable grounds for believing that the statements, implications and meanings were true.

**False And Defamatory Statements, Implications And Meanings**
**Regarding Vuzix's General Business and Operations**

26.    Pearson falsely states in the *Seeking Alpha* article that: "Vuzix is a stock promotion which shows blatant signs of fraud. The setup here is nearly identical to the dozens of other stock frauds or promotions I have exposed here at Seeking Alpha over the past few years." This statement is both false and defamatory.

27.    Vuzix is not a fraud. It has been in business for over 20 years and is a vibrant, growing and well-managed company with award winning products and technologies.

28.    These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix, at its core, is a fraud. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications And Meanings**
**Regarding Vuzix Going Public**

29.    Pearson falsely states in the *Seeking Alpha* article that: "Vuzix Corp. is a reverse merger stock promotion which shows blatant signs of fraud." This statement is both false and defamatory.

30.    In fact, Vuzix became a public entity by its initial public offering - and not a reverse merger - on December 24, 2009 with its filing and acceptance of its S-1 Registration statement by the United States Securities and Exchange Commission (the "SEC"). Vuzix initially commenced trading on the TSXV in Canada thereafter and became listed on the OTC markets in 2010 before subsequently up-listing to the NASDAQ on January 28, 2015.

9

31.     Soon after the publication of the *Seeking Alpha* article, *Seeking Alpha* acknowledged the falsity of this statement by virtue of the addition of an "Editor's Note" stating that "This article previously called Vuzix a reverse merger company.  We have removed that description from the article."

32.     This statement was intended by Pearson to be understood by members of the public who read or were informed of it to have false and defamatory implications and meanings, including that Vuzix, at its core, is a fraud.  This statement, implication and meaning is false and defamatory.

**False And Defamatory Statements, Implications And Meanings**
**Regarding Vuzix's Revenues**

33.     Pearson states in the Pearson Articles that Vuzix has "Revenues: $0.5 million per quarter (negative gross margins)."  This statement is both false and defamatory.

34.     In fact, Vuzix's revenues by quarter in 2017 were approximately $1.2 million (Q1), $1.3 million (Q2), $1.4 million (Q3) and $1.6 million (Q4).  Further, as shown, overall revenues for 2017 exceeded $5 million, which is a 160% increase over the prior year.

35.     This statement was intended by Pearson to be understood by members of the public who read or were informed of it to have false and defamatory implications and meanings, including that Vuzix is a fraud with minimal revenue and not worthy of investment.  This statement, implication and meaning is false and defamatory.

**False And Defamatory Statements, Implications and Meanings**
**Regarding Vuzix's Agreement With Toshiba**

36.     Pearson falsely claims in the Pearson Articles that Vuzix is paying Toshiba $5 million as part of the MSA with Toshiba.  He states in the *Seeking Alpha* article that: "Meanwhile, Vuzix has made it a point to aggressively tout a $5 million 'purchase agreement'

10

with Toshiba. In fact, this agreement is really just manufacturing agreement whereby Vuzix is the one paying $5 million to Toshiba. The wording states clearly that Toshiba will 'fulfill the initial purchase order received by Toshiba'." These statements, implications and meanings are false and defamatory.

37.     In fact, Vuzix is not paying $5 million to Toshiba. Vuzix has a business relationship with Toshiba that includes the MSA requiring Toshiba to place a $5 million minimum of orders over the first 12 months of the MSA in order to maintain exclusivity for a custom pair of Smart Glasses that was developed and manufactured by Vuzix, and is being delivered to Toshiba by Vuzix. These amounts will be in addition to the approximately $1.1 million Vuzix received from Toshiba Japan for the development of custom co-branded product, originally announced by Vuzix in February 2017. The engineering and development work has been completed and the product has moved into mass production at the request of Toshiba.

38.     As alluded to above, Vuzix received the first purchase order from Toshiba under the MSA on March 12, 2018 and filed a Form 8-K with financial details on the initial purchase order received from Toshiba, totaling approximately $1.1 million, on March 13, 2018.

39.     These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate agreement with Toshiba. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications And Meanings**
**Regarding The Blade**

40.     Pearson falsely claims in the *Seeking Alpha* article that: "The Blade appears to be a sham. NONE of the journalists could get the critical Alexa feature to function, yet precisely

11

ALL of them aggressively touted 'Alexa' in reviews. The second video appears to be taken in someone's apartment, not at CES at all." These statements, implications and meanings are false and defamatory.

41.    In fact, the Blade works as reported. A *Tom's Guide* Senior Editor interviewed Vuzix representatives at CES and recorded a video while operating Alexa voice assistant on the Blade from CES on the public tradeshow floor at Vuzix's exhibit booth. The video interview and Alexa demonstration on the Blade was recorded and uploaded to the *Tom's Guide YouTube* page on January 12, 2018. Vuzix also posted a 2.5-minute-long video demonstrating Alexa running on the Blade from CES on January 12, 2018, and on Vuzix's *YouTube* page on January 12, 2018. Vuzix later received email verification from *Tom's Guide* that the interview, video and recording were indeed recorded at CES 2018.

42.    Additionally, Pearson falsely claims in *Moxreports.com* that: "Vuzix's 'Blade' is a little more than a low tech mock-up which serves as a prop for journalists to conduct sham reviews. When these journalists 'reviewed' the product at CES, neither the Alexa feature nor the browser were functioning – not for any of the journalists. Yet these same journalists then widely touted the device in their mainstream bylines, overwhelmingly on the basis of the Alexa features that actually don't exist!" These statements are false and defamatory.

43.    In fact, the Blade supports Amazon Alexa. The full commercial release of the Blade will also ship with support for the Alexa voice assistant. There are multiple visual and actual examples of Alexa running on the Blade at CES 2018 and at the Mobile World Congress ("MWC"). Further, the Blade will commence volume production in the second quarter of 2018 at Vuzix's upstate New York plant.

12

44.     Vuzix has developed its own intellectual property portfolio, with over 20 years of manufacturing know-how, and proprietary processes, materials and equipment to create high performance waveguides and near-eye display products. Vuzix's technology, intellectual property portfolio and position in the marketplace gives Vuzix a leadership position in Augmented Reality and Smart Glasses products, waveguide optics and display engine technology.

45.     The Blade is the third product introduced by Vuzix that utilizes its waveguide optics and display engine technology, and is certainly not a "low tech mock-up." The first generation products were sold to the U.S. military and industrial customers as the M2000AR. Vuzix demonstrated the Blade, operating a series of demonstration apps, to an estimated 4,000 industry professionals, including independent members of the media at CES and MWC in January and February 2018, and received overwhelmingly positive feedback.

46.     Pearson's statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate products, that Vuzix has been lying to the public about the Blade and that the Blade is a scam. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications and Meanings**
**Regarding Vuzix's Public Relation Activities**

47.     Pearson falsely claims in the Pearson Articles that Vuzix has paid journalists or other media to give positive reviews about the Blade. These statements, implications and meanings are false and defamatory. In fact, Vuzix has never paid anyone to give its products a positive review.

13

48.    Pearson falsely claims in *Moxreports.com* that: "Showstoppers.com creates a private closed door events which look (in the photos) like real public conferences. Showstoppers then hand selects all the journalists and submits to Vuzix weeks before any event. There is zero possibility of anyone saying anything negative or questioning the obvious problems." These statements, implications and meanings are false and defamatory.

49.    Vuzix has no idea which journalists, if any, will visit its booth at Showstoppers media events. In fact, Vuzix did not attend the Showstoppers event at CES 2018 at all, but rather attended a similar event called Pepcom 2018. The Pepcom 2018 CES event took place the night before the claimed Showstoppers event. There is no preview of attending journalists issued by the organizers of any of these industry tradeshow events, nor is there any one-on-one appointment system where attendees can connect or book appointments with exhibiting firms. Vuzix was just one of hundreds of exhibitors showing its new products and technologies to industry journalists. The Pepcom event is very similar to Showstoppers and is one of the three trade events of this nature each year at CES that takes place during the week of the CES conference and each event independently invites as many as 1,500 journalists, analysts and key industry influencers, or more, to visit with hundreds of leading consumer electronics companies. Vuzix was not in any way, shape or form involved in filtering this group of attendees.

50.    Vuzix welcomed all journalists that stopped by and wanted a demo of the Blade or Vuzix M300 Smart Glasses at Pepcom (not Showstoppers) at CES 2018, as well as MWC where it also attended both Pepcom and Showstoppers in Barcelona, Spain in February 2018. Vuzix does not pre-screen or screen journalists before they visit its booth at such media events. By way of example, one journalist spent over an hour at Vuzix's booth hands-on testing and reviewing the Blade at Pepcom at CES 2018. The opinions of the media surrounding Vuzix at

14

CES 2018 and MWC were based solely on the media's independent evaluation and opinions. Vuzix neither encouraged nor paid for any journalists to attend Pepcom or Showstoppers events or its booths at either CES or MWC, or to write reviews of any of Vuzix's products.

51.    Pearson further falsely claims in the *Moxreports.com* that Vuzix through IRTH Communications ("IRTH") sponsored more than 30 articles from mainstream media outlets and that "Photos of leaked documents from IRTH Communications show IRTH bragging to potential clients that it was responsible for more than 30 articles from mainstream media outlets which all simultaneously erupted in connection with Margolis' 'Alexa ruse'. These specific IRTH sponsored articles were conspicuous in that they offered effusive praise for Vuzix but appeared as standard news on dozens of mainstream sites." These statements, implications and meanings are false and defamatory.

52.    In fact, Vuzix utilizes both internal and external communications firms, including, but not limited to, IRTH. The mainstream media outlets that covered the Blade were gained via normal media outreach (non-paid) which resulted in earned media coverage based on the product and the technology. The opinions of the media surrounding Vuzix at CES 2018 and MWC were based solely on the media's independent evaluation and opinions with zero input, influence, or payment from Vuzix or any of its external communications firms.

53.    These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate products, that Vuzix has been paying for positive reviews (and press), and that anything positive said about Vuzix or its products was paid for by Vuzix. These statements, implications and meanings are false and defamatory.

15

**Vuzix Has Been Damaged by Pearson's Malicious Defamation**

54.    As a direct and proximate result of Pearson's unlawful online smear campaign to sabotage Vuzix's business and crash its stock price while keeping a profit from his short position, Vuzix has suffered reputational harm and economic damages.  In the immediate aftermath of the publication of the false statements and libel in the Pearson Articles, the price of Vuzix's share's plummeted from $7.65 to $5.15, a loss of more than $80 million in equity market value.

55.    Further, it is possible several putative shareholder class action lawsuits will be filed against Vuzix, which will incorporate the false and defamatory statements in the Pearson Articles.  Vuzix is likely to incur substantial costs in dealing with these meritless suits, which were a likely foreseeable by-product of the Pearson Articles.

<div align="center">

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Libel)**

</div>

56.    Vuzix repeats and realleges the foregoing paragraphs as if fully set forth herein.

57.    Pearson wrongfully and maliciously intended to injure and defame Vuzix.

58.    The foregoing statements, implications and meanings were compiled and published by Pearson without privilege or authorization in a manner that was false, misleading and libelous, and moreover were published with actual malice and malicious intent, or with reckless disregard of their truth or falsity, to harm Vuzix's business and reputation, to cause panic and fear among Vuzix shareholders, and to cause its share price to decline so that Pearson could reap huge short-term gains from transacting in Vuzix's securities.

59.    By virtue of Pearson's false and defamatory statements Pearson damaged Vuzix's business and reputation, caused panic and fear among Vuzix shareholders,

16

encouraged other short sellers to join and rebroadcast his lies and short the stock, and caused Vuzix's share price to decline so that Pearson could reap huge short-term gains from transacting in Vuzix's securities.

60.     Further, it is possible several putative shareholder class action lawsuits will be filed against Vuzix, which will incorporate the false and defamatory statements in the Pearson Articles.  Vuzix is likely to incur substantial costs in dealing with these meritless suits, which were a likely foreseeable by-product of the Pearson Articles.

61.     As a direct and proximate result of the foregoing conduct, Vuzix has suffered general and special damages.

62.     As a result, Vuzix is entitled to monetary and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Libel Per Se)

63.     Vuzix repeats and realleges the foregoing paragraphs as if fully set forth herein.

64.     Pearson knowingly published false and derogatory statements about Vuzix's business and securities; and moreover, such statements were calculated to damage Vuzix's business and repution.

65.     As a proximate result of Pearson's unlawful conduct, Vuzix is entitled to monetary and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant, as follows:

(a)     A judgment for damages against Defendant in an amount to be demonstrated at trial, but in no circumstances less than the sum of $80,000,000.00 (Eighty Million Dollars);

(b)     Punitive damages in an amount to be

17

demonstrated at trial;

(c)     The costs, fees and disbursements of this action; and

(d)     For any such other relief in Plaintiff's favor that
        the Court may deem just, proper and equitable.

Dated: New York, New York
       April 5, 2018

                              Respectfully submitted,

                              SICHENZIA ROSS FERENCE KESNER LLP.

                              By: _____
                                  Irwin Weltz
                                  Thomas Scot Wolinetz
                                  1185 Avenue of the Americas, 37th Floor
                                  New York, New York 10036
                                  Tel. No. (212) 930-9700

                                  *Attorneys for Plaintiff*
                                  *Vuzix Corporation*

18

## VERIFICATION

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

    Paul J. Travers, under penalties of perjury, deposes and says:

    I am the Chief Executive Officer of Vuzix Corporation, which is the Plaintiff in this action. I have read the annexed Verified Complaint, know the contents thereof, and state that same are true to my knowledge, except those matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

                                             Paul J. Travers

Sworn to before me
this 5th of April 2018

Notary Public

KRISTINE A KELLY
Lic. #01KE6296545
Notary Public-State of New York
Qualified in Monroe County
COMM. EXP. 2/3/22

19

# DOCKET NO. 2

At an Ex Parte Part of the
Supreme Court, New York
County, located at 60 Centre
Street, New York, on the __
day of _____,
2018

PRESENT:                             , J.S.C.

--------------------------------------------------------------------x

VUZIX CORPORATION,

                         Plaintiff,                   Index No.: 153125/2018

        -against-                         **ORDER DIRECTING**
                                               **MANNER OF SERVICE**
                                               **AND EXTENDING**

RICARDO ANTONIO PEARSON a/k/a     **TIME TO SERVE**
RICHARD PEARSON,

                         Defendant.

--------------------------------------------------------------------x

UPON reading the Affirmation of Irwin Weltz, Esq., dated the 30th day of November,

2018, the exhibits annexed thereto, the accompanying memorandum of law and upon all of the

pleadings and proceedings heretofore had herein, by which Plaintiff Vuzix Corporation

("Plaintiff") has made proof that "good cause" and the "interest of justice" warrant an extension

of time to effectuate service on Defendant Ricardo Antonio Pearson a/k/a Richard Pearson

("Defendant") pursuant to CPLR Section 306-b, and that service of the Summons and Verified

Complaint herein upon Defendant is impracticable under Paragraphs 1, 2, or 4 of CPLR Section

308.

NOW, upon motion of Sichenzia Ross Ference LLP, attorneys for the Plaintiff herein, for

an Order of this Court extending the time to effectuate service and directing the manner in which

the Summons and Verified Complaint shall be served upon said Defendant, it is hereby

ORDERED, that Plaintiff's time to complete service of the Summons and Verified

Complaint upon Defendant is extended to and including one hundred twenty (120) days from the

date of this Order; and it is further,

ORDERED, that pursuant to CPLR Section 308(5), a copy of this Order, the Summons and Verified Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing shall be served upon Defendant by: (1) e-mailing copies thereof to rick.pearson@pearsoninvestment.com and info@moxreports.com with the subject line of the e-mails stating "LEGAL PAPERS OPEN ATTACHMENT IMMEDIATELY"; and (2) sending a copy thereof to Ricardo Antonio Pearson a/k/a Richard Pearson, c/o Seeking Alpha Inc., 52 Vanderbilt Ave, Fl 13, New York, N.Y., 10017-3837 via regular U.S. Mail and Federal Express Overnight Mail and that proof of said forms of service be filed with this Court.


ENTER:


_____

, J.S.C.

# DOCKET NO. 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------x
VUZIX CORPORATION,

                            Plaintiff,                       Index No.: 153125/2018

      -against-                              **AFFIRMATION**
                                               **IN SUPPORT**

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                        Defendant.
---------------------------------------------------------------------x

        IRWIN WELTZ, an attorney duly admitted to practice law before the Courts of the State

of New York affirms the truth of the following under the penalties of perjury:

        1.     I am a partner at Sichenzia Ross Ference LLP, attorneys for the Plaintiff Vuzix

Corporation ("Plaintiff" or "Vuzix") in the above-captioned case. As such, I am fully familiar

with the facts and circumstances set forth herein.

        2.     This affirmation is submitted in support of Plaintiff's Ex-Parte Application for an

Order of this Court: (i) pursuant to CPLR §§ 2004 and 306-b, extending the time to effectuate

service of the Summons and Verified Complaint and the Notice of Commencement of Action

Subject to Mandatory Electronic Filing upon the Defendant Ricardo Antonio Pearson a/k/a

Richard Pearson ("Defendant" or "Pearson"), *nunc pro tunc*, to and including one hundred

twenty (120) days from the date of the Court's execution of the Ex-Parte Order; (ii) pursuant to

CPLR § 308(5), permitting Plaintiff to serve Defendant via Pearson's known email addresses

rick.pearson@pearsoninvestment.com and info@moxreports.com and at the address of c/o

Seeking Alpha Inc., 52 Vanderbilt Ave, Floor 13, New York, N.Y. 10017-3837; and (iii) for such

and other further relief in Plaintiff Vuzix Corporation's favor as the Court deems just and proper.

        3.     This is an action by Vuzix to recover damages against Pearson caused by his

publication of false and defamatory "short and distort" articles about Vuzix via *MOXReports.com* and *Seeking Alpha* (the "Pearson Articles").

4.  The Summons and Verified Complaint were filed with the Clerk of the Court on April 5, 2018. A true and correct copy of the Summons and Verified Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing is attached hereto as Exhibit A.

5.  My firm did multiple online searches to try to locate Pearson, including searches on *Intellius.com*. The search for Pearson on *Intellius* showed a current address of 191 Broadway, Apartment 1E, Dobbs Ferry, New York 10522 (the "First Apartment"). A true and correct redacted copy of the pertinent parts of the *Intellius* report is attached hereto as Exhibit B. Internet searches for Pearson also show connections to Dobbs Ferry, New York.

6.  My firm utilized Metro Attorney Service Inc. ("Metro"), a process service company, to serve Pearson. On May 1, 2018, Metro attempted to serve Pearson at the First Apartment. A true and correct copy of the first Affidavit of Attempted Service ("Affidavit"), sworn to on July 3, 2018, is attached hereto as Exhibit C. Although the Affidavit states that an adult male answered the door who "was later confirmed to be the defendant when the plaintiff supplied a photograph of the defendant to the deponent," that later proved to be incorrect, when Metro subsequently advised my firm that the individual who answered the door was *not* Pearson. Exhibit C.

7.  The *Intellius* report and other internet searches further show that other relatives of Ricardo A. Pearson also appeared to reside at 191 Broadway, Dobbs Ferry, New York. Therefore, Metro made other attempts to serve Pearson at the First Apartment on June 8, 2018, June 12, 2018, June 18, 2018, June 23, 2018, June 26, 2018 and June 27, 2018 at various times,

2

with nail and mail service attempted on June 27, 2018. A true and correct copy of the second Affidavit of Service, sworn to on June 27, 2018, is attached hereto as Exhibit D.

8.      During this time, on June 13, 2018, Metro requested a picture of Pearson to aid in its service attempts. On June 13, 2018, my firm sent Metro a link to Defendant's profile page on *Seeking Alpha* (the "*Seeking Alpha* Profile Page") which contains a picture that Pearson apparently provided to *Seeking Alpha*. A true and correct copy of the *Seeking Alpha* Profile Page is attached hereto as Exhibit E. Although Metro initially responded that its process server believed that the adult male he had seen at the First Apartment on May 1, 2018 was Pearson, it later determined that that individual was not Pearson. Accordingly, since Metro was unable to verify that Pearson was residing at the First Apartment, its attempted nail and mail service on June 27, 2018 was not valid service.

9.      On July 5, 2018, Metro attempted to locate Pearson at 14 Wainwright Avenue, Apartment 2B, Yonkers, New York, 10710 (the "Second Apartment"), another address listed as current in the *Intellius* report. *See* Exhibit B. A true and correct copy of the third Affidavit of Attempted Service, sworn to on July 9, 2018, is attached hereto as Exhibit F. At the Second Apartment, the stepmother of "Richard Pearson" stated that he lives in Dobbs Ferry with one "Burke Pearson." *See* Exhibit F.

10.     An *Intellius* report for Tracy A. Burke, who can also be found online as Tracy Burke-Pearson, indicates she lived at 191 Broadway, Apartment 1C, Dobbs Ferry, New York 10522 (the "Third Apartment"), and that she is a relative of Ricardo Pearson. A true and correct redacted copy of the *Intellius report* for Tracy A. Burke is attached hereto as Exhibit G. On July 5, 2018, Metro attempted service at the Third Apartment. There, "Burke Pearson" told Metro that her husband Richard Pearson is not the same Richard Pearson as the Defendant in this

3

action. *See* Exhibit F.

11.    Metro returned a final time to the First Apartment and was told by Allison Pearson that her boyfriend Mike Morano lives there and not Defendant Pearson. *See* Exhibit F.

12.    Pearson's *Seeking Alpha* Profile Page states that he "spend[s] [his] time living between Los Angeles and Beijing, China." *See* Exhibit E. The *Intellius* report does not include a Los Angeles or Beijing, China address for Pearson. *See* Exhibit B.

13.    Pearson has his own Profile Page on *Seeking Alpha*, which reveals that he has been a regular contributor since 2009, with 104 Articles, 1 Blog Post, 62 Comments, 18 StockTalks, 2 Likes and 5,302 Followers. *See* Exhibit E.

14.    As shown on the website for the New York State ("NYS") Department of State, Division of Corporations, Seeking Alpha Inc. has an address at 52 Vanderbilt Ave, Fl. 13, New York, N.Y. 10017-3837. A true and correct copy of the listing for Seeking Alpha Inc. on the website of the NYS Department of State, Division of Corporations is attached hereto as Exhibit H. Paragraph 16 of the Terms of Use for *Seeking Alpha*'s website supplies the company's address as 52 Vanderbilt Ave, New York, NY 10017, and instructs notices of claim of copyright infringement to be sent there. A true and correct copy of the *Seeking Alpha*'s Terms of Use page on its website is attached hereto as Exhibit I.

15.    Pearson's *Seeking Alpha* Profile Page has a link to *MOXReports*. *See* Exhibit E. *MOXReports* is another purported financial website, with articles published as recently as September 19, 2018. A true and correct copy of the *MOXReports* home page is attached hereto as Exhibit J.

16.    *MOXReports* appears to be entirely run by Pearson. The "Biography" page on the *MOXReports* website only references Pearson. A true and correct copy of the *MOXReports*

4

"biography" page is attached hereto as <u>Exhibit K</u>.

17.     The contact page on the *MOXReports* website lists no street address, but states that "[y]ou can also contact us directly at info@moxreports.com." A true and correct copy of the *MOXReports* "contact" page is attached hereto as <u>Exhibit L</u>. No other contact information is provided.

18.     Pearson also has a LinkedIn page with the same picture as his *Seeking Alpha* Profile Page (the "LinkedIn Profile Page"). A true and correct copy of a screenshot of the LinkedIn Profile Page and full printout are attached hereto as <u>Exhibit M</u>. Pearson writes on his LinkedIn page, "I don't use linked-in very often, so please feel free to email me at: rick.pearson@pearsoninvestment.com." *See* <u>Exhibit M</u>. No other contact information is provided.

19.     Based on the foregoing, Pearson is seemingly elusive outside of his online presence and his connection to *Seeking Alpha* and *MOXReports*. In fact, in *Cemtrex, Inc. v. Ricardo Antonio Pearson a/k/a Richard Pearson and John Does No. 1-10*, Index No. 2:17-cv-01258-JS-AKT in the United States District Court, Eastern District of New York (the "Cemtrex Case"), the plaintiff therein specifically set forth that it was unable to locate Pearson for service. A true and correct copy of the So Ordered Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i) in the Cemtrex Case is attached hereto as <u>Exhibit N</u>.

20.     On the facts of this case, it is respectfully submitted that Vuzix should be allowed to serve Pearson pursuant to CPLR § 308(5) at his two known email addresses and at *Seeking Alpha*, where he has been a contributing author since 2009.

21.     As set forth in the accompanying Memorandum of Law, due process for service pursuant to CPLR § 308(5) requires that the method of service chosen be reasonably calculated,

5

under all circumstances, to apprise a defendant of the pending lawsuit. It is respectfully submitted that the methods set forth in this application satisfy that standard.

22.    Furthermore, pursuant to CPLR § 2004 and § 306-b, it is respectfully submitted that Vuzix should be granted an extension of time in which to complete service. Vuzix has good cause for seeking this extension, and the interest of justice warrant it, since Plaintiff has been unable to locate Pearson or effect service upon him within the requisite time, notwithstanding the diligent efforts made thus far, including nine separate visits to various addresses where it was believed Defendant may reside based on investigation.

23.    No prior application has been made to this or any other Court.

**WHEREFORE**, for the foregoing reasons and those stated in the accompanying memorandum of law, Plaintiff respectfully requests that this application be granted in its entirety and for such other and further relief in Plaintiff's favor as this court deems just and proper.

Dated: New York, New York
       November 30, 2018

IRWIN WELTZ

# DOCKET NO. 4

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------x
VUZIX CORPORATION,

                              Plaintiff,                Index No.:
                                                        Date Purchased:_____

            -against-
                                                        **SUMMONS**

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                              Defendant.
---------------------------------------------------------------------x
**TO THE ABOVE NAMED DEFENDANT:**

        **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action

and to serve a copy of your answer, or, if the Verified Complaint is not served with this

Summons, to serve a notice of appearance, upon the Plaintiff's attorney within twenty (20) days

after the service of this Summons, exclusive of the day of service (or within thirty (30) days after

the service is complete if this Summons is not personally delivered to you within the State of

New York); and in case of your failure to appear or answer, judgment will be taken against you

by default for the relief demanded in the Verified Complaint.

        The basis for venue is that this action is based on the tortious acts and conduct of

Defendant that have caused substantial injury to Plaintiff that occurred within this County.  In

addition, Defendant transmitted his defamatory articles to Seeking Alpha Inc., the owner

and operator of the eponymous website, which has its headquarters at 345 Seventh Avenue,

New York, New York.

Dated: New York, New York
April 5, 2018

Respectfully submitted,

SICHENZIA ROSS FERENCE KESNER LLP

By: _____
Irwin Weltz
Thomas Scot Wolinetz
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Tel. No. (212) 930-9700

*Attorneys for Plaintiff*
*Vuzix Corporation*

To: Ricardo Antonio Pearson *a/k/a* Richard Pearson
191 Broadway, Apt 1E
Dobbs Ferry, New York 10522

2

NYSCEF DOC. NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

VUZIX CORPORATION,

                       Plaintiff,               Index No.:
                                       Date Purchased:_____

    -against-

                                       **VERIFIED COMPLAINT**

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                    Defendant.

-------------------------------------------------------------------x

       Plaintiff Vuzix Corporation ("Vuzix"), by and through its undersigned attorneys, as and

for its Verified Complaint against Defendant Ricardo Antonio Pearson *a/k/a* Richard Pearson

("Pearson"), alleges and states as follows:

## NATURE OF THE ACTION

       1.    Vuzix brings this action to recover substantial damages against Pearson for his

false and defamatory statements. Vuzix is a leading supplier of Smart-Glasses and Augmented

Reality technologies and products for the consumer and enterprise markets. It is a growing and

well-run company with a seasoned management team, notable investors and strategic partners.

In fact, Vuzix has received numerous awards and accolades for its products and designs, and

holds 66 patents (43 additional patents pending) and numerous IP licenses in the near-eye display

field. Notably, in January 2015, Intel Corporation purchased $24,813,000 of Vuzix's Series A

Preferred Stock, and in December 2017 Vuzix entered into a 3-year supply agreement with

Toshiba Information Equipment (Hangzhou) Co., Ltd. ("Toshiba") for a Smart Glasses designed

and built for them by Vuzix. Vuzix's total revenues have also been growing as Vuzix's overall

sales for 2017 exceeded $5 million, which is a 160% increase over the prior year.

2.    Pearson recently published false and defamatory "short and distort" articles about Vuzix via *Moxreports.com* and *Seeking Alpha* (the "Pearson Articles"). Pearson's scheme is that he takes a short position in shares of public companies and then publishes false and defamatory articles about such public companies to drive the share price down in order to obtain a hefty profit for himself when he covers his short position. This is exactly what Pearson did to Vuzix. In fact, as a direct and proximate consequence of Pearson's lies, Vuzix's share price quickly dropped in value from $7.65 to $5.15, a decrease of over 30% in per share value.

## PARTIES

3.    Plaintiff Vuzix Corporation is a Delaware Corporation, with its principal place of business located at 25 Hendrix Road, West Henrietta, New York 14586. Vuzix is publicly traded on NASDAQ under the symbol "VUZI."

4.    Upon information and belief, Defendant Ricardo Antonio Pearson *a/k/a* Richard Pearson is an individual residing at 191 Broadway, Apt 1E, Dobbs Ferry, New York 10522. Pearson used the *Moxreports.com* and *Seeking Alpha* to spread his false and defamatory statements about Vuzix. *Moxreports.com* is a website run by Pearson. *Seeking Alpha* is an internet website focused on the financial markets that publishes content written by its members.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over Pearson pursuant to CPLR § 301 because Pearson is a resident of New York.

6.    Venue is proper in this Court because this action is based on the tortious acts and conduct of Pearson that have caused substantial injury to Vuzix that occurred within this County. In addition, Pearson transmitted his defamatory articles to Seeking Alpha Inc., the

2

owner and operator of the eponymous website, which has its headquarters at 345 Seventh
Avenue, New York, New York.

## BACKGROUND

### Vuzix Is An Industry Leader

7.      Founded in 1997, Vuzix is engaged in the design, manufacture, marketing and
sale of wearable display devices. These devices are worn like eyeglasses and feature built-in
video screens that enable the user to view and interact with video and digital content, including
movies, video games, computer data and the Internet. Vuzix's wearable display products are
known commercially as Smart and Augmented Reality Glasses, Video iWear (Eyewear) and
head mounted displays (or HMDs). These products are capable of providing virtual, large high-
resolution screens and yet they can fit in a user's pocket or purse and can be viewed practically
anywhere and at anytime.

8.      Vuzix's devices can also be used for Augmented Reality applications in which the
user has their real world view augmented with computer generated information. Vuzix's
products are designed to work with mobile electronic devices, including cell phones, laptop
computers, tablets, portable media players and gaming systems.

9.      Vuzix produces and sells two main types of wearable display products: Smart
Glasses for a variety of enterprise and commercial users and applications, including Augmented
Reality, and Video Viewing glasses for on-the-go users as mobile displays for entertainment and
gaming. Vuzix's products are available with varying features, including with and without
application running computer processors, and are offered as either monocular or binocular
display systems. With its origins in defense research and development for next-generation

3

NYSCEF DOC. NO. 1    Case 1:18-cv-00833-RJA Document 1-1 Filed 01/23/19 Page 43 of 139 INDEX NO. 153125/2018

military display solutions, Vuzix is now focused on pursuing the enterprise and consumer markets for wearable computing and personal Augmented Reality display devices.

10.    Since 2005, Vuzix has won numerous Consumer Electronics Show ("CES") awards for innovation, as well as several wireless technology innovation awards, amongst others.

11.    As a respected industry pioneer and leader, Vuzix maintains a strong intellectual property portfolio consisting of 66 patents issued and an additional 43 pending. Some of its competitive technology differentiators include Passive and Dynamic Holographic waveguide optics for existing micro displays, user interface gesture control and ambient light transmission control, LED micro scanning display engine, large field of view HD optics, and full color waveguide optics with active development plans for curved see-through optical imaging waveguides.

12.    The most recent product introduced by Vuzix is the Vuzix Blade™ (the "Blade"). The Blade is the first Augmented Reality Smart Glasses featuring Vuzix's advanced waveguide optics for hands-free mobile computing connectivity and location aware Augmented Reality content. The Blade provides the user with the wide range of features and capabilities in a natural glasses form factor, and such features range from basic text messaging and answering the phone to overlaying mapping directions, menus, weather, events, stocks, video conferencing, sports updates, social feeds, bio-metrics and more, right in front of the user.

13.    The Blade allows the user to intuitively navigate via simple swipes and taps on its eyeglass temple frame, or leverage voice controls and external AI systems. This allows users to leave their phones in their pockets for most functions and adds the ability to connect the information being presented to the real world, including that from cloud based AI solutions like Amazon Alexa. The Blade will help track a user's health levels for fitness activities to getting

4

the *Yelp* score for the user's next dinner and with its built in camera will easily allow social media sharing by simply recording the events at hand. The Blade also delivers a "hands free" connection of the digital world to the real world, providing unprecedented access to location-aware connected information. The Blade's private, see through, full color, bright, high resolution display screen performs both indoors and outdoors.

14.     Vuzix is managed by a seasoned team of experienced and dedicated professionals, including:

a.     ***Paul J. Travers***—Paul J. Travers is a founder, the Chief Executive Officer, President and a Director of Vuzix. Mr. Travers has served as Vuzix's President and Chief Executive Officer since 1997 and as a member of the board of directors since November 1997. Prior to the formation of Vuzix, Mr. Travers founded both e-Tek Labs, Inc. and Forte Technologies Inc. He has been a driving force behind the development of Vuzix's products for the consumer market. With more than 30 years of experience in the consumer electronics field, and 15 years of experience in the virtual reality and virtual display fields, he is a nationally recognized industry expert. He holds an Associate degree in engineering science from Canton, ATC and a Bachelor of Science degree in electrical and computer engineering from Clarkson University.

b.     ***Grant Russell***—Grant Russell is the Chief Financial Officer, Executive Vice-President, Treasurer and a Director of Vuzix. Mr. Russell has served as Vuzix's Chief Financial Officer since 2000 and as a member of the board of directors since April 2009. From 1997 to 2004, Mr. Russell developed and subsequently sold a successful software firm and a new concept computer store and cyber café. In 1984, he co-founded Advanced Gravis Computer ("Gravis"), which, under his leadership as President, grew to become the world's largest PC and Macintosh joystick manufacturer with sales of $44,000,000 worldwide and 220 employees. Gravis was listed on NASDAQ and the Toronto Stock Exchange. In September 1996, Gravis was acquired by a US-based Fortune 100 company in a successful public tender offer. Mr. Russell holds a Bachelor of Commerce degree in Finance from the University of British Columbia and is both a US Certified Public Accountant and a Canadian Chartered Accountant.

c.     ***Paul Boris***—Paul Boris is the Chief Operating Officer and a Director of Vuzix. Mr. Boris joined Vuzix after spending two plus years at General Electric ("GE") in a variety of executive leadership roles including CIO of Advanced Manufacturing Strategy, Site Leader of the Advanced Manufacturing and Software Technology Center and most recently as the Vice President of

5

Manufacturing Industries of GE Digital. As CIO of Advanced Manufacturing Strategy for GE, he focused on driving GE's innovative factory strategy to increase productivity and deliver the optimization of assets and operations. In his most recent role, Mr. Boris focused on defining and enabling GE's commercial strategy for Brilliant Manufacturing by working with companies to accelerate their own digital transformation. Prior to working at GE, Mr. Boris spent over eight years in a variety of executive roles overseeing manufacturing and operations strategy at SAP. Mr. Boris was the dynamic force behind the Perfect Plant initiatives at SAP where he was Global Vice President, Enterprise Operations Management. He served as director at the National Association of Manufacturers, the US's largest industrial trade association for just under five years to 2014. Mr. Boris' breadth of manufacturing operations and technology-related capabilities and experiences enable him to bring significant value to Vuzix.

15.     Vuzix has attracted the attention of significant investors and strategic partners. On January 2, 2015, Intel Corporation purchased $24,813,000 of Series A Preferred Stock. Each share of Series A Preferred Stock is convertible into 100 shares of common stock and votes on an as-converted basis with the common stock. If converted, this represents a 15% ownership stake based upon the current number of outstanding common shares.

16.     On December 6, 2017, Vuzix entered into a supply agreement (the "Master Supply Agreement" or "MSA") with Toshiba. The MSA sets forth the general terms and conditions, including with respect to product quality, product changes, minimum order quantities and deliveries and pricing pursuant to which Vuzix will sell to Toshiba and its affiliates the Smart Glasses product that was developed pursuant to a development agreement between Vuzix and a Toshiba affiliate. Any such sales will be made pursuant to purchase orders which Toshiba may submit to Vuzix in its discretion.

17.     Pursuant to the MSA, Vuzix agreed to sell such product exclusively to Toshiba for a period of up to 12 months, subject to Toshiba's submitting a minimum of $5,000,000 of purchase orders. The product is being co-branded and labelled as a Toshiba product, "Powered

6

by Vuzix" and is expected to be sold on a global basis by Toshiba Client Solutions group, which will bundle the Smart Glasses unit with a specially designed mobile edge computing system that Toshiba principally developed for this program. The MSA has a three year term, subject to earlier termination under certain conditions. Vuzix recently received its first purchase order from Toshiba totaling $1,068,000.

18.     Vuzix continues to grow its business and operations. In fact, overall revenues for 2017 exceeded $5 million, which is a 160% increase over the prior year, and Vuzix now has 63 full-time employees with offices in New York, the United Kingdom, Spain and Japan.

**Pearson's Short And Distort Scheme Directed At Vuzix**

19.     This action arises from a classic "short and distort" scheme. In such a scheme, short-sellers borrow securities, sell them and then drive the price of their target company's stock down by spreading materially false, misleading, defamatory and disparaging information about the company. Once the company's stock drops to an artificially low price, ideally zero, the short-sellers repurchase and return the borrowed securities, pocketing the difference. This is precisely what Pearson has done and continues to do against Vuzix.

20.     On March 16, 2018, Pearson published a short and distort "report" on *Moxreports.com* and on March 20, 2018 Pearson published another hit piece entitled "*Vuzix: Far Worse Than Anyone Had Imagined*" on *Seeking Alpha*. *Seeking Alpha* requires no educational, professional or journalistic credentials to publish on its website. *Seeking Alpha* does not check into the factual authenticity of the posted content or validate that the author's opinions are worthy of merit. Indeed, *Seeking Alpha* disclaims any responsibility for the content of what appears on its website.

7

21.    The Pearson Articles were distributed globally on the Internet.  Upon information and belief, the Pearson Articles have been disseminated or linked to other websites, as well.

22.    The Pearson Articles are riddled with false, misleading and defamatory statements about Vuzix.  Pearson was motivated by a malicious desire to destroy Vuzix's business and depress its share price so that Pearson could profit from short selling his shares of Vuzix's stock. Not surprisingly, Pearson specifically states in the Pearson Articles that "[t]he author is short VUZI."

**The False And Defamatory Statements**

23.    The statements, implications and meanings set forth in the Pearson Articles that are identified below are among the many false and libelous statements in the Pearson Articles. Pearson knew and intended that the statements set forth in the Pearson Articles, including those identified below, would convey false and defamatory implications and meanings concerning Vuzix to any person reading it or being informed of its contents, as to cause panic and uncertainty regarding investment in Vuzix, including and especially in the eyes of Vuzix shareholders.

24.    The statements, implications and meanings set forth in the Pearson Articles, including those identified below, were published by Pearson with malicious motives, as part of Pearson's desire to damage Vuzix and decrease its share price for his own personal gain and to the detriment of Vuzix's shareholders.

25.    At the time of the publication of the Pearson Articles, Pearson acted with actual malice in that Pearson knew that the defamatory statements, implications and meanings, including those identified below, were false, and nonetheless published them in reckless

8

disregard of their falsity, or alternatively, published them without reasonable grounds for believing that the statements, implications and meanings were true.

**False And Defamatory Statements, Implications And Meanings**
**Regarding Vuzix's General Business and Operations**

26.  Pearson falsely states in the *Seeking Alpha* article that: "Vuzix is a stock promotion which shows blatant signs of fraud. The setup here is nearly identical to the dozens of other stock frauds or promotions I have exposed here at Seeking Alpha over the past few years." This statement is both false and defamatory.

27.  Vuzix is not a fraud. It has been in business for over 20 years and is a vibrant, growing and well-managed company with award winning products and technologies.

28.  These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix, at its core, is a fraud. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications And Meanings**
**Regarding Vuzix Going Public**

29.  Pearson falsely states in the *Seeking Alpha* article that: "Vuzix Corp. is a reverse merger stock promotion which shows blatant signs of fraud." This statement is both false and defamatory.

30.  In fact, Vuzix became a public entity by its initial public offering - and not a reverse merger - on December 24, 2009 with its filing and acceptance of its S-1 Registration statement by the United States Securities and Exchange Commission (the "SEC"). Vuzix initially commenced trading on the TSXV in Canada thereafter and became listed on the OTC markets in 2010 before subsequently up-listing to the NASDAQ on January 28, 2015.

9

31.     Soon after the publication of the *Seeking Alpha* article, *Seeking Alpha* acknowledged the falsity of this statement by virtue of the addition of an "Editor's Note" stating that "This article previously called Vuzix a reverse merger company. We have removed that description from the article."

32.     This statement was intended by Pearson to be understood by members of the public who read or were informed of it to have false and defamatory implications and meanings, including that Vuzix, at its core, is a fraud. This statement, implication and meaning is false and defamatory.

## False And Defamatory Statements, Implications And Meanings
## Regarding Vuzix's Revenues

33.     Pearson states in the Pearson Articles that Vuzix has "Revenues: $0.5 million per quarter (negative gross margins)." This statement is both false and defamatory.

34.     In fact, Vuzix's revenues by quarter in 2017 were approximately $1.2 million (Q1), $1.3 million (Q2), $1.4 million (Q3) and $1.6 million (Q4). Further, as shown, overall revenues for 2017 exceeded $5 million, which is a 160% increase over the prior year.

35.     This statement was intended by Pearson to be understood by members of the public who read or were informed of it to have false and defamatory implications and meanings, including that Vuzix is a fraud with minimal revenue and not worthy of investment. This statement, implication and meaning is false and defamatory.

## False And Defamatory Statements, Implications and Meanings
## Regarding Vuzix's Agreement With Toshiba

36.     Pearson falsely claims in the Pearson Articles that Vuzix is paying Toshiba $5 million as part of the MSA with Toshiba. He states in the *Seeking Alpha* article that: "Meanwhile, Vuzix has made it a point to aggressively tout a $5 million 'purchase agreement'

10

Case 1:18-cv-00689 Document 1-1 Filed 01/23/19 Page 50 of 139

with Toshiba. In fact, this agreement is really just manufacturing agreement whereby Vuzix is the one paying $5 million to Toshiba. The wording states clearly that Toshiba will 'fulfill the initial purchase order received by Toshiba'." These statements, implications and meanings are false and defamatory.

37.　　In fact, Vuzix is not paying $5 million to Toshiba. Vuzix has a business relationship with Toshiba that includes the MSA requiring Toshiba to place a $5 million minimum of orders over the first 12 months of the MSA in order to maintain exclusivity for a custom pair of Smart Glasses that was developed and manufactured by Vuzix, and is being delivered to Toshiba by Vuzix. These amounts will be in addition to the approximately $1.1 million Vuzix received from Toshiba Japan for the development of custom co-branded product, originally announced by Vuzix in February 2017. The engineering and development work has been completed and the product has moved into mass production at the request of Toshiba.

38.　　As alluded to above, Vuzix received the first purchase order from Toshiba under the MSA on March 12, 2018 and filed a Form 8-K with financial details on the initial purchase order received from Toshiba, totaling approximately $1.1 million, on March 13, 2018.

39.　　These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate agreement with Toshiba. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications And Meanings Regarding The Blade**

40.　　Pearson falsely claims in the *Seeking Alpha* article that: "The Blade appears to be a sham. NONE of the journalists could get the critical Alexa feature to function, yet precisely

11

ALL of them aggressively touted 'Alexa' in reviews. The second video appears to be taken in someone's apartment, not at CES at all." These statements, implications and meanings are false and defamatory.

41.     In fact, the Blade works as reported. A *Tom's Guide* Senior Editor interviewed Vuzix representatives at CES and recorded a video while operating Alexa voice assistant on the Blade from CES on the public tradeshow floor at Vuzix's exhibit booth. The video interview and Alexa demonstration on the Blade was recorded and uploaded to the *Tom's Guide YouTube* page on January 12, 2018. Vuzix also posted a 2.5-minute-long video demonstrating Alexa running on the Blade from CES on January 12, 2018, and on Vuzix's *YouTube* page on January 12, 2018. Vuzix later received email verification from *Tom's Guide* that the interview, video and recording were indeed recorded at CES 2018.

42.     Additionally, Pearson falsely claims in *Moxreports.com* that: "Vuzix's 'Blade' is a little more than a low tech mock-up which serves as a prop for journalists to conduct sham reviews. When these journalists 'reviewed' the product at CES, neither the Alexa feature nor the browser were functioning – not for any of the journalists. Yet these same journalists then widely touted the device in their mainstream bylines, overwhelmingly on the basis of the Alexa features that actually don't exist!" These statements are false and defamatory.

43.     In fact, the Blade supports Amazon Alexa. The full commercial release of the Blade will also ship with support for the Alexa voice assistant. There are multiple visual and actual examples of Alexa running on the Blade at CES 2018 and at the Mobile World Congress ("MWC"). Further, the Blade will commence volume production in the second quarter of 2018 at Vuzix's upstate New York plant.

12

44. Vuzix has developed its own intellectual property portfolio, with over 20 years of manufacturing know-how, and proprietary processes, materials and equipment to create high performance waveguides and near-eye display products. Vuzix's technology, intellectual property portfolio and position in the marketplace gives Vuzix a leadership position in Augmented Reality and Smart Glasses products, waveguide optics and display engine technology.

45. The Blade is the third product introduced by Vuzix that utilizes its waveguide optics and display engine technology, and is certainly not a "low tech mock-up." The first generation products were sold to the U.S. military and industrial customers as the M2000AR. Vuzix demonstrated the Blade, operating a series of demonstration apps, to an estimated 4,000 industry professionals, including independent members of the media at CES and MWC in January and February 2018, and received overwhelmingly positive feedback.

46. Pearson's statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate products, that Vuzix has been lying to the public about the Blade and that the Blade is a scam. These statements, implications and meanings are false and defamatory.

**False And Defamatory Statements, Implications and Meanings**
**Regarding Vuzix's Public Relation Activities**

47. Pearson falsely claims in the Pearson Articles that Vuzix has paid journalists or other media to give positive reviews about the Blade. These statements, implications and meanings are false and defamatory. In fact, Vuzix has never paid anyone to give its products a positive review.

13

FILED: NEW YORK COUNTY CLERK 04/05/2018 06:07 PM
Case 1:19-cv-00689  Document 1-1  Filed 01/23/19  Page 53 of 139
INDEX NO. 153125/2018
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 04/05/2018

48.     Pearson falsely claims in *Moxreports.com* that: "Showstoppers.com creates a private closed door events which look (in the photos) like real public conferences. Showstoppers then hand selects all the journalists and submits to Vuzix weeks before any event. There is zero possibility of anyone saying anything negative or questioning the obvious problems." These statements, implications and meanings are false and defamatory.

49.     Vuzix has no idea which journalists, if any, will visit its booth at Showstoppers media events. In fact, Vuzix did not attend the Showstoppers event at CES 2018 at all, but rather attended a similar event called Pepcom 2018. The Pepcom 2018 CES event took place the night before the claimed Showstoppers event. There is no preview of attending journalists issued by the organizers of any of these industry tradeshow events, nor is there any one-on-one appointment system where attendees can connect or book appointments with exhibiting firms. Vuzix was just one of hundreds of exhibitors showing its new products and technologies to industry journalists. The Pepcom event is very similar to Showstoppers and is one of the three trade events of this nature each year at CES that takes place during the week of the CES conference and each event independently invites as many as 1,500 journalists, analysts and key industry influencers, or more, to visit with hundreds of leading consumer electronics companies. Vuzix was not in any way, shape or form involved in filtering this group of attendees.

50.     Vuzix welcomed all journalists that stopped by and wanted a demo of the Blade or Vuzix M300 Smart Glasses at Pepcom (not Showstoppers) at CES 2018, as well as MWC where it also attended both Pepcom and Showstoppers in Barcelona, Spain in February 2018. Vuzix does not pre-screen or screen journalists before they visit its booth at such media events. By way of example, one journalist spent over an hour at Vuzix's booth hands-on testing and reviewing the Blade at Pepcom at CES 2018. The opinions of the media surrounding Vuzix at

14

FILED: NEW YORK COUNTY CLERK 04/05/2018 06:07 PM     Page 54 of 139     INDEX NO. 153125/2018

CES 2018 and MWC were based solely on the media's independent evaluation and opinions. Vuzix neither encouraged nor paid for any journalists to attend Pepcom or Showstoppers events or its booths at either CES or MWC, or to write reviews of any of Vuzix's products.

51.     Pearson further falsely claims in the *Moxreports.com* that Vuzix through IRTH Communications ("IRTH") sponsored more than 30 articles from mainstream media outlets and that "Photos of leaked documents from IRTH Communications show IRTH bragging to potential clients that it was responsible for more than 30 articles from mainstream media outlets which all simultaneously erupted in connection with Margolis' 'Alexa ruse'. These specific IRTH sponsored articles were conspicuous in that they offered effusive praise for Vuzix but appeared as standard news on dozens of mainstream sites." These statements, implications and meanings are false and defamatory.

52.     In fact, Vuzix utilizes both internal and external communications firms, including, but not limited to, IRTH. The mainstream media outlets that covered the Blade were gained via normal media outreach (non-paid) which resulted in earned media coverage based on the product and the technology. The opinions of the media surrounding Vuzix at CES 2018 and MWC were based solely on the media's independent evaluation and opinions with zero input, influence, or payment from Vuzix or any of its external communications firms.

53.     These statements were intended by Pearson to be understood by members of the public who read or were informed of them to have false and defamatory implications and meanings, including that Vuzix does not have any legitimate products, that Vuzix has been paying for positive reviews (and press), and that anything positive said about Vuzix or its products was paid for by Vuzix. These statements, implications and meanings are false and defamatory.

15

FILED: NEW YORK COUNTY CLERK 04/05/2018 06:07 PM    INDEX NO. 153125/2018
NYSCEF DOC. NO. 1                                   RECEIVED NYSCEF: 04/05/2018

Case 1:19-cv-00689 Document 1-1 Filed 01/23/19 Page 55 of 139

**Vuzix Has Been Damaged by Pearson's Malicious Defamation**

54.　As a direct and proximate result of Pearson's unlawful online smear campaign to sabotage Vuzix's business and crash its stock price while keeping a profit from his short position, Vuzix has suffered reputational harm and economic damages. In the immediate aftermath of the publication of the false statements and libel in the Pearson Articles, the price of Vuzix's share's plummeted from $7.65 to $5.15, a loss of more than $80 million in equity market value.

55.　Further, it is possible several putative shareholder class action lawsuits will be filed against Vuzix, which will incorporate the false and defamatory statements in the Pearson Articles. Vuzix is likely to incur substantial costs in dealing with these meritless suits, which were a likely foreseeable by-product of the Pearson Articles.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Libel)

56.　Vuzix repeats and realleges the foregoing paragraphs as if fully set forth herein.

57.　Pearson wrongfully and maliciously intended to injure and defame Vuzix.

58.　The foregoing statements, implications and meanings were compiled and published by Pearson without privilege or authorization in a manner that was false, misleading and libelous, and moreover were published with actual malice and malicious intent, or with reckless disregard of their truth or falsity, to harm Vuzix's business and reputation, to cause panic and fear among Vuzix shareholders, and to cause its share price to decline so that Pearson could reap huge short-term gains from transacting in Vuzix's securities.

59.　By virtue of Pearson's false and defamatory statements Pearson damaged Vuzix's business and reputation, caused panic and fear among Vuzix shareholders,

16

FILED: NEW YORK COUNTY CLERK 04/05/2018 08:07 PM INDEX NO. 153125/2018
Case 1:19-cv-00689 Document 1-1 Filed 01/23/19 Page 56 of 139

encouraged other short sellers to join and rebroadcast his lies and short the stock, and caused Vuzix's share price to decline so that Pearson could reap huge short-term gains from transacting in Vuzix's securities.

60. Further, it is possible several putative shareholder class action lawsuits will be filed against Vuzix, which will incorporate the false and defamatory statements in the Pearson Articles. Vuzix is likely to incur substantial costs in dealing with these meritless suits, which were a likely foreseeable by-product of the Pearson Articles.

61. As a direct and proximate result of the foregoing conduct, Vuzix has suffered general and special damages.

62. As a result, Vuzix is entitled to monetary and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Libel Per Se)

63. Vuzix repeats and realleges the foregoing paragraphs as if fully set forth herein.

64. Pearson knowingly published false and derogatory statements about Vuzix's business and securities; and moreover, such statements were calculated to damage Vuzix's business and repution.

65. As a proximate result of Pearson's unlawful conduct, Vuzix is entitled to monetary and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant, as follows:

    (a)    A judgment for damages against Defendant in an amount to be demonstrated at trial, but in no circumstances less than the sum of $80,000,000.00 (Eighty Million Dollars);

    (b)    Punitive damages in an amount to be

17

demonstrated at trial;

(c)     The costs, fees and disbursements of this action; and

(d)     For any such other relief in Plaintiff's favor that
        the Court may deem just, proper and equitable.

Dated: New York, New York
       April 5, 2018

Respectfully submitted,

SICHENZIA ROSS FERENCE KESNER LLP.

By:

Irwin Weltz
Thomas Scot Wolinetz
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Tel. No. (212) 930-9700

*Attorneys for Plaintiff*
*Vuzix Corporation*

18

## VERIFICATION

STATE OF NEW YORK      )
                              ) ss.:
COUNTY OF NEW YORK   )

Paul J. Travers, under penalties of perjury, deposes and says:

I am the Chief Executive Officer of Vuzix Corporation, which is the Plaintiff in this action. I have read the annexed Verified Complaint, know the contents thereof, and state that same are true to my knowledge, except those matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true.

Paul J. Travers

Sworn to before me
this 5ᵗʰ of April 2018

Notary Public

KRISTINE A KELLY
Lic. #01KE6296545
Notary Public-State of New York
Qualified in Monroe County
COMM. EXP. 2/3/22

19

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
VUZIX CORPORATION

                Plaintiff/Petitioner,

      -against-                    Index No. __153125/2018__

RICARDO ANTONIO PEARSON a/k/a RICHARD
PEARSON

                  Defendant/Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## NOTICE OF COMMENCEMENT OF ACTION SUBJECT
## TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in efiling.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 04/05/2018

Signature

IRWIN WELTZ
Name

Sichenzia Ross Ference Kesner LLP
Firm Name

1185 Avenue of the Americas, 37th Floor
Address

New York, New York 10036
City, State, and Zip

(212) 930-9700
Phone

iweltz@srfkllp.com
E-Mail

To:    Ricardo Antonio Pearson *a/k/a* Richard Pearson

       191 Broadway, Apt 1E

       Dobbs Ferry, New York 10522

9/3/15

# DOCKET NO. 5

# Exhibit B

# REDACTED

 

FILTERS ☒
### Ricardo A Pearson
Age 50 (born ████████

*Click any section of this summary to view full results or see a preview of the available information.*

## Contact Information

**Addresses**  5 found

191 Broadway APT 1E
Dobbs Ferry, NY 10522-2825
Confirmed

**Phone Numbers**  4 found

(914) 693-2823
(914) 564-9878
Confirmed

**Email Addresses**
No email addresses available

**Social Networks**
No social network information available

## Family & Work

**Relatives**  11 found

Simone P Pearson
Euton I Pearson

**Marriage & Divorce**
No marriage & divorce records available

**Education**
No education history available

**Employment**
No employment history available

## Court Records

**Criminal Records**  learn more
Search available records nationwide

**Federal Criminal Records**  learn more
Search available records

**Civil Court Records**  learn more
Search available records nationwide

## Explore Ricardo's Connections

Visually explore Ricardo's connections. Use Full Screen view for better experience

Get Profile





## Address & Phone History

According to our best available information, this is the address & phone history for the person you selected.

5 found

Click an address to zoom the map

(914) 693-2823 is confirmed connected.    This address is confirmed.

1   191 Broadway APT 1E    (914) 693-2823Landline(914) 564-9878Cellular(914) 693-1309Landline
    Dobbs Ferry, NY 10522-2825

2   3024 Kingsbridge AVE #4A(914) 693-2823Landline(718) 796-4937Landline
    Bronx, NY 10463-5121

This address is confirmed.

3   14 Wainwright AVE APT 2B
    Yonkers, NY 10710

4   28 Whitman ST
    Hastings On Hudson, NY 10706-1606
    view property details

5   1052 Fontana DR
    Alameda, CA 94502-6820
    view property details

## Relatives of Ricardo Pearson

According to our best available information, these are current relatives, former relations, or cohabitants of the person you selected.

11 found

**Simone Pearson**  Phone:    (718) 79*-****  5 found
Age 48        Aliases:   None found
Yonkers, NY 6 foundRelatives: John Singh  7 found

**Euton Pearson**  Phone:    (914) 77*-****  1 found
Age 75        Aliases:   None found
Yonkers, NY 8 foundRelatives: Lydia Ramdin  8 found

**Lydia Ramdin**  Phone:    (914) 77*-****  1 found

Age 57            Aliases:   Lydia R Pearson  1 found
Yonkers, NY 6 foundRelatives: Euton Pearson  7 found

**Diana Pearson**   Phone:     None found
Age unavailable   Aliases:   None found
Yonkers, NY 1 foundRelatives: Simone Pearson  6 found

**Kennis Pearson**  Phone:     (914) 69*-****  7 found
Age 46            Aliases:   None found
Yonkers, NY 10 foundRelatives: Parke Pearson  10 found

**Allison Pearson**  Phone:     (914) 69*-****  5 found
Age 54            Aliases:   Ali Pearson  2 found
Dobbs Ferry, NY 8 foundRelatives: Simone Pearson  13 found

**Tracy Burke**    Phone:     (914) 47*-****  5 found
Age 51            Aliases:   None found
Dobbs Ferry, NY 5 foundRelatives: Richard Burke  7 found

**Richard Burke**   Phone:     (914) 47*-****  6 found
Age 84            Aliases:   None found
Dobbs Ferry, NY 6 foundRelatives: Allison Pearson  9 found

**Dwight Burke**    Phone:     (914) 47*-****  4 found
Age 53            Aliases:   None found
Dobbs Ferry, NY 3 foundRelatives: Richard Burke  7 found

**Helen Shearouse**  Phone:     (914) 47*-****  3 found
Age 54            Aliases:   None found
Ridgewood, NJ 2 foundRelatives: Christine Shearouse  8 found

**Parke Pearson**   Phone:     (914) 69*-****  2 found
Age 54            Aliases:   None found
Dobbs Ferry, NY 2 foundRelatives: Kennis Pearson  9 found

---

## Add Nationwide Civil Court Records Check                                    $19.95

Search instantly!

We'll check available county courts for civil records that could belong to Ricardo Pearson such as bankruptcies, liens, and judgments. Results can include,
when available: case number, defendant name and address, court name, case details, and more. Want to know? Add this section.

# DOCKET NO. 6

# **Exhibit C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------X
VUZIX CORPORATION,

        Plaintiff(s),

      -against-

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,

        Defendant(s).
------------------------------------------------X
STATE OF NEW YORK  )
                S.S.
COUNTY OF NEW YORK)

Index No. 153125/2018

AFFIDAVIT OF ATTEMPTED SERVICE

        DOMINIC DELLAPORTE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

        That on the 1st day of May, 2018, at approximately the time of 7:49 PM, deponent attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but was told by an adult male that only Alison Pearson resided therein and that the defendant was unknown at that address. The adult male that answered the door was later confirmed to be the defendant when the plaintiff supplied a photograph of the defendant to the deponent.

        That on the 23rd day of June, 2018, at approximately the time of 7:53 AM, deponent again attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but received no response to repeated knocks on the apartment door.

DOMINIC DELLAPORTE #1320496

Sworn to before me this
3rd day of July, 2018

NOTARY PUBLIC

**EVAN COHAN**
**NOTARY PUBLIC & ATTORNEY AT LAW**
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2022

**DOCKET NO. 7**

# Exhibit D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------X
VUZIX CORPORATION,

        Plaintiff(s),                        Index No. 153125/2018

    -against-                        AFFIDAVIT OF SERVICE

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,

        Defendant(s).
-------------------------------------------------X
STATE OF NEW YORK  )
                   S.S.
COUNTY OF NEW YORK)

        RICARDO DELPRATT, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

        That on the 8th day of June, 2018, at approximately the time of 1:55 PM, deponent attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but no response to repeated knocks on the apartment door.

        That on the 12th day of June, 2018, at approximately the time of 5:59 PM, deponent again attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but received no response to repeated knocks on the apartment door.

        That on the 18th day of June, 2018, at approximately the time of 1:26 PM, deponent again attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but received no response to repeated knocks on the apartment door.

        That on the 26th day of June, 2018, at approximately the time of 8:28 PM, deponent again attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but received no response to repeated knocks on the apartment door.

That on the 27th day of June, 2018, at approximately the time of 10:52 AM, deponent again attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but received no response to repeated knocks on the apartment door. At that time, therefore, deponent served a true copy of the foregoing papers upon Ricardo Antonio Pearson a/k/a Richard Pearson by firmly affixing the same conspicuously on the front door at that address, the actual place of residence.

That on the 27th day of June, 2018, deponent served another copy of the foregoing upon Ricardo Antonio Pearson a/k/a Richard Pearson by first class mail, by enclosing a true copy thereof in a securely sealed and postpaid wrapper with the words "PERSONAL AND CONFIDENTIAL" written on the same envelope, and not indicating on the outside that it is from an attorney, and depositing the same into an official depository maintained by the Government of the United States, City and State of New York, addressed as follows:

Ricardo Antonio Pearson a/k/a Richard Pearson
191 Broadway, Apt. 1E
Dobbs Ferry, New York 10522


RICARDO DELPRATT #2067114

Sworn to before me this
27th day of June, 2018


NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2022

# DOCKET NO. 8

# Exhibit E

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM

NYSCEF DOC. NO. 8

INDEX NO. 153125/2018

RECEIVED NYSCEF: 11/30/2018



### Richard Pearson  [ Follow ]

I am an activist investor in US and Chinese stocks. I was previously an investment banker in New York Hong Kong and London for 9 years, focused on Equity Capital Markets. I look at both long ideas and short ideas and typically focus on a small number on names where I can spend the time to conduct very deep research. I spend my time living between Los Angeles and Beijing, China.

Contributor since: 2009

MoxReports

RSS Feed

| **104**<br>Articles | **1**<br>Blog Posts | **62**<br>Comments | **18**<br>StockTalks | **2**<br>Likes | **5,302**<br>Followers | **132**<br>Following |
|---|---|---|---|---|---|---|

| **All** | **(104)** |
|---|---|
| Editors' Picks | (60) |

Filter By Ticker

| ADXS (1) | ALNY (1) |
|---|---|
| AMCN (2) | AMTX (1) |
| ARA (2) | BETR (1) |
| BIDU (1) | BIOL (3) |
| BRS (1) | CBAK (2) |
| CECO (1) | CEMP (1) |
| CETX (1) | CIS (1) |
| CO (1) | CYTR (1) |
| DDS (2) | EAC (1) |
| FARM (1) | FNRG (1) |
| FRAN (1) | FTK (1) |
| GCAP (2) | GEVA (1) |
| GOMO (1) | GSAT (3) |
| HIIQ (1) | HITK (1) |
| HLF (1) | HTZ (1) |

## Latest Articles

**Vuzix: Far Worse Than Anyone Had Imagined**
Editors' Pick · Tue, Mar. 20 · VUZI · 209 Comments

**Why Gain Capital Could Now See A 'Super Spike'**
Dec. 29, 2017 · GCAP · 71 Comments

**Bitcoin Rollout Could Send GAIN Capital Sharply Higher**
Dec. 28, 2017 · GCAP · 32 Comments

**RH Will Likely Spike Much Higher Very Soon**
Editors' Pick · Nov. 3, 2017 · RH · 27 Comments

**Tactile Systems: Multiple Near-Term Catalysts For 75% Downside**
Editors' Pick · Sep. 25, 2017 · TCMD · 44 Comments

**Health Insurance Innovations: Penalties To Exceed $100 Million And Undisclosed 'Domino Effect'**
Editors' Pick · Sep. 11, 2017 · HIIQ · 77 Comments

**SA Interview: Mathematical Trades With Richard Pearson**
Editors' Pick · Aug. 12, 2017 · ARA

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM

NYSCEF DOC. NO. 8

INDEX NO. 153125/2018

RECEIVED NYSCEF: 11/30/2018

**Shares Of Hertz Could Still Go Much Higher From Here**

Editors' Pick · Aug. 9, 2017 · HTZ · 72 Comments

**Long Dillard's On Potential For 'Infinity Squeeze'**

Editors' Pick · Jul. 25, 2017 · DDS · 104 Comments

**American Renal: JV Partners Rushing To Sell Equity Stakes, But Why?**

Editors' Pick · Jul. 10, 2017 · ARA · 24 Comments

**After Criminal Investigation, Osiris Is Finally Delisted**

Editors' Pick · Mar. 13, 2017 · OSIR · 50 Comments

**Cemtrex: Documents And Photos, All Signs Point To Deception And Failure**

Editors' Pick · Feb. 22, 2017 · CETX · 208 Comments

**Yirendai: Leaked Internal Emails Raise Much Deeper Concerns**

Editors' Pick · Jan. 31, 2017 · YRD · 40 Comments

**Live Ventures Exposed: Massive Paid Promotions, Heavy Accounting Manipulation, Deficient Auditor And More**

Jan. 6, 2017 · LIVE · 80 Comments

**Orthofix Poised To Plunge 50% On Undisclosed FDA Issue And Accounting Manipulation**

Editors' Pick · Dec. 16, 2016 · OFIX · 51 Comments

**Long Cempra: Multiple Catalysts For An Easy 60% Upside**

Aug. 11, 2016 · CEMP · 61 Comments

**Nymox: This Offshore 'Biotech' Promotion Will Go To Zero (Yes, Zero)**

Aug. 10, 2016 · NYMX · 95 Comments

**Bristow Group: Near Term Catalyst For 45% Drop**



Futures questions?
Get answers

Open an account.
E✱TRADE



Don't miss any articles by
**Richard Pearson**

Join Seeking Alpha to get real-time alerts on your
favorite authors.

Email

Sign Up

**Sponsored Financial Content**

Not all short duration bonds behave the same
as rates rise
Allianz

This Is The #1 Investment To Fund Your
Retirement
Stansberry Research

The No. 1 Biotech Stock to Buy by December
28th

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM

NYSCEF DOC. NO. 8

INDEX NO. 153125/2018

RECEIVED NYSCEF: 11/30/2018

☞ Editors' Pick · Jul. 22, 2016 · BRS · 29 Comments

**Expect OraSure To Drop 35% (Or More) Next Week**

☞ Editors' Pick · Jun. 30, 2016 · OSUR · 35 Comments

**Osiris Therapeutics Beset By Newer And Bigger Troubles**

☞ Mar. 24, 2016 · OSIR · 29 Comments

**Watch For A Sharp Drop In Career Education Corp.**

☞ Editors' Pick · Jan. 26, 2016 · CECO · 20 Comments

**Osiris: Aggressive Channel Stuffing, Accounting Irregularities Or Outright Fraud?**

☞ Jan. 15, 2016 · OSIR · 60 Comments

**How Revance Is Misleading Investors About RT002**

☞ Editors' Pick · Nov. 20, 2015 · RVNC · 12 Comments

**What's Wrong With Tokai Pharmaceuticals?**

☞ Editors' Pick · Nov. 2, 2015 · NVUS · 24 Comments

**Amplify Brands: A Busted IPO And A No-Brainer Short**

☞ Editors' Pick · Sep. 24, 2015 · BETR · 24 Comments

**Watch For A Potential 50% Drop In Omeros**

☞ Aug. 31, 2015 · OMER · 45 Comments

**Why Did Flotek Soar 46%?**

☞ Jul. 29, 2015 · FTK · 13 Comments

**SunCoke Confides To IRS: We Don't Qualify For MLP Status**

☞ Jun. 17, 2015 · SXC · 18 Comments

**New IRS Rules Could Eliminate SunCoke's MLP Status**

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM

NYSCEF DOC. NO. 8

INDEX NO. 153125/2018

RECEIVED NYSCEF: 11/30/2018

☞ **Editors' Pick** • Jun. 16, 2015 • SXC • 19 Comments

**Keryx Biopharmaceuticals: Watch For An FDA Warning Letter**
☞ May 11, 2015 • KERX • 102 Comments

**Why Is Air Media Falling?**
☞ Apr. 30, 2015 • AMCN • 23 Comments

**AirMedia Doubles On Misleading Investment Transaction**
☞ Apr. 28, 2015 • AMCN • 16 Comments

# DOCKET NO. 9

# Exhibit F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------X
VUZIX CORPORATION,

        Plaintiff(s),                        Index No. 153125/2018

    -against-                        AFFIDAVIT OF ATTEMPTED SERVICE

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,

        Defendant(s).
-------------------------------------------------X
STATE OF NEW YORK  )
                  S.S.
COUNTY OF NEW YORK)

        DOMINIC DELLAPORTE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

        That on the 5th day of July, 2018, at approximately the time of 7:21 AM, deponent attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 14 Wainwright Avenue, Apt. 2B, Yonkers, New York, but was told by the step mother of Richard Pearson that he lives with Burke Pearson in Dobbs Ferry.

        That on the 5th day of July, 2018, at approximately the time of 8:03 AM, deponent attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1C, Dobbs Ferry, New York, but was told by Burke Pearson that her husband Richard Pearson is not the same Richard Pearson named in this action.

        That on the 5th day of July, 2018, at approximately the time of 8:09 AM, deponent attempted to serve a true copy of the Summons, Verified Complaint and Notice of Commencement of Action Subject to Mandatory Electronic Filing upon Ricardo Antonio Pearson a/k/a Richard Pearson at 191 Broadway, Apt. 1E, Dobbs Ferry, New York, but was told by Alison Pearson that she resides with her boyfriend Mike Morano and that the defendant is not known to her.

DOMINIC DELLAPORTE #1320496

Sworn to before me this
9th day of July, 2018

NOTARY PUBLIC

                         **EVAN COHAN**
                **NOTARY PUBLIC & ATTORNEY AT LAW**
                    **NO. 02CO4998577**
            **QUALIFIED IN ROCKLAND COUNTY**
       **CERTIFICATE FILED IN NEW YORK COUNTY**
        **COMMISSION EXPIRES JUNE 29, 2022**

**DOCKET NO. 10**

INDEX NO. 153125/2018

Case 1:19-cv-00689   Document 1-1   Filed 01/23/19   Page 83 of 139

RECEIVED NYSCEF: 11/30/2018

# Exhibit G

7/2/201 REDACTED

Intelius Premier :: Profile


PREMIER PLUS

Welcome, Thomas! Go to Intelius.com | Sign Out

My List     Search     My Account

SEARCH BY:     NAME     PHONE     EMAIL

Find Anyone | First Name *(optional)* | Last Name | City, State *(optional)* | Search Now

Profile for Tracy A Burke                                               My List

## Tracy A Burke
Age: 51 (Born

None

Add Notes...

### Contact Information

Phone
(914) 693-1309   current
(914) 478-4694
(914) 478-3459
(914) 693-2823
(914) 231-5272

### Relatives

Richard Burke
Susan Burke
Ricardo Pearson
Dwight Burke
Parke Pearson
Helen Shearouse
Allison Pearson

### Current Phone & Address Check

1 phone number and 1 address current as of
06/28/2018.
Available utility records show service in this
person's name.

### Run a Criminal Check

Find out more about this person's background.
Search criminal records in 43 states that may
include when available:

- Felonies, misdemeanors, sex offenses, traffic
  violations, and other criminal offenses
- Case type, court name, court type, disposition,
  filing date, and more

Add to Profile

Criminal Check Disclaimer

### Interactive Relationship Map

Addresses Show All Addresses

1  191 Broadway #APT 1C   current
   Dobbs Ferry, NY 10522
   (914) 478-3459

2  28 Whitman ST
   Hastings On Hudson, NY 10706
   (914) 478-4694

3  83 Bellwood AVE
   Dobbs Ferry, NY 10522

4  422 E Kingsley ST #6
   Ann Arbor, MI 48104

5  28 Whitman RD
   Yonkers, NY 10710
   (914) 478-4694

**Property Details**
No property record found.

**Local Census Data**
Total households        3,822
Families                70%
Male / Female           47% / 53%

**Income**
Avg. Household          $133,103
Less $10K               4%
$10k to $14,999         1%
$15k to $24,999         6%
$25k to $34,999         5%
$35k to $49,999         8%
$50k to $74,999         10%
$75k to $99,999         14%
$100k to $149,999       18%
$150k to $199,999       13%
$200k or more           19%

**Education**
High School Degree      20%
College Degree          26%
Graduate Degree         29%

7/2/2016

Intelius Premier :: Profile

Intelius is a leading provider of public data about people and their connections to others. Intelius does not provide consumer reports and is not a consumer reporting agency as defined by the Fair Credit Reporting Act (FCRA). This site should not be used to determine an individual's eligibility for credit, insurance, employment, housing or any other purpose covered by the FCRA.

Intelius.com | Privacy Policy | Terms of Service | Help | Contact Us

© 2003 - 2016 PeopleConnect, Inc. d/b/a Intelius. All Rights Reserved.

# DOCKET NO. 11

# Exhibit H

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM
NYSCEF DOC. NO. 11
INDEX NO. 153125/2018
RECEIVED NYSCEF: 11/30/2018

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through July 24, 2018.

Selected Entity Name: SEEKING ALPHA INC.
Selected Entity Status Information

| | |
|---|---|
| Current Entity Name: | SEEKING ALPHA INC. |
| DOS ID #: | 4150434 |
| Initial DOS Filing Date: | OCTOBER 06, 2011 |
| County: | NEW YORK |
| Jurisdiction: | DELAWARE |
| Entity Type: | FOREIGN BUSINESS CORPORATION |
| Current Entity Status: | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
SEEKING ALPHA INC.
52 VANDERBILT AVE, FL 13
NEW YORK, NEW YORK, 10017-3837

**Chief Executive Officer**

ELI HOFFMANN
52 VANDERBILT AVE, FL 13
NEW YORK, NEW YORK, 10017-3837

**Principal Executive Office**

SEEKING ALPHA, LTD
47 HA'NISSIM
RA'ANNA, ISRAEL, 43583-71

**Registered Agent**

NONE

This office does not record information regarding the names
and addresses of officers, shareholders or directors of
nonprofessional corporations except the chief executive
officer, if provided, which would be listed above. Professional
corporations must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the initial
certificate of incorporation, however this information is not
recorded and only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | \$ Value per Share |
|---|---|---|
| | No Information Available | |

\*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 06, 2011 | Actual | SEEKING ALPHA INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS Homepage | Contact Us

# DOCKET NO. 12

# Exhibit I

# Terms Of Use

*PLEASE READ OUR TERMS OF USE CAREFULLY BEFORE YOU USE OUR WEB SITE*

Seeking Alpha Ltd. ("Seeking Alpha" "we," or "us") provides its web site, Seeking Alpha, located at https://seekingalpha.com/ (together with all other websi operated by or on behalf of Seeking Alpha, Ltd., the "Site") to you, an individual user ("you") for your individual usage, subject to compliance with the term forth herein.

## 1. Agreement

By using the Site, you agree to be bound by our Terms of Use (the "TOU"). If you do not agree to the terms and conditions contained in the TOU and Seek policy, please do not access or otherwise use the Site or any information contained herein.

You affirm that you are over the age of 18, as the Site is not intended for children under 18. If it comes to Seeking Alpha's attention through reliable means user is a child under 18 years of age, Seeking Alpha will cancel that user's account.

## 2. Changes to the TOU

We reserve the right at any time to:

- Change the terms and conditions of the TOU;
- Change the Site, including eliminating or discontinuing any content or feature of the Site; or
- Impose fees, charges or other conditions for use of the Site or parts thereof (with reasonable notice).

Seeking Alpha may modify the Site at any time without prior notice, and you accept those modifications if you continue to use the Site. You should check th see recent changes.

## 3. Important Securities Disclaimer

You understand that no content published on the Site constitutes a recommendation that any particular security, portfolio of securities, transaction or inves suitable for any specific person. You further understand that none of the bloggers, information providers, App providers, or their affiliates are advising you p concerning the nature, potential, value or suitability of any particular security, portfolio of securities, transaction, investment strategy or other matter. To the the content published on the Site may be deemed to be investment advice or recommendations in connection with a particular security, such information is tailored to the investment needs of any specific person. You understand that an investment in any security is subject to a number of risks, and that discuss published on the Site will not contain a list or description of relevant risk factors. In addition, please note that some of the stocks about which content is pu have a low market capitalization and/or insufficient public float. Such stocks are subject to more risk than stocks of larger companies, including greater vola and less publicly available information. Blogs, postings or content on the Site which may or may not be deemed by you to be recommendations may have stock prices.

You understand that the Site may contain opinions from time to time with regard to securities mentioned in other Seeking Alpha blogs or products, and tha blog or product may be different from those in another blog or product. You understand and agree that, although we require all employees to disclose ever they, their immediate family, or any entity under their control, have a personal interest, if such stock is mentioned in a blog, post, or content which they writ including outside bloggers or other content contributors or their affiliates may write about securities in which they or their firms have a position, and that the their own account, and that they may or may not be subject to a disclosure policy. In cases where Seeking Alpha becomes aware that one of its employee her disclosure obligation, Seeking Alpha will take appropriate action. In addition, outside bloggers or content contributors may be subject to certain restrict their own account. However, you understand and agree that at the time of any transaction that you make, one or more bloggers or content contributors or I have a position in the securities written about.

You understand that performance data is supplied by sources believed to be reliable, that the calculations herein are made using such data, and that such guaranteed by these sources, the information providers, or any other person or entity, and may not be complete.

From time to time, reference may be made on our Site to prior articles and opinions we have published. These references may be selective, may reference an article or opinion, and are likely not to be current. As markets change continuously, previously published information and data may not be current and s upon.

All content on the Site is presented only as of the date published or indicated, and may be superseded by subsequent market events or for other reasons. responsible for setting the cache settings on your browser to ensure you are receiving the most recent data.

## 4. No Investment Recommendations or Professional Advice

The Site is not intended to provide tax, legal, insurance or investment advice, and nothing on the Site should be construed as an offer to sell, a solicitation a recommendation for any security by Seeking Alpha or any third party. You alone are solely responsible for determining whether any investment, security other product or service, is appropriate or suitable for you based on your investment objectives and personal and financial situation. You should consult an professional regarding your specific legal or tax situation.

## 5. Copyright, Linking Policy and Trademarks

The Site and the content contained herein, as well as all copyrights, including without limitation, the text, documents, articles, products, software, graphics videos, interactive features, services, links, User Submissions (as defined below), third-party Apps, and any other content on the Site ("Content") and the t marks and logos contained therein are the property of Seeking Alpha and its third-party licensors or providers. You may access and use the Content, and v print out copies of any content from the Site, solely for your personal, non-commercial use. If you download or print a copy of the Content for personal use copyright and other proprietary notices contained therein. You acknowledge that you do not acquire any ownership rights by using the Site. Seeking Alpha not expressly granted in and to the Site.

The Site contains links to other Internet websites or links to Content created by third parties which is published on the Site. We neither control nor endorse websites or Content, nor have we reviewed or approved any Content that appears on such other websites or on our Site. Please read the terms of use and any such third party sites that you interact with before you engage in any activity. You are solely responsible and liable for your use of and linking to all thir acknowledge and agree that we shall not be held responsible for the legality, accuracy, or appropriateness of any Content, advertising, products, services, located on our Site or any other websites, nor for any loss or damages caused or alleged to have been caused by the use of or reliance on any such conte we do endeavor to facilitate the provision of quality Apps, we are not responsible for any loss or damages caused or alleged to have been caused by their

You may link to any content on the Site. If you are interested in reprinting, republishing or distributing content from Seeking Alpha, please contact Seeking written consent. Seeking Alpha™ is a trademark and/or service mark of Seeking Alpha or an affiliate. All other trademarks, service marks, and logos used the trademarks, service marks, or logos of their respective owners.

This section shall survive any termination of these TOU.

## 6. User Conduct

You may not use, copy, display, sell, license, de-compile, republish, upload, post, transmit, distribute, create derivative works or otherwise exploit Content t online bulletin boards, message boards, newsgroups, chat rooms, or in other any manner, without our prior written permission. Modification of the Content Content for any purpose other than your own personal, noncommercial use is a violation of our copyright and other proprietary rights, and can subject you

In addition, in connection with your use of the Site and its services (including by sending private messages to other registered users of the Site via your Se messaging account), you agree not to:

- Restrict or inhibit any other visitor from using the Site, including, without limitation, by means of "hacking" or defacing any portion of the Site;
- Use the Site for any unlawful purpose;
- Express or imply that any statements you make are endorsed by us, without our prior written consent;
- Modify, adapt, sublicense, translate, sell, reverse engineer, decompile or disassemble any portion of the Site;
- "Frame" or "mirror" any part of the Site without our prior written authorization;
- Use any robot, spider, site search/retrieval application, or other manual or automatic device or process to download, retrieve, index, "data mine", "scr any way reproduce or circumvent the navigational structure or presentation of the Site or its contents;
- Harvest or collect information about visitors to the Site without their express consent;
- Send unsolicited or unauthorized advertisements, spam, chain letters, etc to other users of the Site;
- Transmit any Content which contains software viruses, or other harmful computer code, files or programs.

You also agree to comply with all applicable laws, rules and regulations in connection with your use of the Site and the content made available therein.

In order to access some of the services of the Site, you will have to create an account. By creating this account you agree to the following:

- You may only maintain a single account;
- You may never share your account user name or password or knowingly provide or authorize access to your account (including without limitation a "Subscription", as defined belo
- You may never use another user's account without permission;
- When creating your account, you must provide accurate and complete information;
- You are solely responsible for the activity that occurs on your account, and you must keep your account password secure;
- You must notify us immediately of any breach of security or unauthorized use of your account;

You will be liable for any use made of your account or password and the losses of Seeking Alpha or others due to such unauthorized use. We will not be li caused by any unauthorized use of your account.

Seeking Alpha has the right to terminate your access to the Site, in its sole discretion.

## 7. Overview of Posting Content; Monitoring Content

The Site permits the submission of Content by users of the Site, including without limitation comments, articles, links, private messages sent to other regis the Site's messaging system, and items in our StockTalk and Instablog sections, and including from those who give permission to Seeking Alpha to post th Submissions") and the hosting, sharing and publishing of such User Submissions on the Site. Seeking Alpha has the right in its sole discretion and without you, to monitor, censor, edit, move, delete, and/or remove any and all Content posted on its Site or any Content transmitted by direct messaging or by any from your Seeking Alpha user account at any time and for any reason. Without limiting the foregoing, Seeking Alpha has the right to delete any comment c believes, in its sole discretion, that you may violate the TOU of the Site by you.

On user-generated Instablogs, StockTalks and Comments, Seeking Alpha reserves the right to remove content that violates one of the following principles Seeking Alpha, at our discretion:

- No incitement to hatred. Material that promotes hatred toward groups based on race or ethnic origin, religion, disability, gender, age, veteran status, orientation/gender identity will be removed.
- No pornography or pedophilia
- No direct or veiled threats against any person or group of people.
- No copyright infringement
- No plagiarism. This includes posting content verbatim from other sources without proper attribution and/or repurposing content from other sources ar without reference to the content's creator.
- No publishing of other people's private and confidential information, such as credit card numbers, Social Security Numbers, and driver's and other lic
- No impersonation of others in a manner that is intended to or does mislead or confuse others.
- No use for unlawful purposes or for promotion of dangerous and illegal activities. Your account may be terminated and you may be reported to the ap authorities.
- No spamming, link-spamming or transmitting malware and viruses.
- No personal attacks.
- No profanity or vulgarity.
- No business solicitations or advertising.
- No inappropriate, unethical or misleading behavior.

**Important note:** Seeking Alpha encourages civil, thought-provoking debate and idea-sharing among investors and stock-market followers. In order to mai discourse appropriate to our user base, we are strongly opposed to trolling, uncivilized discussion, mudslinging, inappropriate language, and blanket dismi At our discretion, we may delete comments, StockTalks and Instablogs, and block/delete accounts of users we believe lower the level of discourse and co engender.

Moderating decisions are subjective, and we strive to make them carefully and consistently. Due to the volume of content, we cannot review moderation d and cannot reverse decisions.

Our blogs and Content are intended to serve as a discussion center for thoughtful users who make their own investment decisions, with or without the hel are not the place for stock touters, cheerleaders or hypesters. We strongly encourage all participants to disclose any positions they have in stocks being d

Without derogating from the above, Seeking Alpha editors, at their discretion, may refrain from posting or remove User Submissions that violate these stan otherwise inappropriate. These standards are designed to ensure that the dialogue on the Site is credible, responsible, intelligent and informative. We can users will tell the truth, and we will not monitor the veracity of names and positions or the content of any posts. However, by setting out the above guidelin the credibility of the discussion and foster a spirit of open, honest exchanges of information.

If an author has a business relationship with a company named in an article that he or she has authored, that relationship must be fully and accurately disc

If you have any comments on our policies, or complaints or concerns of any kind about any posts, please contact us at support@seekingalpha.com. We w
information that you communicate to us, but we may not be able to take action or respond directly to each email.

## 8. User Submissions; Online Rules of Conduct

When you post any User Submission on the Site or give Seeking Alpha permission to post your Content, you agree to:

- Post comments in both tone and content that contribute in a positive and high quality manner to the substantive exchange of information and the sub
Site.
- Automatically grant Seeking Alpha a royalty-free, perpetual, worldwide, irrevocable, non-exclusive and fully transferable and sublicensable right and
reproduce, modify, adapt, publish, translate, create derivative works from, distribute, perform and display any User Submission (in whole or in part) a
any of your User Submission in other works now or in the future and in any media formats and through any media channels, and you confirm and wa
Alpha that you own the copyright in each of your User Submissions and have all the rights, power and authority necessary to grant the above license

Seeking Alpha will use commercially reasonable efforts to attribute material User Submissions to the author.

If you provide any feedback or suggestions to Seeking Alpha regarding the Site or Seeking Alpha's services, including without limitation in response to a s
connection with a particular User Submission (collectively, "Feedback"), Seeking Alpha may use such Feedback for any purpose, including without limitatic
authors on their dashboard. In order that we may incorporate such Feedback into Seeking Alpha's Site and/or services, Seeking Alpha alone will own all ri
interest, including all related intellectual property rights, in and to all such Feedback and you hereby assign such Feedback to Seeking Alpha free of charg

When you post any User Submission on the Site, you also agree to abide by the following disclosure rules:

- To disclose the existence at the time of writing of a long or short position (including stocks, options or other instruments) in any stock mentioned in ar
(except for "Comments").
- You may not write about a stock with the intention to boost or reduce the stock's price and sell (or buy) the stock into the resulting strength or weakne
- If you intend at the time or writing to sell or buy a stock within three days of publication of a User Submission that discusses that stock, you must disc
- Abide by the following conflict of interest rule: You will disclose any material relationships with companies whose stocks you write about in a User Su
that stand to gain in any way from the viewpoint you are outlining. Examples: You must disclose if you are employed by a company whose stock you
perform consulting for a company you write about; receive paid advertising revenue or any other form of sponsorship fee from a company you write a
to narrow asset classes as well. For example, if you are paid to promote a gold dealer, that must be disclosed in any User Submission about gold.
- If you choose an alias, be responsible for all statements made and acts or omissions that occur by use of your alias.
- Waive any and all rights against Seeking Alpha and hold Seeking Alpha harmless in connection with any claims relating to any action taken by Seeki
its investigation of a suspected violation or result of its conclusion that a violation of these TOU has occurred, including but not limited to the removal
from the Site or a suspension or termination of your access to the Site.

Maintain and promptly update your registration data to keep it true, accurate, current and complete.

You agree not to:

- Choose an alias that is threatening, abusive, offensive, harassing, derisive, defamatory, vulgar, obscene, libelous, hatefully, racially, ethnically or othe
objectionable.
- Post or transmit any Content that you either know or should know is false, deceptive or misleading, or misrepresent or deceive others as to the sourc
integrity or completeness of any comment you post.
- Post or transmit any Content that is unlawful, harmful or injurious to others, contains software viruses, or other harmful computer code, files or progra
abusive, offensive, harassing, derisive, defamatory, vulgar, obscene, libelous, hatefully, racially, ethnically or otherwise tortious or objectionable.
- Post or transmit any Content that does or may invade the privacy or violate or infringe on any rights of others, including, without limitation, copyrights
intellectual property rights.
- By use of your alias or in any comment, impersonate any person or entity, falsely or deceptively state, infer or otherwise misrepresent your affiliation
to any person or entity.
- Post or transmit any Content which, either the act of posting or the comment itself, you do not have a right to do under any law, regulation or order of
result of an employment, contractual, fiduciary or other legal obligation or relationship.
- Post or transmit any advertising, promotional materials, so called "chain letters," "pyramid" or other schemes or invitations to participate in these or a
solicitation or promotion.
- Post or transmit any non-public or otherwise restricted, confidential or proprietary information without authorization.
- Violate any local, state, national or international law, regulation or order of any court, including but not limited to regulations of the U.S. Securities and
Commission, any rules of any securities exchange, including without limitation, the New York Stock Exchange, the American Stock Exchange or The
Market.

## 9. Caveats

While we believe that the Site can and should be a positive environment for the exchange of information, you understand that the Site is open for posting t
individuals may post comments that may be offensive, indecent, objectionable, false, misleading or simply inappropriate.

## 10. Responsibility for User Submission

Each individual who submits a User Submission, whether published on the Site or not, is solely responsible for her or his own acts, including the content, c
information in the User Submission he or she submits. This means that each individual, and not Seeking Alpha, is entirely responsible for anything and eve
posts on the Site including on any Blog, StockTalk and Instablog. Seeking Alpha does not, and does not intend to, pre-screen any comments posted on its
Alpha cannot and does not guarantee the accuracy, integrity or quality of anything that may appear on its Site.

## 11. Disclosure

We reserve the right to access, read, preserve, and disclose any User Submissions (whether published or not) or any other information we believe is reasc
(a) comply with any applicable law, regulation, legal process, subpoena or governmental or regulatory request, (b) enforce these TOU, including investigat
violations of it, (c) detect, prevent, or otherwise address fraud, security or technical issues, (d) respond to user support requests, or (e) protect the rights, p
Seeking Alpha, its users, yourself or the public.

## 12. Disclaimer of Warranties

THE SITE, AND ANY PRODUCT OR SERVICE OBTAINED OR ACCESSED THROUGH THE SITE, IS PROVIDED "AS IS" AND WITHOUT REPRESEN'
WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, SEEKING ALPHA, IT
DIRECTORS, EMPLOYEES, AFFILIATES, SUPPLIERS, ADVERTISERS, AND AGENTS DISCLAIM ALL WARRANTIES, EXPRESS, IMPLIED OR STATI
INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF TITLE AND NON-INFRINGEMENT, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITI
PARTICULAR PURPOSE, AND ALL WARRANTIES RELATING TO THE ADEQUACY, ACCURACY OR COMPLETENESS OF ANY INFORMATION ON (

Some jurisdictions do not allow the exclusion of implied warranties, so the above exclusions may not apply to you.

SEEKING ALPHA AND ITS AFFILIATES, SUPPLIERS, AGENTS AND SPONSORS DO NOT WARRANT THAT YOUR USE OF THE SITE WILL BE UNINTERRUPTED, ERROR-FREE OR SECURE, OR THAT THE SITE OR THE SERVER(S) ON WHICH THE SITE IS HOSTED ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. YOU ASSUME TOTAL RESPONSIBILITY AND RISK FOR YOUR USE OF THE SITE AND YOUR RELIANCE THEREON. NO OPINION, STATEMENT OF SEEKING ALPHA OR ITS AFFILIATES, SUPPLIERS, AGENTS, MEMBERS, OR VISITORS, WHETHER MADE ON THE SITE OR OTHERWISE, SHALL CREATE ANY WARRANTY.

### 13. Limitation of Liability

NEITHER SEEKING ALPHA NOR ITS AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SUPPLIERS, ADVERTISERS, SPONSORS ARE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE OR OTHER DAMAGES UNDER NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY ARISING OUT OF OR RELATING IN ANY WAY TO THE SITE AND/OR ANY CONTENT CONTAINED THEREIN OR ANY PRODUCT OR SERVICE USED OR PURCHASED THROUGH SEEKING ALPHA. YOUR SOLE REMEDY FOR DISSATISFACTION WITH THE SITE USING IT. THE SOLE AND EXCLUSIVE MAXIMUM LIABILITY TO SEEKING ALPHA FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION (WHETHER IN CONTRACT, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE), OR OTHERWISE) SHALL NOT EXCEED THE TOTAL AMOUNT PAID TO US, IF ANY, FOR ACCESS TO THE SITE OR ANY SERVICES, DURING THE PREVIOUS SIX (6) MONTHS PRIOR TO BRINGING THE CLAIM.

Some jurisdictions do not allow the limitation or exclusion of liability for incidental or consequential damages, so the above limitations may not apply to you.

### 14. Indemnification

As a condition of your use of the Site, you agree to indemnify, defend and hold us, our officers, directors, employees, agents and representatives harmless from any and all claims, damages, losses, costs (including reasonable attorneys' fees), or other expenses that arise directly or indirectly out of or from (a) your use (b) your use of the Site; (c) your violation of the rights of any third party, or (d) any claim that one of Your User Submissions caused damage to a third party. This indemnification obligation will survive these TOU and your use of the Site.

### 15. Termination

You understand and agree that Seeking Alpha may, under certain circumstances and without prior notice to you, terminate your access to and use of the Site. termination shall include, but not be limited to, (i) breaches or violations of the TOU or other agreements or guidelines, (ii) requests by law enforcement or other regulatory authorities or (iii) repeat violators of third party copyrights or other intellectual property.

### 16. Copyright Policy

Seeking Alpha respects the intellectual property of others, and we ask our users to do the same. Seeking Alpha may, in appropriate circumstances and at its discretion, terminate the account or access of users who infringe the intellectual property rights of others.

If you believe that your work has been copied in a way that constitutes copyright infringement, please provide our Copyright Agent the following information:

- 16.1: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest;
- 16.2: a description of the copyrighted work that you claim has been infringed, including the URL (web page address) of the location where the copyrighted work exists or a copy of the copyrighted work;
- 16.3: a description of where the material that you claim is infringing is located on the site, including the URL;
- 16.4: your address, telephone number, and email address;
- 16.5: a statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; and
- 16.6: a statement by you, made under penalty of perjury, that the above information in your Notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf.

Seeking Alpha's Copyright Agent for Notice of claims of copyright infringement can be reached as follows:

- By mail:
  Seeking Alpha
  52 Vanderbilt Ave
  New York, NY 10017
- By phone: 212-695-7190
- By email: copyright@seekingalpha.com

Please also note that under Section 512(f) any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability.

### 17. Additional Terms that Apply to Seeking Alpha's iPhone® Mobile Application

By downloading Seeking Alpha's mobile application on your iPhone® mobile device (the "Licensed Application"), your use of the Licensed Application is also subject to Usage Rules established by Apple, including those set forth in the Apple App Store Terms of Service, effective as of the date that you download the Licensed Application. In addition, you agree to the following terms:

- You acknowledge that this TOU is entered into by and between You and Seeking Alpha exclusively and not with Apple, Inc. or its subsidiaries ("Apple").
- Any appearance of the word "Site" in the TOU is also intended, where appropriate, to include a reference to the Licensed Application.
- As between Seeking Alpha and Apple, we are exclusively responsible for the Licensed Application and its content, unless specifically noted otherwise.
- Seeking Alpha grants you a nontransferable, nonexclusive, royalty-free, fully paid, worldwide license (without the right to sublicense) to install and use the Licensed Application, in executable object code format only, solely on your iPhone® mobile device.
- Except as required by applicable law, You acknowledge that neither Seeking Alpha nor Apple are obligated to maintain or support the Licensed Application. Notwithstanding the foregoing, from time to time, we may provide updates or upgrades to the Licensed Application (each a "Revision"), but we are not obligation to do so. Such Revisions will be supplied according to Seeking Alpha's then-current policies, which may include automatic updating or upgrades without additional notice to you. You consent to any such automatic updating or upgrading of the Licensed Application. All references herein to the Licensed Application include Revisions. This TOU shall govern any Revisions that replace or supplement the original Licensed Application unless the Revision is accompanied by a separate license agreement which will govern the Revision.
- Currently, we do not charge for Your use of the Licensed Application, however, your use of the Licensed Application requires and utilizes internet connection access. To the extent that a third party service provider or carrier charges for Your internet or data usage, you agree to be solely responsible for those charges.
- In the event of any failure of the Licensed Application to conform to any applicable warranty provided herein, You may notify Apple, and Apple will refund the purchase price, if any, for the Licensed Application to You. Furthermore, to the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the Licensed Application, and any other claims, losses, liabilities, damages, costs or expenses attributable to any failure of the Licensed Application to conform to any warranty.
- To the extent that a claim is permitted pursuant to this TOU, Seeking Alpha, and not Apple, is responsible for addressing Your claims or those of any third party relating to the Licensed Application or Your possession and/or use of the Licensed Application, including, but not limited to: (i) product liability claims; (ii) any claim that the Licensed Application fails to conform to any applicable legal or regulatory requirement; and (iii) claims arising under consumer protection or similar legislation. In the event there is a third party claim that the Licensed Application or Your possession and use of the Licensed Application infringes a third party's intellectual property rights, Seeking Alpha, not Apple, will be solely responsible for the investigation, defense, settlement and discharge of any such intellectual property infringement claim.
- You represent and warrant that (i) You are not located in a country that is subject to a U.S. Government embargo or that has been designated by the U.S. Government as a "terrorist supporting" country; and (ii) You are not listed on any U.S. Government list of prohibited or restricted parties.

• Apple is an intended third-party beneficiary of this Section 17, Additional Terms. You acknowledge that Apple will have the right (and will be deemed the right) to enforce any of the terms or conditions of this Section 17 against you as a third-party beneficiary of this Section 17.

## 18. Additional Terms that Apply to Seeking Alpha Paid Subscriptions

- By subscribing to Seeking Alpha subscription products (the "Subscription"), you agree to pay the applicable Subscription fees set forth on the Site. S reserves the right to revise Subscription fees upon reasonable notice.
- We remind you that all the rules applicable to setting up an account under Section 6 above (entitled, "User Conduct") apply to your Subscriptions.
- Unless we notify you in writing otherwise, you are not permitted to share Content available through your Subscriptions.
- Unless stated otherwise in writing, Subscription fees are nonrefundable.
- Seeking Alpha reserves the right to cancel a Subscription at any time. If we cancel a Subscription due to a breach of these Terms of Use you will not refund.

## 19. Miscellaneous

The Site is directed solely to individuals residing in jurisdictions in which provision of the Site's content is legal. We make no representation that materials are appropriate or available for use in other locations. Those who choose to access the Site from other locations do so on their own initiative and at their o responsible for compliance with local laws, if and to the extent applicable. We reserve the right to limit the availability of the Site to any person, geographic we so desire, at any time and in our sole discretion, and to limit the quantities of any such service or product that we provide.

The TOU, together with all Seeking Alpha policies referred to herein, constitutes the entire agreement between you and Seeking Alpha relating to your use supersedes any all prior or contemporaneous written or oral agreements on that subject between us. The TOU, privacy policy and the relationship bet Seeking Alpha are governed by and construed in accordance with the laws of the State of New York, without regard to its principles of conflict of laws. You agree to submit to the personal and exclusive jurisdiction of the federal and state courts located within New York County, New York, and waive any jurisdic inconvenient forum objections to such courts. If any provision of the TOU is found to be unlawful, void, or for any reason unenforceable, then that provisior severable from the TOU and shall not affect the validity and enforceability of any remaining provisions. No waiver by either party of any breach or default h deemed to be a waiver of any preceding or subsequent breach or default. Any heading, caption or section title contained in the TOU is inserted only as a r convenience and in no way defines or explains any section or provision hereof. We reserve the right to require you to sign a non-electronic version of the 1

*Updated: August 9, 2017*

# DOCKET NO. 13

# Exhibit J

# Latest Article

# LONG REV. Revlon's short vs. float setup just became tighter than Tilray(TLRY)

🕐 September 19, 2018    📂 <u>REV</u>

Shares of Tilray (TLRY) have now spiked up by more than 10x from its recent IPO price.  The reason is simply that the short interest became too high relative to the float (likely hitting as as much as 80% or more). As always, the Tilray "infinity squeeze" caught everyone by surprise. It always does.

In this report, I first illustrate the numbers which sparked the Tilray squeeze.   I then show how and why infinity squeeze potential appears even more extreme at Revlon (REV) than it did at Tilray. This is specifically due to recent changes in ownership and short interest,

The float has always been very tight at Revlon, with billionaire Ron Perelman already owning over 84% of the company.  A standstill agreement which precluded Perelman from taking his stake to over 90% of Revlon just EXPIRED over this past weekend.

In recent weeks, Ron Perelman has continued his purchases of Revlon, acquiring an additional 293,943 shares, above his earlier 84.65% stake paying up to around $21.00.

The next two largest shareholders (Mittleman Brothers and Alberta Investment) have now acquired a total of 791,931 additional shares, further reducing the float. Mittleman has made clear in public filings that he has no intention of selling for years.

Against that, the _short interest_ in Revlon has gradually _increased_ from 1.8 million shares to 2.7 million shares since April.

**_As a result, the total shares remaining in the tradable float is now down to 2.68 million shares but short interest is over 2.7 million shares._**

Mittleman has stated in SEC filings that the fair value for Revlon could exceed $50. This is why Perelman is expected to buyout the remainder of Revlon.

**_For those who haven't noticed, the squeeze has already entered its early stages in recent days._**

*This report is the opinion of the author. It is not a recommendation for anyone anywhere to do anything at any time. Do your own research, form your own opinions. The author is not an investment advisor. The author may conduct transactions on various securities mentioned in this report (or on securities of competitors of other comparable companies, securities etc.) within the next 72 hours. The author is long REV.*

DOWNLOAD REPORT

# DOCKET NO. 14

# Exhibit K

# Biography

Richard Pearson focuses on special situations investing in the US and in China. Mr. Pearson was previously a Director in Equity Capital Markets, Investment Banking for a top tier global investment bank and was based out of New York, Hong Kong and London. During that time he successfully raised over $30 billion for publicly listed companies in the US, Europe and Asia via equity, convertible bond and derivative transactions. His industry focus was on healthcare / biotech, technology and industrial companies.

Mr. Pearson has had over 100 articles published in various venues, discussing due diligence issues in publicly traded equities.

Mr. Pearson graduated Magna cum Laude with a degree in Finance from the University of Southern California, and also attended Peking University in Beijing. He has formally studied Mandarin for over 8 years and has over 20 years of on the ground experience in China.

He currently divides his time between the US and China depending on the requirements of various due diligence projects.

# DOCKET NO. 15

# Exhibit L

# Contact

MOXReports welcomes readers to submit any correspondence using the form below.

MOXReports recognizes that exceptional information and observations can come from all corners of the market and are an invaluable asset in evaluating special situations. All correspondence will be acknowledged and appreciated. All correspondence will be answered promptly and will be kept strictly confidential.

You can also contact us directly at info@moxreports.com.

Name

Email

Subject

Message

SEND

I'm not a robot

reCAPTCHA
Privacy - Terms

# DOCKET NO. 16

# Exhibit M

FILED: NEW YORK COUNTY CLERK 11/30/2018 05:08 PM INDEX NO. 153125/2018
NYSCEF DOC. NO. 16 RECEIVED NYSCEF: 11/30/2018

https://www.linkedin.com

in Search | Home | My Network 13 | Jobs | Messaging 11 | Notifications 7 | Me | Work | Free Upgrade to Premium

112 New NY Clients - 112 new legal clients seeking a New York attorney. View their cases today. Ad ···

Rick Pearson · 3rd

Independent Investment Management Professional

Chaoyang District, Beijing, China

Connect ···

Deutsche Bank

Peking University

See contact info

500+ connections

I don't use linked-in very often, so please feel free to email me at: rick.pearson@pearsoninvestment.com

Promoted ···

112 New NY Clients
112 new legal clients seeking a New York attorney. View their cases today
Learn more

Top MBA for Professionals
Earn a top-tier MBA online from UNC in 18 months. GMAT waivers available
Learn more

Promoted ···

112 New NY Clients
112 new legal clients seeking a New York attorney. View their cases today
Learn more

Top MBA for Professionals
Earn a top-tier MBA online from UNC in 18 months. GMAT waivers available
Learn more

Get the LinkedIn app and see more profiles like Rick's anytime, anywhere ×

tiger3208@aol.com | Send me a link

Or send me an SMS instead

Rick Pearson
Independent In...

Experience





Attorney Needed ASAP - Crucial need for local attorney in your area. View new cases today.  Ad ···

## Rick Pearson · 3rd

Independent Investment Management Professional

Chaoyang District, Beijing, China

Connect   ···

Deutsche Bank

Peking University

See contact info

500+ connections

I don't use linked-in very often, so please feel free to email me at: rick.pearson@pearsoninvestment.com

Promoted   ···



**Attorney Needed ASAP**

Crucial need for local attorney in your area. View new cases today.

Learn more

**Real Estate Attorneys!**

Get your deal closed with Commonwealth Land Title in New York. Start now!

Learn more

## Experience



**Director**
Deutsche Bank
1997 – 2005 · 8 yrs

Convertible bond and derivative structuring and origination. New York, London, Hong Kong.

**Analyst - International Private Equity**
Trust Company of the West
Sep 1996 – Apr 1997 · 8 mos

**Analyst - Private Equtiy**
ASIMCO
Jun 1995 – Sep 1995 · 4 mos

Asimco is based in Beijing, China and manages direct investment in China automotive component manufacturers.

**Analyst - Private equity**
ASIMCO
Jun 1995 – Aug 1995 · 3 mos

Asimco is based in Beijing, China and manages direct investment in China automotive component manufacturers.

## Education



**Peking University**
Intensive Chinese Language Program - Advanced
2009 – 2009



**University of Southern California**
International Finance, Finance, Mandarin
1994 – 1997

| | China Venture Capital & Private Eq... | | eMind - eLearning Professionals |
|---|---|---|---|
| | 15,133 members | | 5,243 members |
| | University of Southern California | Tethys | Tethys Technology |
| | 396,006 followers | | 419 followers |
| | Hedge Fund Group (HFG) Associati... | | CFA Institute Members |
| | 147,712 members | | 46,239 members |

See all

**Linked** in

About

Community Guidelines

Privacy & Terms

Send feedback

LinkedIn Corporation © 2018

Questions?

Visit our Help Center.

Manage your account and privacy.

Go to your Settings.

Select Language

English (English)

# DOCKET NO. 17

# Exhibit N

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CEMTREX, INC., | 2:17-cv-01258-JS-AKT |
| Plaintiff, | |
| v. | |
| RICARDO ANTONIO PEARSON, *a/k/a* RICHARD PEARSON and *JOHN DOES No. 1-10*, | |
| Defendants. | |

## NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i)

Plaintiff Cemtrex, Inc., by its counsel hereby voluntarily dismisses this action, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1).

Despite making seven attempts, Cemtrex has been unable to serve defendant Ricardo Antonio Pearson, a/k/a Richard Pearson ("Pearson"), within the 90-day time limit set forth in Rule 4(m). Given the uncertainty of successful service and the significant expenditure of time and money additional attempts at service will involve, Cemtrex wishes to focus its resources on defending the related putative securities class action litigation resulting from Pearson's false accusations. Cemtrex anticipates that it will prevail in the securities litigation, and reserves the right to re-file its claims against Pearson at that time.

Dated: New York, New York
June 5, 2017

OLSHAN FROME WOLOSKY LLP

By: _____

Thomas J. Fleming
*Attorneys for Plaintiff*
1325 Avenue of the Americas, 15th Floor
New York, New York 10019
(212) 451-2213

# DOCKET NO. 18

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
VUZIX CORPORATION,

                        Plaintiff,                     Index No.: 153125/2018

     -against-


RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                 Defendant.
-------------------------------------------------------------------x




**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS EX-PARTE APPLICATION FOR AN ORDER
EXTENDING TIME TO SERVE DEFENDANT AND
<u>DIRECTING MANNER OF SERVICE</u>**




SICHENZIA ROSS FERENCE LLP
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Tel. No. (212) 930-9700

*Attorneys for Plaintiff Vuzix Corporation*




<u>On the motion:</u>
Irwin Weltz
Thomas McEvoy

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 2

    A.  Plaintiff's Time to Serve Should be Extended for
       "Good Cause" and in the "Interest of Justice" ................................................................ 2
        i.     Plaintiff Has "Good Cause" for an Extension of Time ...................................... 4
        ii.    The "Interest of Justice" Warrants an Extension of Time ................................. 5

    B.  The Court Should Grant Plaintiff's Request to Serve Defendant at
       His Known Email Addresses and Via *Seeking Alpha* Pursuant
       to CPLR § 308(5) ............................................................................................................ 6

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

### Cases

*Alfred E. Mann Living Tr. v. ETIRC Aviation S.A.R.L.*,
  78 A.D.3d 137, 910 N.Y.S.2d 418 (1st Dep't 2010)............................................................8

*Baidoo v. Blood-Dzraku*,
  48 Misc. 3d 309, 5 N.Y.S.3d 709 (Sup. Ct., N.Y. Cty. 2015) ........................................7, 8

*Bossuk v. Steinberg*,
  58 N.Y.2d 916, 918, 460 N.Y.S.2d 509 (1983)................................................................8

*Campbell v. Starre Realty Co.*,
  282 A.D.2d 161, 724 N.Y.S.2d 584 (1st Dep't 2001).........................................................3

*De Vries v. Metropolitan Transit Authority*,
  11 A.D.3d 312, 313, 783 N.Y.S.2d 540 (1st Dep't 2004) ...............................................5, 6

*Deutsche Bank, AG v. Vik*,
  149 A.D.3d 600, 50 N.Y.S.3d 291 (1st Dep't 2017)..........................................................3

*Frank v. Garcia*,
  84 A.D.3d 654, 923 N.Y.S.2d 529 (1st Dep't 2011).......................................................3, 5

*Franklin v. Winard*,
  189 A.D.2d 717, 592 N.Y.S.2d 726 (1st Dep't 1993).........................................................8

*Hafkin v. North Shore Univ. Hosp.*,
  279 A.D.2d 86, 89, 718 N.Y.S.2d 379 (2d Dep't 2000) ....................................................3

*Harkness v. Doe*,
  261 A.D.2d 846, 689 N.Y.S.2d 586 (4th Dep't 1999).........................................................7

*Henneberry v. Borstein*,
  91 A.D.3d 493, 495, 937 N.Y.S.2d 177 (1st Dep't. 2012) .............................................4, 5

*Leader v. Maroney, Ponzini & Spencer*,
  97 N.Y.2d, 95, 104-06, 736 N.Y.S.2d 291, 761 N.E.2d 1018 (2001) .......................2, 3, 5

*Navika Capital Grp., LLC v. Doe*,
  2017 U.S. Dist. LEXIS 2926 (E.D.N.Y. Jan. 6, 2017) ......................................................8

*Nunez-Ariza v. Nell*,
  161 A.D.3d 614, 78 N.Y.S.3d 38 (1st Dep't 2018)...........................................................6

ii

*Philip Morris USA Inc. v. Veles Ltd.,*
    2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ....................................................8

*Snyder v. Energy Inc.,*
    19 Misc. 3d 954, 857 N.Y.S.2d 442 (Civ. Ct., N.Y. Cty. April 4, 2008) ...........................8

*State St. Bank & Tr. Co. v. Coakley,*
    16 A.D.3d 403, 790 N.Y.S.2d 412 (2d Dep't 2005)............................................................7

*Stryker v. Stelmark,*
    69 A.D.3d 454, 892 N.Y.S.2d 102 (1st Dep't 2010).............................................................3

*Thompson v. City of New York,*
    89 A.D.3d 1011, 1012, 933 N.Y.S.2d 701 (2d Dep't 2011)..................................................4

**Statutes**

C.P.L.R. § 308. .........................................................................................................................7

C.P.L.R. § 306-b .....................................................................................................................2, 3

C.P.L.R. § 2004 .........................................................................................................................2

iii

## INTRODUCTION

Plaintiff Vuzix Corporation ("Plaintiff" or "Vuzix"), by and through its counsel, respectfully submits this Memorandum of Law in support of its Ex-Parte Application seeking an Order: (i) pursuant to CPLR §§ 2004 and 306-b, extending the time to effectuate service of the Summons and Verified Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing upon the Defendant Ricardo Antonio Pearson a/k/a Richard Pearson ("Defendant" or "Pearson"), *nunc pro tunc*, to and including one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order; (ii) pursuant to CPLR § 308(5), permitting Plaintiff to serve Defendant via Pearson's known email addresses rick.pearson@pearsoninvestment.com and info@moxreports.com and at the address of c/o Seeking Alpha Inc., 52 Vanderbilt Ave, Floor 13, New York, N.Y. 10017-3837; and (iii) for such and other further relief in Plaintiff's favor as the Court deems just and proper.

## PRELIMINARY STATEMENT

Vuzix has brought this action against Defendant to recover damages caused by his false and defamatory "short and distort" articles about Vuzix on *MOXReports.com* and *Seeking Alpha* (the "Pearson Articles"). As set forth in the accompanying Affirmation of Irwin Weltz[1] and the exhibits annexed thereto, Vuzix has made diligent efforts in attempting to serve Pearson pursuant to CPLR § 308(1), (2) and (4), but such efforts have been futile due to circumstances entirely beyond its control. Indeed, within less than one month from the action being filed, Vuzix retained Metro Attorney Service Inc. ("Metro"), a process service company, to serve Defendant, and Metro made nine separate visits to three different addresses where online research revealed Pearson resides – all well within 120 days of the action being filed – but each time Pearson either evaded service, was not present, or did not reside at those locations. Accordingly, Vuzix seeks

---

[1] The Affirmation of Irwin Weltz is referred to as the "Weltz Affirmation."

an extension of time to serve Defendant upon good cause shown and in the interest of justice pursuant to CPLR § 2004 and § 306-b.

Further, because service on Pearson by conventional methods has proven to be unsuccessful and unfeasible, Vuzix also seeks the Court's permission, pursuant to CPLR § 308(5), to serve Pearson at email addresses provided by Pearson on his LinkedIn page (rick.pearson@pearsoninvestment.com) and on *MoxReports* (info@moxreports.com), which is operated by Pearson, and also via regular U.S. Mail and Federal Express Overnight Mail to Pearson at care of *Seeking Alpha*, where Pearson is a contributing author.

## BACKGROUND

A statement of the underlying facts of this matter is set forth in the Verified Complaint,[2] annexed to the Weltz Affirmation as <u>Exhibit A</u>. A statement of facts concerning Vuzix's efforts to serve Pearson with the Summons and Verified Complaint is also set forth in the Weltz Affirmation and the exhibits annexed thereto, and is incorporated herein.

## ARGUMENT

### A. Plaintiff's Time to Serve Defendant Should be Extended For "Good Cause" and in the "Interest of Justice"

Plaintiff seeks an extension of time of one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order to serve Defendant, *nunc pro tunc*. CPLR § 2004 allows the court to extend a time fixed by statute. CPLR § 306-b provides that if service is not made upon a defendant within the 120 day period, the Court, "upon good cause shown, or in the interest of justice, may extend the time for service." *See Leader v. Maroney, Ponzini & Spencer,*

---

[2] Vuzix commenced this action by filing the Summons and Verified Complaint with the Clerk of the Court on April 5, 2018. As discussed *infra*, its application to extend the time to effectuate service is not untimely and should be granted for good cause and in the interest of justice. Moreover, as further requested, Plaintiff should be granted the right to serve Defendant by alternative means since "traditional" methods of serving Defendant have proven to be futile despite Plaintiff's diligent efforts in attempting same.

2

97 N.Y.2d 95, 104, 736 N.Y.S.2d 291 (2001) (noting that courts have the discretion to grant an extension either "upon good cause shown" or "in the interest of justice").

"Such extensions of time should be *liberally granted* whenever plaintiffs have been reasonably diligent in attempting service, regardless of the expiration of the Statute of Limitations after filing and before service . . . ." *Stryker v. Stelmark*, 69 A.D.3d 454, 892 N.Y.S.2d 102 (1st Dep't 2010) (*emphasis added*); *see also Campbell v. Starre Realty Co.*, 282 A.D.2d 161, 724 N.Y.S.2d 584 (1st Dep't 2001) (granting extension when application was made *after* the expiration of the 120 day period, holding that "such extensions should be liberally granted"); *Hafkin v. North Shore Univ. Hosp.*, 279 A.D.2d 86, 89, 718 N.Y.S.2d 379 (2d Dep't 2000) (in citing legislative history of amendment to CPLR § 306-b, noting that the "proposed revised statute did not require that a motion for an extension of time to serve process in an action be made within the 120-day period").

Thus, in *Frank v. Garcia*, 84 A.D.3d 654, 923 N.Y.S.2d 529 (1st Dep't 2011), the Court granted the plaintiff's motion for an extension of time, finding that she had established good cause for her motion and that the interest of justice warranted an extension *even though* "*her motion was not filed until almost one year after the date of her process server's affidavit*" regarding his attempts at trying to locate and serve the defendant. *Id.*, at 655 (*emphasis added*); *see also Deutsche Bank, AG v. Vik*, 149 A.D.3d 600, 50 N.Y.S.3d 291 (1st Dep't 2017) (granting plaintiff's application for an extension of time to serve even though it "waited to move for the extension until *18 months* after service was contested . . . .") (*emphasis added*).

Under the circumstances presented here, Vuzix has demonstrated that under both the "good cause" and "interest of justice" standards, it is entitled to an extension of one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order to serve Pearson,

3

*nunc pro tunc.*

### i.    Plaintiff Has Shown "Good Cause" for an Extension of Time

Vuzix has more than adequately shown good cause for an extension of time to serve Defendant. "A 'good cause' extension requires a showing of reasonable diligence in attempting to effect service upon a defendant. . . . [G]ood cause is likely to be found where the plaintiff's failure to timely serve process is a result of circumstances beyond [its] control . . . ." *Henneberry v. Borstein*, 91 A.D.3d 493, 496, 937 N.Y.S.2d 177 (1st Dep't 2012); *see Thompson v. City of New York*, 89 A.D.3d 1011, 1012, 933 N.Y.S.2d 701 (2d Dep't 2011) (finding that plaintiff "exercised diligence by timely filing and twice attempting to serve the defendant with the summons and complaint" within the 120-day service period).

Here, as discussed in the Weltz Affirmation and the exhibits annexed thereto, Vuzix has been more than diligent in attempting service on Pearson. Upon filing the Summons and Verified Complaint with the Court, Vuzix took immediate steps to try to effectuate service on Defendant. Indeed, on *nine separate* occasions – *all well within 120 days from the action being filed* – Metro attempted to serve Pearson at various addresses based on online searches. (Weltz Affirmation, ¶¶5-11). On May 1, June 8, June 12, June 23, June 26, June 27 and July 5, 2018, Metro attempted service on Pearson at 191 Broadway, Apartment 1E, Dobbs Ferry, New York 10522, where a report from *Intellius.com* ("*Intellius* report") showed Pearson residing. (*Id.*, at ¶¶5, 6, 7, 10). Each of those attempts at personal service was futile. (*Id.*, at ¶¶7-8).

Moreover, on July 5, 2018, Metro attempted to locate and serve Pearson at 14 Wainwright Avenue, Apartment 2B, Yonkers, New York 10710, another address listed as current in the *Intellius* report. Service at that address was also unsuccessful. (*Id.*, at ¶9).

The *Intellius* report further revealed that a relative of Pearson resided at 191 Broadway,

4

**Apartment 1C**, Dobbs Ferry, New York 10522, and Metro attempted service there on July 5, 2018. (*Id.*, at ¶10). As with the other attempts, service was not successful. (*Id.*)

Finally, Metro returned to the first address at 191 Broadway on July 5, 2018, but again was unable to serve Pearson. (*Id.*, at ¶11).

As the foregoing demonstrates, the circumstances preventing Vuzix from effectuating service on Pearson were completely beyond its control, since Metro could neither locate nor serve Defendant on each of the nine separate occasions that it attempted to do so within 120 days of the action being filed. *See Frank*, 84 A.D.3d at 655 (granting plaintiff's application for an extension of time to serve, on the ground that her "papers outline the reasonable steps taken to locate [defendant], including her attempts to serve [him] within the 120 days after the action was filed, and demonstrate that failure to timely serve process was the result of circumstances beyond plaintiff's control, namely, the inability to locate [defendant].") Accordingly, Vuzix has demonstrated "good cause" for an extension of one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order to serve Defendant, *nunc pro tunc*.

      **ii.**      **The "Interest of Justice" Warrants an Extension of Time**

Vuzix not only has shown that there is "good cause" for an extension of time, but also that the "interest of justice" warrants such relief. "The Court of Appeals has confirmed that the 'good cause' and 'interest of justice' prongs of [CPLR § 306-b] constitute separate grounds for extensions, to be defined by separate criteria." *Henneberry*, 91 A.D.3d at 495 (*citing Leader*, 97 N.Y.2d at 104-06).

"[T]he interest of justice standard [is] more flexible than the good cause standard . . . ." *Id.*, at 495-96. "[T]he interest of justice standard is a broader standard designed to accommodate later service that might be due to mistake, confusion or oversight, so long as there is no prejudice

5

to the defendant. *De Vries v. Metropolitan Transit Authority*, 11 A.D.3d 312, 313, 783 N.Y.S.2d 540 (1st Dep't 2004).

"In applying the interest of justice standard, the court may consider diligence, or lack thereof, along with any other relevant factor in making its determination, including expiration of the Statute of Limitations, the meritorious cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to defendant . . . . No one factor is determinative." *Nunez-Ariza v. Nell*, 161 A.D.3d 614, 78 N.Y.S.3d 38 (1st Dep't 2018).

As noted above and in the Weltz Affirmation, Vuzix attempted service on Plaintiff on *nine separate* occasions at three different addresses, all within the 120-day window of the action being filed. The inability to serve Pearson was not through any lack of reasonable efforts on the part of Plaintiff and, instead, was due to circumstances beyond its control – namely, Plaintiff's inability to locate Defendant despite reasonably diligent efforts in attempting to do so.

Further, not only has Vuzix been extremely diligent in attempting to serve Pearson, but there would be no prejudice to Defendant should an extension of time be granted. Indeed, the Statute of Limitations on Vuzix's cause of action has not run, and will not run until at least March, 2019. Accordingly, the interest of justice militates in favor of extending Vuzix's time to serve Pearson, *nunc pro tunc*, to one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order.

### B. The Court Should Grant Plaintiff's Request to Serve Defendant at His Known Email Addresses and Via *Seeking Alpha* Pursuant to CPLR § 308(5)

As noted above and in the accompany Weltz Affirmation, Plaintiff has made multiple attempts to serve Pearson by conventional methods without success, and has only located him through his online presence, including email addresses set forth by him and through the Pearson

6

Articles. Under such circumstances, as demonstrated herein, service by email and through *Seeking Alpha* is the best (and perhaps only) means to apprise Pearson of this action. Accordingly, Plaintiff requests that the Court allow it to serve process on Pearson via his email addresses of rick.pearson@pearsoninvestment.com and info@moxreports.com, and also via regular U.S. Mail and Federal Express Overnight Mail to Pearson at care of *Seeking Alpha*.

CPLR § 308(5) provides that personal service shall be made, "in such manner as the court, upon motion *without notice*, directs, if service is impracticable under paragraphs one, two and four of this section" (*emphasis added*). CPLR § 308(5) vests a court with the discretion to direct an alternative method for service of process when it has determined that the other methods of service set forth in CPLR §§ 308(1), (2) and (4) are impracticable. The impracticability standard does not require the applicant to satisfy the more stringent standard of "due diligence" under CPLR § 308(4), or to make a showing that actual prior attempts to serve a party under each and every method of the statute have been undertaken. *See State St. Bank & Tr. Co. v. Coakley*, 16 A.D.3d 403, 403, 790 N.Y.S.2d 412, 413 (2d Dep't 2005); *see also Baidoo v. Blood-Dzraku*, 48 Misc. 3d 309, 311, 5 N.Y.S.3d 709, 712 (Sup. Ct., N.Y. Cty. 2015) (upon a plaintiff's Ex-Parte application, allowed service to be made via social media, finding that a court may direct the manner by which service is to be made and that a court may go beyond any of the specifically prescribed methods of service and devise a method that fits the particular circumstances of the case).

Exercise of a court's discretion is limited by due process, which requires that the method chosen must be reasonably calculated, under all the circumstances, to apprise a defendant of the pending lawsuit. *See Harkness v. Doe*, 261 A.D.2d 846, 847, 689 N.Y.S.2d 586, 588 (4th Dep't 1999). In order to be constitutionally adequate, the method of service need not guarantee that the

7

defendant will receive actual notice. *Id.*; *see also Bossuk v. Steinberg*, 58 N.Y.2d 916, 918, 460 N.Y.S.2d 509, 510 (1983) (finding it "hornbook law" that constitutionally proper substituted service need not guarantee that in all cases the defendant will in fact receive actual notice). Indeed, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits. *Id.*

A plaintiff can demonstrate that service by conventional means is impracticable by making diligent, albeit unsuccessful, efforts to obtain information regarding a defendant's current residence, business address or place of abode. *See Snyder v. Energy Inc.*, 19 Misc. 3d 954, 959, 857 N.Y.S.2d 442, 446 (Civ. Ct., N.Y. Cty., April 4, 2008), *citing Franklin v. Winard*, 189 A.D.2d 717, 592 N.Y.S.2d 726 (1st Dep't 1993). Indeed, both New York courts and Federal courts have, upon application by plaintiffs, authorized e-mail service of process as an appropriate alternative method when the statutory methods have proven ineffective. *See Alfred E. Mann Living Tr. v. ETIRC Aviation S.A.R.L.*, 78 A.D.3d 137, 141-42, 910 N.Y.S.2d 418, 422 (1st Dep't 2010) *citing Snyder*, 19 Misc.3d 954; *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, at *5-6 (S.D.N.Y. Mar. 12, 2007) (service made by e-mail and facsimile); *Navika Capital Grp., LLC v. Doe*, No. 14 CV 5968 (DLI) (CLP), 2017 U.S. Dist. LEXIS 2926, at *5-6 (E.D.N.Y. Jan. 6, 2017) (service made by e-mail).

As recently as ten years ago, it was considered a cutting-edge development in civil practice for a court to allow the service of a summons by email. *Baidoo*, 48 Misc. 3d at 310. Since then, email has all but replaced ordinary mail as a means of written communication. And while the legislature has yet to make email a statutorily authorized method for the service of process, courts are now routinely permitting it as a form of alternative service. *Id.*

In this case, as set forth in the accompanying Weltz Affirmation, previous attempts to

8

serve Pearson by traditional methods at locations where it was believed he would be found were not fruitful. According to Metro, ultimately Pearson could not be found at any known address. Pearson has an online presence, however, in that he: (1) maintains a LinkedIn page, wherein he provides an email address of rick.pearson@pearsoninvestment.com, (2) runs the website *MOXReports.com*, another purported financial website which also provides an email address of info@moxreports.com, and (3) regularly contributes to the financial internet site *Seeking Alpha* since 2009. (Weltz Aff., ¶¶12-18). In fact, Pearson has his own profile page on *Seeking Alpha*, where he has been an active contributor since 2009 with 5,302 followers, 104 Articles, 1 Blog Post, 62 Comments, 18 StockTalks and 2 Likes. (*Id.*, at ¶13). Pearson's profile page on that site also provides a link to *MOXReports*. (*Id.*, at ¶15-16).

Significantly, a litigant's inability to locate Pearson and serve him by traditional means is not without precedence. In *Cemtrex, Inc. v. Ricardo Antonio Pearson a/k/a Richard Pearson and John Does No. 1-10*, Index No. 2:17-cv-01258-JS-AKT in the United States District Court, Eastern District of New York, the plaintiff specifically set forth that it was unable to locate Pearson for service. (*Id.*, at ¶19, Exh. N to Weltz Affirmation). The plaintiff affirmed: "Despite making seven attempts, Cemtrex has been unable to serve defendant Ricardo Antonio Pearson, a/k/a Richard Pearson . . . ." (*Id.*). As a result, it voluntarily dismissed the case. (*Id.*)

In short, Defendant's presence appears to be largely online, particularly through *Seeking Alpha* and *MoxReports*, but otherwise is seemingly elusive in the physical realm, as proven by Vuzix's attempts at serving Vuzix by conventional means on nine separate occasions. Accordingly, the Court should permit Plaintiff to serve process on Pearson via his email addresses of rick.pearson@pearsoninvestment.com and info@moxreports.com, and also via regular U.S. Mail and Federal Express Overnight Mail to Pearson at care of *Seeking Alpha*.

9

## CONCLUSION

For the reasons stated, Plaintiff Vuzix Corporation respectfully requests that this Court grant its Ex-Parte Application and enter an Order: (i) pursuant to CPLR §§ 2004 and 306-b, extending the time to effectuate service of the Summons and Verified Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing upon the Defendant Ricardo Antonio Pearson a/k/a Richard Pearson ("Defendant" or "Pearson"), *nunc pro tunc*, to and including one hundred twenty (120) days from the date of the Court's execution of the Ex-Parte Order; (ii) pursuant to CPLR § 308(5), permitting Plaintiff to serve Defendant via Pearson's known email addresses rick.pearson@pearsoninvestment.com and info@moxreports.com and at the address of c/o Seeking Alpha Inc., 52 Vanderbilt Ave, Floor 13, New York, N.Y. 10017-3837; and (iii) for such and other further relief in Plaintiff Vuzix Corporation's favor as the Court deems just and proper.

Dated: New York, New York
      November 30, 2018

                    Respectfully submitted,

                    SICHENZIA ROSS FERENCE LLP

By:                            

                    Irwin Weltz
                    Thomas McEvoy
                    1185 Avenue of the Americas, 37th Floor
                    New York, New York 10036
                    Tel. No. (212) 930-9700

                    *Attorneys for Plaintiff*
                    *Vuzix Corporation*

10

**DOCKET NO. 19**

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (7/2012)

**New York Supreme COURT, COUNTY OF New York**

**Index No:** 153125/2018          **Date Index Issued:** 04/06/2018

| | For Court Clerk Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Date |

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

VUZIX CORPORATION

*Plaintiff(s)/Petitioner(s)*

-against-

RICARDO ANTONIO PEARSON a/k/a RICHARD PEARSON

*Defendant(s)/Respondent(s)*

## NATURE OF ACTION OR PROCEEDING:     Check ONE box only and specify where indicated.

**MATRIMONIAL**

- ☐ Contested

  **NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum**. For Uncontested Matrimonial actions, use RJI form UD-13.

**TORTS**

- ☐ Asbestos
- ☐ Breast Implant
- ☐ Environmental:
- ☐ Medical, Dental, or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability:
- ☐ Other Negligence:
- ☐ Other Professional Malpractice:
- ☒ Other Tort: Defamation

**OTHER MATTERS**

- ☐ Certificate of Incorporation/Dissolution     [see **NOTE** under Commercial]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other:

**COMMERCIAL**

- ☐ Business Entity (including corporations, partnerships, LLCs, etc.)
- ☐ Contract
- ☐ Insurance (where insurer is a party, except arbitration)
- ☐ UCC (including sales, negotiable instruments)
- ☐ Other Commercial:

  **NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(D)], complete and attach the **COMMERCIAL DIV RJI Addendum**.

**REAL PROPERTY:**     How many properties does the application include?

- ☐ Condemnation
- ☐ Mortgage Foreclosure:     ☐ Residential     ☐ Commercial

  Property Address:

  **NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the **FORECLOSURE RJI Addendum.**

- ☐ Tax Certiorari - Section:          Block:          Lot:
- ☐ Tax Foreclosure
- ☐ Other Real Property:

**SPECIAL PROCEEDINGS**

- ☐ CPLR Article 75 (Arbitration)     [see **NOTE** under Commercial]
- ☐ CPLR Article 78 (Body or Officer)
- ☐ Election Law
- ☐ MHL Article 9.60 (Kendra's Law)
- ☐ MHL Article 10 (Sex Offender Confinement-Initial)
- ☐ MHL Article 10 (Sex Offender Confinement-Review)
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene:
- ☐ Other Special Proceeding:

## STATUS OF ACTION OR PROCEEDING:     Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons w/notice been filed? | ☒ | ☐ | If yes, date filed:  04/05/2018 |
| Has a summons and complaint or summons w/notice been served? | ☐ | ☒ | If yes, date served: |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: |

## NATURE OF JUDICIAL INTERVENTION (Check ONE box only AND enter additional information where indicated.)

- [ ] Infant's Compromise
- [ ] Note of Issue and/or Certificate of Readiness
- [ ] Notice of Medical, Dental, or Podiatric Malpractice   Date Issue Joined:
- [ ] Notice of Motion   Relief Sought:   Return Date:
- [ ] Notice of Petition   Relief Sought:   Return Date:
- [ ] Order to Show Cause   Relief Sought:   Return Date:
- [x] Other Ex Parte Application   Relief Sought:   Extend - Time
- [ ] Poor Person Application
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Writ of Habeas Corpus
- [ ] Other:

**RELATED CASES:**   List any related actions. For Matrimonial actions, include any related criminal and/or Famiy Court cases. If additional space is required, complete and attach the **RJI Addendum**. If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**PARTIES:**   For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided. If additional space is required, complete and attach the **RJI Addendum**.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g., defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| [ ] | Name: VUZIX CORPORATION <br><br> Role(s): Plaintiff/Petitioner | THOMAS MCEVOY, SICHENZIA ROSS FERENCE KESNER, LLP, 1185 Avenue of The Americas FL 37 , New York, NY  10036, tmcevoy@srfkllp.com | YES | |
| [x] | Name: PEARSON, RICARDO A. <br><br> Role(s): Defendant/Respondent | 191 Broadway, Apt. 1E, Dobbs Ferry, NY  10522 | NO | |
| [ ] | Name: <br><br> Role(s): | | | |
| [ ] | Name: <br><br> Role(s): | | | |
| [ ] | Name: <br><br> Role(s): | | | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.**

Dated:   11/30/2018

THOMAS PATRICK MCEVOY

**SIGNATURE**

5123633

**ATTORNEY REGISTRATION NUMBER**

THOMAS PATRICK MCEVOY

**PRINT OR TYPE NAME**

# DOCKET NO. 20

At an Ex Parte Part of the Supreme Court, New York County, located at 60 Centre Street, New York, on the 3ᴿᴰ day of _____, 2018

## O. PETER SHERWOOD

PRESENT: _____ , J.S.C.

-------------------------------------------------------------x

VUZIX CORPORATION,

               Plaintiff,

   -against-

RICARDO ANTONIO PEARSON a/k/a RICHARD PEARSON,

             Defendant.

-------------------------------------------------------------x

Index No.: 153125/2018

**ORDER DIRECTING MANNER OF SERVICE AND EXTENDING TIME TO SERVE**

UPON reading the Affirmation of Irwin Weltz, Esq., dated the 30th day of November, 2018, the exhibits annexed thereto, the accompanying memorandum of law and upon all of the pleadings and proceedings heretofore had herein, by which Plaintiff Vuzix Corporation ("Plaintiff") has made proof that "good cause" and the "interest of justice" warrant an extension of time to effectuate service on Defendant Ricardo Antonio Pearson a/k/a Richard Pearson ("Defendant") pursuant to CPLR Section 306-b, and that service of the Summons and Verified Complaint herein upon Defendant is impracticable under Paragraphs 1, 2, or 4 of CPLR Section 308.

NOW, upon motion of Sichenzia Ross Ference LLP, attorneys for the Plaintiff herein, for an Order of this Court extending the time to effectuate service and directing the manner in which the Summons and Verified Complaint shall be served upon said Defendant, it is hereby

ORDERED, that Plaintiff's time to complete service of the Summons and Verified Complaint upon Defendant, *along with a copy of this order,* is extended to and including one hundred twenty (120) days from the

FILED: NEW YORK COUNTY CLERK 12/04/2018 09:02 AM
NYSCEF DOC. NO. 20 Case 1:19-cv-00689   Document 1-1   Filed 01/23/19   Page 136 of 139

INDEX NO. 153125/2018

RECEIVED NYSCEF: 12/03/2018

date of this Order; *said time to expire on April 2, 2019.*

ORDERED, that pursuant to CPLR Section 308(5), a copy of this Order, the Summons and Verified Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing shall be served upon Defendant by: (1) e-mailing copies thereof to rick.pearson@pearsoninvestment.com and info@moxreports.com with the subject line of the e-mails stating "LEGAL PAPERS OPEN ATTACHMENT IMMEDIATELY"; and (2) sending a copy thereof to Ricardo Antonio Pearson a/k/a Richard Pearson, c/o Seeking Alpha Inc., 52 Vanderbilt Ave, Fl 13, New York, N.Y., 10017-3837 via regular U.S. Mail and Federal Express Overnight Mail and that proof of said forms of service be filed with this Court.

*ORDERED, that the granting of this order is in no way determinative of the tolling & the statute of limitations or other issues of repose, should such issues arise.*

*ENTER*

*O.P.*

*J.S.C.*

**DOCKET NO. 21**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

VUZIX CORPORATION,

                              Plaintiff,                    Index No.: 153125/2018

              -against-                                     **AFFIRMATION OF
                                                            SERVICE**

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,
                              Defendant.
------------------------------------------------------------------x

       THOMAS McEVOY, an attorney duly admitted to practice law before the Courts of the

State of New York, affirms the truth of the following under the penalties of perjury:

      1.     I am an associate at Sichenzia Ross Ference LLP, attorneys for the Plaintiff Vuzix

Corporation ("Plaintiff" or "Vuzix") in the above-captioned case. As such, I am fully familiar

with the facts and circumstances set forth herein.

      2.     On January 3, 2019, pursuant to this Court's Order Directing Manner of Service

and Extending Time to Serve, dated December 3, 2018 (and entered on December 4, 2018)

("Order"), I caused to be served a copy of the Order; the Plaintiff's Summons and Verified

Complaint; and the Notice of Commencement of Action Subject to Mandatory Electronic Filing,

on Defendant Ricardo Antonio Pearson a/k/a Richard Pearson ("Defendant") by regular U.S.

Mail, by enclosing a true and correct copy thereof in a securely sealed and post-paid wrapper

with the words "PERSONAL AND CONFIDENTIAL" typed on the same envelope, and not

indicating on the outside that it is from an attorney, and depositing the same into an official

depository maintained by the Government of the United States, City and State of New York,

addressed as follows:

Ricardo Antonio Pearson
a/k/a Richard Pearson
c/o Seeking Alpha Inc.
52 Vanderbilt Ave
Fl 13
New York, N.Y., 10017-3837

3.      On January 3, 2019, pursuant to this Court's Order, I further caused to be served a copy of the Order; the Plaintiff's Summons and Verified Complaint; and the Notice of Commencement of Action Subject to Mandatory Electronic Filing, on Defendant by Federal Express Overnight Mail, by enclosing a true and correct copy thereof in a securely sealed and post-paid wrapper with the words "PERSONAL AND CONFIDENTIAL" typed on the same envelope, and not indicating on the outside that it is from an attorney, and entrusting the same to an official employee of Federal Express, addressed as follows:

Ricardo Antonio Pearson
c/o Seeking Alpha, Inc.
52 Vanderbilt Ave
Fl 13
New York, NY 10017

4.      On January 3, 2019, pursuant to this Court's Order, I further caused to be served a copy of the Order; the Plaintiff's Summons and Verified Complaint; and the Notice of Commencement of Action Subject to Mandatory Electronic Filing, on Defendant by electronic mail to rickpearson@pearsoninvestment.com and info@moxreports.com, by attaching a true and correct copy thereof with the subject line of the electronic mails stating "LEGAL PAPERS OPEN ATTACHMENT IMMEDIATELY".

Dated: New York, New York
       January 8, 2019

THOMAS McEVOY

2