UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VUZIX CORPORATION,

                              Plaintiff,

                – against –

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON,

                              Defendant.

Case No. 1:19-cv-00689-NRB

**ORAL ARGUMENT REQUESTED**

---

**COMBINED MEMORANDUM OF LAW IN SUPPORT OF RICHARD PEARSON'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND SPECIAL
MOTION TO STRIKE PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE**

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
212-513-3200
212-385-9010 (fax)
christine.walz@hklaw.com

Cynthia A. Gierhart
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20006
202-955-3000
202-955-5564
cindy.gierhart@hklaw.com
*SDNY admission application pending*

*Attorneys for Richard J. Pearson*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT ...............................................................................................................5

   I.    THIS COURT LACKS PERSONAL JURISDICTION OVER RICHARD
        PEARSON, AND THIS MATTER SHOULD BE DISMISSED. ...................................5

   II.   VUZIX'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE
        TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)...........................................10

     A.   Legal Standard ...........................................................................................10

     B.   Vuzix Has Not Alleged Facts Sufficient to Support a Claim for Libel or Libel
          Per Se Under California Law.....................................................................11

   III.  VUZIX'S AMENDED COMPLAINT SHOULD ALSO BE DISMISSED UNDER
        CALIFORNIA'S ANTI-SLAPP STATUTE. .................................................26

     A.   The Vuzix Report Is Protected Under California's Anti-SLAPP Statute. .................26

     B.   Vuzix Cannot Meet Its Burden to Demonstrate It Is Likely to Prevail on Its
          Claims. .......................................................................................................27

     C.   Richard Pearson Is Entitled to an Award of His Attorneys' Fees and Costs
          Incurred Since the Filing of This Lawsuit. .................................................28

CONCLUSION.............................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014)..................................................................................26

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013).................................................................10

*AmTrust Fin. Servs., Inc. v. Lacchini*,
   260 F. Supp. 3d 316, 326 (S.D.N.Y. 2017)...........................................................5

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
   968 F.2d 196 (2d Cir. 1992)..................................................................................5

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) .........................................................................................27

*Barry v. State Bar of California*,
   2 Cal. 5th 318, 326, 386 P.3d 788 (2017) ..........................................................29

*Berwick v. New World Network Int'l, Ltd.*,
   2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) .......................................................11

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)........................................................................5, 6, 7, 8

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015)................................................................................12

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ...........10

*CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*,
   14 F. Supp. 3d 463, 472–73 (S.D.N.Y. 2014).......................................................5

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).................................................................................3

*Choose Energy, Inc. v. Am. Petroleum Inst.*,
   87 F. Supp. 3d 1218, 1225 (N.D. Cal. 2015) ......................................................29

*Collins v. Flynn*,
   2008 WL 3851842 (W.D.N.Y. Apr. 15, 2008) .....................................................11

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625 (2001)......................................13, 27

*Davis v. Costa-Gavras*,
580 F. Supp. 1082 (S.D.N.Y. 1984).......................................................................11

*Deer Consumer Products, Inc. v Little Group*,
No. 650823/2011, 2012 WL 5983641 (N.Y. Sup. Ct. Nov. 29, 2012).......................13, 14, 16

*Fabbrini v. City of Dunsmuir*,
544 F. Supp. 2d 1044 (E.D. Cal. 2008)....................................................................26

*Fernandez v. Zoni Language Centers, Inc.*,
No. 15-CV-6066 (PKC), 2016 WL 2903274 (S.D.N.Y. May 18, 2016), aff'd,
858 F.3d 45 (2d Cir. 2017)........................................................................................4

*Francis v. Dun & Bradstreet, Inc.*,
3 Cal. App. 4th 535, 4 Cal. Rptr. 2d 361 (1992)....................................................22

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375, 10 Cal. Rptr. 3d 429 (2004)..............................12, 13, 15, 16

*GetFugu, Inc. v. Patton Boggs LLP*,
220 Cal. App. 4th 141, 162 Cal. Rptr. 3d 831 (2013)...........................................27

*Gilbert v. Sykes*,
147 Cal. App. 4th 13, 53 Cal. Rptr. 3d 752 (2007)..........................................22, 27

*Goodyear v. Dunlop Tires Operations, S.A. v. Brown*,
131 S.Ct. 2846 (2011)...............................................................................................6

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014) ..................................................................................29

*Grass v. News Grp. Publications, Inc.*,
570 F. Supp. 178 (S.D.N.Y. 1983)..........................................................................11

*Harris v. TD Ameritrade Inc.*,
338 F. Supp. 3d 170, 187 (S.D.N.Y. 2018)..............................................................4

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998).......................................................................11

*Lee v. Bankers Tr. Co.*,
166 F.3d 540 (2d Cir. 1999).....................................................................................11

*Maheu v. Hughes Tool Co.*,
569 F.2d 459 (9th Cir. 1977) ...................................................................12, 22, 24

*Maloney v. T3Media, Inc.*,
  94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) ...................................................................................................................26

*McClatchy Newspapers, Inc. v. Superior Court*,
  189 Cal. App. 3d 961, 234 Cal. Rptr. 702 (Ct. App. 1987) ..................................16

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) .....................................................................................5

*Michtavi v. N.Y. Daily News*,
  587 F.3d 551 (2d Cir. 2009) ..................................................................................23

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
  No. 17CV07568PGGKHP, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ...............13, 14, 16

*Mindys Cosmetics, Inc. v. Dakar*,
  611 F.3d 590 (9th Cir. 2010) .................................................................................27

*Nanoviricides, Inc. v. Seeking Alpha, Inc.*,
  43 Media L. Rep. 1082, 2014 WL 2930753 (N.Y. Sup. Ct. June 26, 2014) .....................13, 16

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...................................................................16

*Nizam-Aldine v. City of Oakland*,
  47 Cal. App. 4th 364, 54 Cal. Rptr. 2d 781 (1996) ...............................................22

*Pfeiffer Venice Properties v. Bernard*,
  101 Cal. App. 4th 211, 123 Cal. Rptr. 2d 647 (2002) ...........................................29

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) .................................................................................14

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) ......................................................12

*Rosenaur v. Scherer*,
  88 Cal. App. 4th 260, 105 Cal. Rptr. 2d 674 (2001) .............................................21

*Rudin v. Dow Jones & Co.*,
  510 F. Supp. 210 (S.D.N.Y. 1981) ........................................................................11

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
  2012 WL 3569952, 2012 N.Y. Slip Op. 51569(U) (N.Y. Sup. Aug. 16, 2012) ..........13, 14, 16

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,
  18 N.Y.3d 400, 963 N.E.2d 1226 (N.Y. 2012) .....................................................7, 8

*Stepanian v. City of New York*,
  2015 WL 5350801 (E.D.N.Y. Sept. 14, 2015) ........................................................3

*Strelsin v. Barrett*,
  36 A.D.2d 923, 320 N.Y.S.2d 885 (1st Dep't 1971) ..............................................8

*Thomas v. Fry's Elecs., Inc.*,
  400 F.3d 1206 (9th Cir. 2005) ............................................................................26

*Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*,
  No. 16 CIV. 4254 (KPF), 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ................9

*Troy Grp., Inc. v. Tilson*,
  364 F. Supp. 2d 1149 (C.D. Cal. 2005) ................................................................27

*ViaView, Inc. v. Retzlaff*,
  1 Cal. App. 5th 198, 216, 204 Cal. Rptr. 3d 566 (Ct. App. 2016) ...........................9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ............................................................4

*Wilcox v. Superior Court*,
  27 Cal. App. 4th 809 (1994) .........................................................................26, 27

*Wilson v. Parker, Covert & Chidester*,
  28 Cal. 4th 811 (2002) ........................................................................................27

**Statutes**

Cal. Civ. Code § 45 ..................................................................................................11

Cal. Civ. Code § 45a ................................................................................................11

Cal. Civ. Code § 47 ..................................................................................................16

Cal. Civ. Proc. Code § 425.16 ..................................................................................29

Cal. Civ. Proc. Code § 425.16(b) .......................................................................10, 26

**Other Authorities**

Restatement (Second) of Torts § 566 (1977) ............................................................12

## <u>PRELIMINARY STATEMENT</u>

Vuzix Corporation ("Vuzix") filed this lawsuit to silence Richard J. Pearson ("Richard Pearson" or "Richard")'s truthful speech exposing securities fraud at Vuzix and its California-based investor relations ("IR") firm IRTH Communications. Vuzix and its counsel Sichenzia are well aware that they cannot win this suit on merit. At every turn they have engaged in tactics designed simply to prolong this litigation, drive up the cost of defending this action, and tie up Richard's time to chill his future speech about Vuzix, IRTH Communications, and other companies and individuals engaged in fraudulent stock promotion schemes.

These tactics have included:

- filing this case against someone named "Ricardo Antonio Pearson," rather than against Richard Pearson, as the defendant;
- filing the case in state court in New York based on "Ricardo Antonio's" alleged residency in New York—when Vuzix, IRTH, and Sichenzia all know that Richard Pearson lives in Los Angeles, California;
- failing to serve either "Ricardo Antonio Pearson" or Richard Pearson with the Complaint within the required 120 days for personal service under New York state court rules;
- then seeking approval from the assigned state court judge to serve the Complaint by email only days before Richard Pearson was scheduled to attend an industry conference in Los Angeles, which he has been attending in person for years and which Vuzix was also scheduled to attend;
- and then making no effort to personally serve Richard Pearson during that conference in Los Angeles;
- waiting close to a month after the New York state court granted that request to serve by email, and then timing that service by email just days before Richard was scheduled to attend the Consumer Electronic Show (CES), where they knew Richard Pearson would be attending as a member of the media and where Vuzix was also attending;
- filing a meritless motion to remand this case to state court; and
- then, filing an amended complaint in state court, rather than in this federal court, in clear contravention of the rules governing removal.[1]

---

[1] In fact, highlighting that Vuzix and its counsel are strategically feigning ignorance on these points, when Vuzix did file its Amended Complaint in this Court, it still named Ricardo Antonio Pearson as the defendant, despite the fact that Richard Pearson has submitted sworn testimony to the contrary. (*See* Dkt. 20.) Again, this is not simply mistakenly naming an incorrect party—it is a strategic decision by Vuzix to suggest to the Court and the public that Richard Pearson is someone other than who he says he is.

There can be no question that Vuzix and Sichenzia know who Richard Pearson is and where he is located: Richard Pearson is a well-known public author who lives in Los Angeles and whose financial analysis has accurately identified securities fraud behind dozens of public companies — including multiple clients of Sichenzia and IRTH Communications. This litigation should be viewed for what it is: an attempt to punish Richard Pearson's reporting and analysis so as to deter him and anyone else from identifying and publishing about securities frauds.

Vuzix's Amended Complaint lacks all merit and should be dismissed because this Court lacks jurisdiction over Richard Pearson and because the allegedly defamatory statements that Richard Pearson made about Vuzix are protected opinion based on disclosed facts, substantially true, and/or not actionable as a matter of law.

## STATEMENT OF FACTS

Richard Pearson is a private investor, based in Los Angeles, California, who is widely recognized in his field for authoring articles on investing, including, at times, warning about fraud and other potential financial distress at publicly traded companies that are likely to affect investors. He graduated from the University of Southern California in Los Angeles in 1997, with a degree in finance. Between 1997 and 2005, he was an investment banker for Deutsche Bank, stationed at various times in Hong Kong, London, and New York. Richard Pearson moved back to Los Angeles in 2005. Since 2005, he has spent the majority of his time between Los Angeles and China.[2]

Richard Pearson does not regularly do or solicit business in New York. Richard Pearson Decl., ¶ 22. He has not lived in New York since 2005. *Id.* ¶ 20. He does not engage in any persistent course of conduct in New York. *Id.* ¶ 23. He does not derive revenue from services rendered in New York. *Id.* ¶ 22.

---

[2] For additional information regarding Richard Pearson's domicile and citizenship in California, *see* Richard Pearson Decl. ¶¶ 2-19.

Richard Pearson publishes investment analyses about publicly traded companies that are based in the United States and China. Since 2012, he has been publishing these analyses on his website, Moxreports.com. In the past, his content—including the content at issue in this litigation—has also been republished on the financial website *Seeking Alpha*. Richard typically publishes reports about stocks where he himself has invested, and he clearly discloses any long or short investment positions accordingly. The financial commentary he publishes is consistent with his disclosed investment positions.

Contrary to Vuzix's characterization of his work as a "short-and-distort scheme," Richard's published analyses have been highly predictive of future outcomes. Dozens of the companies that Richard has warned about were later delisted from major stock exchanges, and numerous firms, companies, and individuals described in his reports were later indicted on federal fraud charges. *Id.* ¶¶ 29-43. When Richard finds indications of fraud, his standard practice is to file a formal whistleblower report with the SEC prior to publicly releasing his findings. *Id.* ¶¶ 48, 67.

On March 16, 2018, Richard published a 27-page report on his website MoxReports.com about Vuzix (the "Vuzix Report").[3] The Vuzix Report explained in detail Richard Pearson's analysis that Vuzix and its "investor relations" firm IRTH Communications appeared to be engaged in a fraudulent stock promotion scheme, which touted contrived association with recognized technology giants to artificially inflate Vuzix's share price and that, as a result, Vuzix's

---

[3] The Court should, in considering this motion, review the Vuzix Report that is challenged in this litigation. Where a complaint is built around documents, that record becomes a "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting the court may consider any document "integral" to the complaint); *Stepanian v. City of New York*, 2015 WL 5350801, at *3 (E.D.N.Y. Sept. 14, 2015) ("[Plaintiff] … included the video's web address in the complaint. Since the video is incorporated into the complaint, I am allowed to consider it on a motion to dismiss" (citation omitted)). Vuzix did not attach the Vuzix Report to its Complaint or Amended Complaint. It is included in the Richard Pearson Declaration as Exhibit B. Additionally, given the procedural issues underlying this case, the Pearson Declaration includes additional factual background so that the Court can understand the overall context of this matter. Defendant's Rule 12(b)(6) motion does not rely on those facts.

stock was likely to plummet in value from those artificial highs. At the outset, the Vuzix Report

sets forth the six warning signs of fraud, which the SEC had published on its website.

The signs of fraud identified by the SEC are:

1.   The SEC suspended public trading of the security or other securities promoted by the same promoter.

2.   Increase in stock price or trading volume linked to promotional activity.

3.   Press releases or promotional activity announcing events that ultimately do not happen.

4.   No real business operations (little or no assets; minimal revenues; false press releases).

5.   Company issues a lot of shares without a corresponding increase in the company's assets.

6.   Frequent change in company name or type of business.

*See* Vuzix Report at 4; *see also* SEC Updated Investor Alert: Fraudulent Stock Promotions (March

29, 2016)(attached as Ex. C to the Pearson Decl.).[4] This alert warns investors to "[b]e especially

cautious regarding stock promotions if there are <u>any</u> warning signs of microcap fraud." *Id.*

(emphasis added). Richard's report shows the text of those six warning signs as written by the SEC

and then provides detailed evidence and examples to show how the activities around Vuzix match

not just "any" but in fact ALL of the SEC's six warning signs of fraud. *See* Vuzix Report at 4-27.

The underlying facts disclosed in the Vuzix Report are not and cannot be disputed, and

Richard Pearson disclaimed numerous times that "[t]he report is the opinion of the author." He

---

[4] The Court may take judicial notice of an SEC Investor Alert, SEC filings, "documents publicly filed with the SEC," and any other "documents retrieved from official government websites." *See Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 187 (S.D.N.Y. 2018); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of [documents retrieved from official government websites].")*; Fernandez v. Zoni Language Centers, Inc.*, No. 15-CV-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016), aff'd, 858 F.3d 45 (2d Cir. 2017) ("Courts may also take judicial notice of information contained on websites where "the authenticity of the site has not been questioned.").

also fully disclosed that he has a short position in Vuzix because he believes that the share price is likely to fall substantially. *Id.* at 4.

On or about March 20, 2018, *Seeking Alpha* republished Richard Pearson's Vuzix Report. *See* Am. Compl., ¶ 25. The report published on *Seeking Alpha* was substantially the same as the report published on Pearson's California website. See Richard Pearson Decl., ¶¶ 49, 51.

On or about April 5, 2018, Vuzix filed a Complaint in New York state court seeking $80 million based on allegations that nine statements contained in the Vuzix Report were false and defamatory. *See* Dkt. 1-1 at 7–24. These statements were plucked from the larger report in isolation and out of context. Vuzix did not provide the court with the complete Vuzix Report. Vuzix's Amended Complaint is based on those same allegations. *See* Am. Compl., ¶¶ 31-58.

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER RICHARD PEARSON, AND THIS MATTER SHOULD BE DISMISSED.

A plaintiff bears the heavy burden of establishing that the court has personal jurisdiction over a non-resident defendant, like Richard Pearson. *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 326 (S.D.N.Y. 2017).[5] To meet this burden, a plaintiff must proffer evidence that, if credited, will support findings as to every fact required to make a showing that the exercise of personal jurisdiction over the out-of-state defendant is authorized by the forum's long-arm statute and the Due Process Clause of the Constitution. *Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007).

---

[5] Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*, 14 F. Supp. 3d 463, 472–73 (S.D.N.Y. 2014) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Specifically, the plaintiff must present "legally sufficient allegations" to support a prima facie case for jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Jurisdiction must be shown affirmatively, and "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

This Court lacks jurisdiction over Richard Pearson. The Amended Complaint does not allege that this Court could exercise general jurisdiction over Richard Pearson, and the Court cannot because Richard Pearson is not domiciled in New York.[6] The Court also cannot exercise specific jurisdiction over Richard Pearson in this case. "A court may exercise specific personal jurisdiction over a defendant when the forum state has a long-arm statute that authorizes jurisdiction over the defendant and the defendant 'has certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007) (quoting *Int'l. Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotation marks omitted).

New York's long-arm statute provides, in relevant part:

[A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, *except as to a cause of action for defamation of character* arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character* arising from the act . . . .

N.Y. C.P.L.R. 302(a) (emphasis added).

As shown above, New York's long-arm statute carves out specific exemptions for defamation claims. Vuzix's allegations, therefore, that "Pearson committed tortious acts within

---

[6] General jurisdiction should only be asserted where there is a sense of "home." *Goodyear v. Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2853-54 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 2853-54; *see* CPLR § 301 (citing *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) (a non-domiciliary is subject to general jurisdiction in New York if she is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of her 'presence' in this jurisdiction."). As set forth in extensive detail in his declaration, Richard Pearson lives in, resides in, and is domiciled in California and not New York. *See* Richard Pearson Decl. ¶¶ 2-19.

and without the State that caused injury to Plaintiff in New York" are entirely irrelevant because the long-arm statute reaches only non-defamatory tortious acts committed, or causing injury, in New York. *See* N.Y. C.P.L.R. 302(a)(2), (3); Am. Compl. ¶ 10; *see also SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404, 963 N.E.2d 1226 (N.Y. 2012) ("Defamation claims are accorded separate treatment [in the long-arm statute] to reflect the state's policy of preventing disproportionate restrictions on freedom of expression . . . .").

Furthermore, Vuzix's general allegation that "Pearson transacted business in New York that gives rise to the claims herein" is not only unsupported (and untrue), but the allegation itself is also insufficient to establish personal jurisdiction over Richard Pearson under N.Y. C.P.L.R. 302(a)(1). *See* Am. Compl. ¶ 10. The Second Circuit has held that "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). In fact, the Second Circuit has explicitly said that "when the defamatory publication itself constitutes the alleged 'transact[ion of] business' for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it." *Id.* New York's long-arm statute will not reach defendants, for example, who researched and wrote allegedly defamatory statements in another state and merely sent the statements into New York. *See id.* at 249.

Rather, to establish jurisdiction over a defamation defendant under CPLR 302(a)(1), "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts," and there must be "some articulable nexus between the business transacted and the cause of action sued upon." *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404, 963 N.E.2d 1226 (N.Y. 2012) (dismissing

case against Vermont blogger for lack of jurisdiction under long-arm statute where blogger traveled to New York to make donations to shelter and later wrote about poor conditions she observed during her trip).

In a case remarkably similar to the matter at hand, one New York court found that it lacked jurisdiction over a California defendant who was accused of defaming the plaintiff in a television broadcast that was recorded in California but re-broadcast in New York. *Strelsin v. Barrett*, 36 A.D.2d 923, 923, 320 N.Y.S.2d 885, 886 (1st Dep't 1971).

Here, Richard Pearson researched the Vuzix Report in California and published the report on his website *Moxreports.com*, a California-based website, on March 16, 2018. *Seeking Alpha* re-published the report on March 20, 2018. Under New York law, this re-publication by a New York-based website is insufficient to confer jurisdiction over Pearson. *See Strelsin v. Barrett*, 36 A.D.2d at 923, 320 N.Y.S.2d at 886.[7]

Likewise, simply writing about a New York corporation does not subject the writer to the jurisdiction of New York courts. *See, e.g.*, *Best Van Lines*, 490 F.3d at 248; *SPCA of Upstate New York*, 18 N.Y.3d at 404, 963 N.E.2d at 1226. Richard Pearson did not travel to New York to conduct research for his article, nor did he write the article in New York. "[M]ere [allegedly] defamatory utterances sent into the state" do not amount to "purposeful activities" conducted in New York and are insufficient to confer personal jurisdiction over Richard Pearson. *See Best Van Lines*, 490 F.3d at 248; *SPCA of Upstate New York*, 18 N.Y.3d at 404, 963 N.E.2d at 1226.

---

[7] Moreover, *Seeking Alpha* did not pay Richard Pearson to publish his report about Vuzix, which further disproves the argument that Richard Pearson transacted any business at all in New York. *See* Richard Pearson Decl. ¶ 50.

Finally, Richard Pearson has not, as alleged by Vuzix, consented to the jurisdiction of this Court through the Terms of Use on the *Seeking Alpha* website.[8] The *Seeking Alpha* Terms of Use specifically state:

> The TOU, privacy policy and the relationship ***between you and Seeking Alpha*** are governed by and construed in accordance with the laws of the State of New York, without regard to its principles of conflict of laws. ***You and Seeking Alpha agree*** to submit to the personal and exclusive jurisdiction of the federal and state courts located within New York County, New York, and waive any jurisdictional, venue, or inconvenient forum objections to such courts.

Dkt. 1-1 at 96 (emphasis added). This choice-of-law and forum-selection clause applies only to actions that arise between the user and *Seeking Alpha*: It does not apply to any claim arising out of or related to content posted on *Seeking Alpha*. *Seeking Alpha* is not a party to this action, and Vuzix is not a party to the agreement between *Seeking Alpha* and its users; therefore, this agreement has no application in this case. *See Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*, No. 16 CIV. 4254 (KPF), 2017 WL 5905574, at *8 (S.D.N.Y. Nov. 29, 2017) (a non-party cannot be bound by a choice-of-law provision if the party is not a third-party beneficiary of the agreement or does not have rights "completely derivative of" and "directly related to" the rights of a signatory).

For all of these reasons, Vuzix has failed to establish that this Court may exercise jurisdiction over Richard Pearson, and this case should be dismissed.

---

[8] Additionally, Richard Pearson enters only a limited appearance for purposes of contesting jurisdiction: Filing an anti-SLAPP motion concurrently with a motion to dismiss for lack of personal jurisdiction does not constitute a general appearance by a defendant. *ViaView, Inc. v. Retzlaff*, 1 Cal. App. 5th 198, 216, 204 Cal. Rptr. 3d 566, 580 (Ct. App. 2016).

## II.   VUZIX'S AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

Even if this case were not dismissed on personal jurisdiction grounds, the case should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[9] Each of the statements at issue in the Vuzix Report is protected opinion based on disclosed facts, substantially true, and/or not actionable as a matter of law. And, importantly, Vuzix makes no effort to rebut the substantial evidence set forth in the Vuzix Report demonstrating massive securities fraud, including more than 20 pages of detailed examples to show how the Vuzix promotion displays not just "any" but rather ALL of the six "signs of microcap stock fraud," which have been explicitly identified and warned about by the SEC.

### A.   Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a plaintiff must state the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (internal citations omitted). Defamation cases require particular scrutiny at the motion to dismiss stage. "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id. See also Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) ("Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself,' courts should, where possible, resolve defamation actions at the pleading stage.").

---

[9] This case should also be dismissed under the California anti-SLAPP statute, which as set forth in detail below, allows for a dismissal of a defamation claim, arising out of acts in furtherance of one's right of petition or free speech in connection with a public issue unless the plaintiff can establish a probability of success on the merits. Cal. Civ. Proc. Code § 425.16(b).

### B.      Vuzix Has Not Alleged Facts Sufficient to Support a Claim for Libel or Libel Per Se Under California Law.

Plaintiff alleges two causes of action: libel and libel per se. Under California law,[10] libel is

"a false and unprivileged publication . . . , which exposes any person to hatred, contempt, ridicule,

or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him

in his occupation." Cal. Civ. Code § 45. Libel per se is defamation recognizable as such on its face

"without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic

fact" and does not require proof of special damages. Cal. Civ. Code § 45a. At its core, libel requires

---

[10] "A federal court sitting in diversity applies the choice of law rules of the forum state," and in tort cases, "New York applies the law of the state with the most significant interest in the litigation." *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In defamation actions where speech on a matter of public importance is threatened, the state where Defendant researched and published the statements often has the most significant interest in the litigation. "[L]ibel is less plaintiff-centered than other torts," and "[t]he plaintiff's domicile 'should not be transferred into a rigid rule' for determining choice of law issues in libel actions." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1093 (S.D.N.Y. 1984); *Grass v. News Grp. Publications, Inc.*, 570 F. Supp. 178, 185–86 (S.D.N.Y. 1983) (citing *Rudin v. Dow Jones & Co.*, 510 F. Supp. 210, 216 (S.D.N.Y. 1981)).

"[L]ibel is a tort with widespread implications for interests of individual free expression and dissemination of ideas, and involves balancing the plaintiff's need for compensation against these competing interests." *Id.* For that reason, New York courts look to a variety of factors in determining which state's law should apply in a multistate defamation action. These factors include "the state of plaintiff's principal activity to which the alleged defamation relates," "the state of the [author's] domicile or incorporation," "the state where defendant's main publishing office is located," and "the place of emanation." *Rudin v. Dow Jones & Co.*, 510 F. Supp. 210, 217 (S.D.N.Y. 1981).

Often in defamation cases, "some other state has a more significant relationship to the issue or the parties." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091; *Grass v. News Grp. Publications, Inc.*, 570 F. Supp. 178, 185 (S.D.N.Y. 1983). For example, in *Costa-Gavras*, this Court considered the location where the defendant did most of his research and writing, among other factors, in determining that New York law should apply, rather than the law of the District of Columbia, plaintiff's domicile. *Id.* at 1091-92. The Court cautioned against "subjecting a libel defendant to liability under an unforeseen law [in the plaintiff's state, which] can result in ruinous liability for which he is uninsured" and "casting him in liability under the law of a state with which he [has] in no way voluntarily associated himself." *Id.* at 1093. *See also Collins v. Flynn,* 2008 WL 3851842, at *3 (W.D.N.Y. Apr. 15, 2008) (applying Massachusetts law to New York plaintiff's defamation claim); *Berwick v. New World Network Int'l, Ltd*., 2007 WL 949767, at *7 (S.D.N.Y. Mar. 28, 2007) (applying New York law to Pennsylvania plaintiff's defamation claim); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 360 (S.D.N.Y. 1998) (applying New York law to Georgia plaintiff's defamation claim).

Here, California has the most significant relationship to the case. First, Richard Pearson is a resident and citizen of California, and the contents of his research and analysis on Vuzix and IRTH were primarily compiled in California. Second, the Vuzix Report was first published on Moxreports.com – a website operated out of California and accessible nationwide. Third, the agent that Vuzix employs to implement the securities fraud at issue was California-based IRTH Communications. Fourth, the fraud was significantly staged out of California-based investor conferences such as LD Micro and Roth Capital. Therefore, California has the most significant relationship to this lawsuit, and its substantive law properly governs this case.

11

proof of falsity. An opinion based on a disclosed set of facts and statements that are substantially true are, therefore, not libelous. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429, 436 (2004); *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1977). Because each of the statements alleged in the Amended Complaint is nonactionable opinion based on disclosed facts or is substantially true, Vuzix has not alleged facts sufficient to support a claim for defamation, and its Amended Complaint should be dismissed.[11]

1.     **The Majority of Statements Identified in Vuzix's Amended Complaint Are Protected Opinions, Which Are Not Actionable as a Matter of Law.**

a.     **Opinions Based on Disclosed Fact Are Not Actionable.**

An opinion is not actionable where the author discloses the facts on which the opinion is based. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429, 436 (2004). An example commonly referenced from the Restatement Second of Torts is the statement "I think [my neighbor] must be an alcoholic." Restatement (Second) of Torts § 566 cmt. c, ill. 3 (1977). Without more, the speaker might imply that this statement is based on undisclosed facts that would support this conclusion, and the statement could be actionable if proven false. *Id.* On the other hand, the same statement is not actionable if the speaker discloses the facts on which the opinion is based, such as: "[My neighbor] moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic." *Id.* ill. 4. Knowing the facts on which the opinion is based, the listener can form her own conclusion as to whether the neighbor is an alcoholic, and the statement is not actionable.

---

[11] Additionally, even if any of the statements at issue were false statements of fact, Vuzix has not pleaded actual malice with sufficient particularity. *See Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (dismissing defamation claim where complaint merely recited the elements of the cause of action without asserting facts to support allegation that defendant knew the statement was false rather than merely making a mistake); *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (dismissing case where actual malice was not "plausibly alleged").

Whether a statement is nonactionable opinion is a question of law for the court to decide. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429, 436 (2004); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1011, 113 Cal. Rptr. 2d 625, 641 (2001). California courts consider the "totality of the circumstances" to determine whether a statement is a nonactionable opinion, looking to the context in which the statement was made. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429, 436 (2004). In *Franklin*, the court found that statements claiming a company stole copyrighted material and plagiarized data were nonactionable opinion. *Id.* at 388. The court held that because the author linked to the company's websites to support his conclusion, combined with the fact the author was offering his interpretation of copyright law, the statements were nonactionable opinion. *Id.* at 387-88. Because the speaker was not an attorney, the "average reader . . . would not have assumed the statements . . . had the weight of a legal opinion." *Id.* at 389. Even statements alleging criminal activity are not actionable if the facts supporting the speaker's conclusion are disclosed. *Id.* at 388.

While California law applies to this action, a number of New York cases are also directly instructive on this issue, routinely finding that short sellers' reports exposing fraud or financial distress in the companies they short sell are protected expressions of opinion. *See MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17CV07568PGGKHP, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018), report and recommendation adopted, No. 17 CIV. 7568 (PGG), 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018); *Nanoviricides, Inc. v. Seeking Alpha, Inc.*, 43 Media L. Rep. 1082, 2014 WL 2930753 (N.Y. Sup. Ct. June 26, 2014); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 2012 WL 3569952, 2012 N.Y. Slip Op. 51569(U) (N.Y. Sup. Aug. 16, 2012); *Deer Consumer*

*Products, Inc. v Little Group*, No. 650823/2011, 2012 WL 5983641 (N.Y. Sup. Ct. Nov. 29, 2012).[12]

In *Nanoviricides*, the plaintiff sued a short seller for a report published on *Seeking Alpha*. The author disclosed at the start of his report: "I am short [Plaintiff's stock]. I wrote this article myself, and it expresses my own opinions." 2014 WL 2930753, at *1. The report went on to accuse the company's managers of "abusing shareholders and looting the company" and to allege "egregious shareholder violations." *Id.* In support of these statements, the author recited facts from, and linked to, public filings and publicly available material. *Id.* at *5. Considering the facts and links in the report and the context surrounding the online posting, including the disclaimer, the court found that the statements were nonactionable opinion based on disclosed facts. *Id.* at *5-6.

Likewise, in *Deer Consumer Products*, the court held that statements alleging plaintiff "concocted a fraudulent land purchase to misappropriate at least $12 million of company funds" were protected opinion, because each allegation was supported by facts from public filings and private sources, which were "disclosed and provided in the document itself." 2012 WL 5983641, at *19. So, too, did the court in *Silvercorp* hold that short sellers' allegations that a company falsely represented its financial condition "were derived from data accessible by the provided hyperlink, giving readers the opportunity to review the underlying facts and form their own conclusions." 2012 WL 3569952 at *11. Finally, in *MiMedx*, the Court held a short seller's statements to an investor about potential criminal liability of a company were "opinions and predictions" – not statements of fact. 2018 WL 847014, at *7.

---

[12] Opinions based on disclosed facts are also protected under the First Amendment. *See, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) ("[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment.").

Just like the statements in these cases, each of Richard Pearson's statements is nonactionable opinion based on disclosed facts. Looking at the complete Vuzix Report, the average reader would understand that Richard Pearson's conclusions regarding fraud at Vuzix were his own informed opinions, based on extensive research cited throughout his report. *See Franklin*, 116 Cal. App. 4th 375, 10 Cal. Rptr. 3d 429 (2004). Readers had ample information to draw their own conclusions, and, in fact, they were explicitly advised to do so on the first page of the report. *See* Vuzix Report at 1 (noting in bold, red letters, "This report is the opinion of the author. . . . Do your own research, form your own opinions."). He further warned that he is not an investment advisor, and that the report "is not a recommendation for anyone anywhere to do anything at any time." *Id.* Richard Pearson also disclosed his investment position, specifically that he was short Vuzix. From the beginning, Richard made clear he was expressing an opinion and that the readers should draw their own conclusions. Richard continued to alert readers throughout the report that he was expressing an opinion by using language such as "in my view," "seems," "appeared to be," and "look like." *See* Vuzix Report at 3, 11, 13, 17, 25; *cf. Nanoviricides*, 2014 WL 2930753, at *5 (noting the article in question "contains the phrases 'we believe,' 'it seems to us' or the relevant equivalent" in determining that statements in a *Seeking Alpha* blog were nonactionable opinion).

### b. Statements Identified in Vuzix's Amended Complaint Are Opinions Based on Disclosed Facts.

As set forth in detail below, Richard Pearson disclosed the facts supporting each of these opinions in his report—and Vuzix does not challenge any of those facts.

### *Vuzix Is a Stock Promotion That Shows Blatant Signs of Fraud*

This statement is Richard Pearson's overarching conclusion that Vuzix shows signs of securities fraud, and it is supported by the entirety of the Vuzix Report.

Richard's conclusion that Vuzix shows signs of securities fraud is based on the six signs of securities fraud that had been explicitly identified and warned about by the SEC in a bulletin published to warn investors about "Fraudulent Stock Promotions." Vuzix Report at 4. Richard's conclusion is supported by more than 20 pages of detailed examples showing how Vuzix and its promotional activities display not just "any" of these six signs but rather ALL of the six "signs of microcap stock fraud."[13]

For example, Sign 1 is that "the SEC suspended public trading of the security or other securities promoted by the same promoter." Vuzix Report at 4. Richard identified a number of securities promoted by IRTH that have been suspended or delisted, or become the subject of SEC enforcement actions. The Vuzix Report also includes screenshots of an article by Mark Gomes touting Vuzix just one month before the SEC instituted cease-and-desist proceedings against him.[14] The report also contained screenshot of Gomes' *Seeking Alpha* page, where he had promoted other stocks that were later delisted. *Id.* at 14. Richard Pearson noted in the Vuzix Report that prior to working for Vuzix, Vuzix's Director of Investor Relations Matt Margolis previously worked for Gomes, as well as for stock promoter Harris Shapiro, whose promoted stocks were also later delisted or investigated for fraud. Prior to working directly for Vuzix, Margolis had heavily promoted shares of Vuzix online and had also promoted numerous other stocks that were later

---

[13] Statements alleging criminal or unlawful behavior are treated the same as any other opinion – if the author discloses the facts supporting the author's opinion that a law has been violated, the statement is protected. *See Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429, 436 (2004) (finding statements alleging a company stole copyrighted material and plagiarized were nonactionable opinion); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) (finding online statements accusing a man of murder, embezzlement, and fraud were nonactionable opinion). *See also MiMedx Grp., Inc.*, 2018 WL 847014, at *7; *Nanoviricides*, 43 Media L. Rep. 1082; *Silvercorp Metals*, 2012 WL 3569952; *Deer Consumer Products*, 2012 WL 5983641 (discussed in detail above).

[14] Additionally, all reporting by Richard Pearson that fairly and accurately reflects the contents of any legislative, judicial, or other proceeding is absolutely privileged under California's fair report privilege. Cal. Civ. Code § 47; *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 968, 234 Cal. Rptr. 702 (Ct. App. 1987).

halted or delisted. *Id.* at 13-16. Vuzix cannot dispute these facts upon which Richard's opinion is based.

Signs 2, 3, and 5 involve an "increase in stock price or trading volume linked to promotional activity," "press releases or promotional activity announcing events that ultimately do not happen," and a company issuing "a lot of shares without a corresponding increase in the company's assets." *Id.* at 4. The Vuzix Report contains pages of evidence showing that Vuzix used closed-door media events to generate visual content and news commentary around its products, and then promoted that generated media coverage on its social media sites so as to boost its share price. The Vuzix Report includes screenshots of IRTH's own PowerPoint case study of the "Strategic Media Wins" the IRTH had secured for Vuzix in which IRTH states that "IRTH fully utilizes the media to generate positive influence in the stock market" *Id.* at 5, 8. It then shows where Vuzix issued $30 million of new shares just after this "positive influence" caused the share price to reach new all-time highs. *Id.* at 6.

Richard also included a case study comparing the promotion of Vuzix to the promotion of Unilife Corp., whose CEO had been charged with fraud and whose stock had been delisted following Richard's past reports warning about the promotion behind that stock. *Id.* at 24. Richard includes five examples showing that prior to the delisting and fraud charges, Unilife was "just like Vuzix" in several key areas, including sensational technology claims, negative gross margins, and using undisclosed promotions to conduct repeated equity offerings. *Id.* at 24; *see also id.* at 26 (comparing Vuzix's behavior to other past companies facing federal fraud charges).

Again, Vuzix does not and cannot dispute these underlying facts. As these examples demonstrate, Richard Pearson fully disclosed the facts supporting his opinion that Vuzix "shows

blatant signs of fraud," and readers had ample evidence to draw their own conclusions. Therefore, this statement is protected opinion.

### *The Blade Appears to Be a Sham*

Vuzix additionally complains of two statements Pearson made regarding the dysfunctionality of Vuzix's "Blade" product:

> "The Blade appears to be a sham. NONE of the journalists could get the critical Alexa feature to function, yet precisely ALL of them aggressively touted 'Alexa' in reviews. The second video appears to be taken in someone's apartment, not at CES at all."

Compl. ¶ 40.

> "Vuzix's 'Blade' is a little more than a low tech mock-up which serves as a prop for journalists to conduct sham reviews. When these journalists 'reviewed' the product at CES, neither the Alexa feature nor the browser were functioning - not for any of the journalists. Yet these same journalists then widely touted the device in their mainstream bylines, overwhelmingly on the basis of the Alexa features that actually don't exist!"

Compl. ¶ 42.

Richard Pearson's opinion here was not that the Blade had no functionality: It was that the Blade was not the advanced device Vuzix claimed it was. This opinion is based on the disclosed facts that its features are very clearly low tech and could never command the $1,000 price tag that Vuzix was contending. *See* Vuzix Report summary (attached as Exhibit D to Richard Pearson Decl.) at 4 (clearly stating: **"Very important:** The Blade is definitely *NOT* an utterly functionless brick. The device can be seen to sport several very low-tech demo functions which were widely photographed by the journalists. But there is quite visibly nothing even remotely 'high tech' about any of these features.") (emphasis in original).

The Vuzix Report and its summary also included examples of similar products available online selling for around $60, not the $1,000 Vuzix claimed it would command, as well as instructional videos from Amazon and YouTube showing that adding "Alexa" functionality costs

nothing and can be done in just one hour by downloading a simple developer kit. *See* Vuzix Report, at 20; Summary, at 4. Yet, the "Amazon Alexa" functionality was being unjustifiably hyped by Vuzix and IRTH as part of a consistent "narrative" in the promotion to boost Vuzix's share price.[15] Additionally, the Vuzix Report was critical of reviews of the Blade because those reviews were not consistent with what is expected from professional technology journalists. Vuzix Report at 9. This became more concerning in light of the presentation from IRTH (again embedded in the Vuzix Report), which bragged that IRTH had "sourced" articles about Vuzix in these same media outlets, calling the articles "native advertising." *See id.* at 8. Specifically, Richard criticized reviews from journalists who had given effusive praise to the Blade's Amazon Alexa functionality, which was not even functioning during the time the journalists reviewed that device at the CES conference. *Id.* at 9. Richard embedded three videos of journalists from media outlets that IRTH had specifically touted as successful media placements. *Id.* at 5, 9. Each of the journalists gave the Blade rave reviews based on its Alexa feature, even though none of them could actually get that feature to work at that time. *Id.* at 9 (quoting one reviewer as stating "the [wifi] connection isn't working so we can't even test [Alexa] . . . but it's supposed to work."). Again, Richard Pearson strongly encouraged readers to watch the source videos, rather than accepting his conclusion, stating at the top of the page: "IMPORTANT: take a minute to actually watch these [videos] . . . ." *Id.*

Each of these disclosed facts and videos support Richard's opinion that "Vuzix's 'Blade' is a little more than a low tech mock-up which serves as a prop for journalists to conduct sham reviews."[16]

---

[15] *See also* SEC Warning Sign 2: Increase in stock price or trading volume linked to promotional activity.

[16] Although not necessary for the Court to determine that this statement was a non-actionable opinion, in 2019, these outlets published cautious or negative reviews of The Blade, consistent with Richard Pearson's criticism. *See* Richard

### *Showstoppers.com Creates Closed-Door Events That Look Like Press Conferences*

Vuzix also claims this statement is defamatory:

> "Showstoppers.com creates a private closed door events which look (in the photos) like real public conferences. Showstoppers then hand selects all the journalists and submits to Vuzix weeks before any event. There is zero possibility of anyone saying anything negative or questioning the obvious problems."

Compl. ¶ 48.

This statement is not defamatory. Instead, it is a combination of truthful facts (which are not disputed) and non-actionable opinions based on those facts. The Vuzix Report contains links to promotional materials from Showstoppers and Pepcom that explain the very similar exclusive media events, which both of these firms host to connect their client companies with invited journalists. Vuzix Report at 10-12.

As shown in the Vuzix Report, Showstoppers' marketing material emphasizes that Showstoppers is "a private event" and that a "tradeshow press badge is NOT an invitation." *See id.* at 11. The material further states that Showstoppers provides a press list to exhibitors in the weeks leading up to the event. *Id.* Pepcom's marketing material, also included in the Vuzix Report, boasts that Pepcom is "strict" in choosing which journalists attend its event, stating, "[w]e personally contact and screen every journalist and analyst we invite." *Id.* at 10.

Vuzix states that it did not attend the Showstoppers event at CES 2018 but admits it attended the nearly identical Pepcom event at CES 2018 and that it attended the Showstoppers event in Barcelona. Am. Compl. ¶ 54-55. The Vuzix Report does not specify the date or the city

---

Pearson Decl., Ex. E (identifying The Blade on display at the 2018 CES as "a preproduction version," a "clearly first-generation version," and as a cell phone "accessory"); Ex. F (referring to The Blade as a first-generation product whose camera is not as good as a smartphone that is a "few generations old").

in which Vuzix attended the Showstoppers event, and the distinction is of no moment for purposes of this litigation.

Vuzix further contends that Richard's statement implies Vuzix pays journalists for reviews, but in fact it does no such thing. *See* Am. Compl. ¶ 58. Instead, Richard states that Showstoppers prescreens journalists and submits a list of attending journalists to exhibitors weeks in advance. These facts are undisputed. Richard's conclusion that "[t]here is zero possibility of anyone saying anything negative or questioning the obvious problems" is his opinion, and readers are free to draw their own conclusions based on the event planners' own promotional materials disclosed in Richard's report.[17]

### *IRTH Communications Was Responsible for Articles Praising Vuzix*

Vuzix likewise has no basis for claiming the following statement is defamatory:

> Photos of leaked documents from IRTH Communications show IRTH bragging to potential clients that it was responsible for more than 30 articles from mainstream media outlets which all simultaneously erupted in connection with Margolis' 'Alexa ruse'. These specific IRTH sponsored articles were conspicuous in that they offered effusive praise for Vuzix but appeared as standard news on dozens of mainstream sites.

Vuzix claims in its Amended Complaint that this statement is defamatory because it "has never paid anyone to give its products a positive review." Am. Compl. ¶ 52.

In fact, as set forth in the Vuzix Report, Vuzix retains Santa Monica-based IRTH Communications, which describes itself as an "investor relations" firm; Vuzix pays IRTH to convince investors to buy shares of Vuzix. *See* Vuzix Report at 5 (IRTH PowerPoint describing "strategic media wins" it has secured for Vuxiz).

---

[17] Furthermore, statements such as these may be considered "rhetorical hyperbole" and are not actionable as a provably false statement of fact. *See Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 280, 105 Cal. Rptr. 2d 674 (2001), as modified (Apr. 5, 2001) ("[U]se of the words 'thief' and 'liar' in the course of a chance confrontation with a political foe at a shopping center was the type of loose, figurative, or hyperbolic language that is constitutionally protected.").

Richard's statement that IRTH bragged about being responsible for mainstream media articles comes directly from IRTH's own PowerPoint presentation titled "Vuzix Strategic Media Wins," which identifies "36 articles sourced directly by IRTH & IRTH contacts" as "Direct Targeting" and "Native Advertising" on behalf of Vuzix. Vuzix Report at 8. Another slide lists more than 30 mainstream media outlets under the heading "Media Placements Vuzix." *Id.* at 5. Images of these IRTH slides were embedded in the Vuzix Report and clearly support the report's conclusion regarding IRTH bragging about its "native advertising" and "media wins."

These facts, fully set forth in the Vuzix Report, support Richard Pearson's conclusion that Vuzix's media coverage was sponsored media coverage. These statement are, therefore, non-actionable opinions based on disclosed facts.

### 2. The Statements of Fact Identified in the Amended Complaint Are True, Supported By Public Filings, and/or Not Actionable.

It is axiomatic that a statement "is not defamatory if it is true." *Francis v. Dun & Bradstreet, Inc.*, 3 Cal. App. 4th 535, 540, 4 Cal. Rptr. 2d 361 (1992). The "literal truth" of every word need not proven, "so long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark." *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1977); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28, 53 Cal. Rptr. 3d 752, 764 (2007) (finding nonactionable a statement alleging a photo was taken five-and-a-half months after plastic surgery, when in fact it was taken four-and-a-half months after the surgery). Vuzix bears the burden of proving Richard Pearson's statements are false. *Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364, 375, 54 Cal. Rptr. 2d 781 (1996). Vuzix has not alleged facts sufficient to state a claim that any of the factual statements at issue in the report could plausibly prove falsity.

### *Vuzix Is a Reverse Merger*

Vuzix complains that the following statement is defamatory: "Vuzix Corp. is a reverse merger stock promotion which shows blatant signs of fraud." Am. Compl. ¶ 34.

Vuzix claims that Richard Pearson's statement is false because "Vuzix became a public entity by its initial public offering - and not a reverse merger - on December 24, 2009 . . . ." Am. Compl. ¶ 35. How Vuzix became a public company is irrelevant to Richard Pearson's claims. Richard's claims concerned Vuzix's original formation in 1997. The Vuzix Report shows a screenshot from Vuzix's SEC filings, which showed that the company was originally formed as an acquisition corporation in 1997 to acquire the assets of Forte Technologies and then in the same year became an operating company with the new name of Kaotech. Vuzix Report at 23. All of this is consistent with Vuzix being formed via a reverse merger. This reverse merger activity happened 12 years prior to Vuzix's eventual IPO, and the two transactions had nothing to do with one another. *See also* Vuzix 10K (annual report) for FY2017.[18]

Further, this corporate structuring is not itself unlawful, such that there is nothing defamatory about the term "reverse merger." Therefore, even if it were false, it would not be actionable. *See Michtavi v. N.Y. Daily News*, 587 F.3d 551, 552 (2d Cir. 2009) (A statement is defamatory only if it would expose an individual to shame "in the minds of right-thinking persons.").

---

[18] https://www.sec.gov/Archives/edgar/data/1463972/000114420418015310/tv488149_10k.htm.

### *Vuzix Has Negative Gross Margins*

Vuzix also alleges the following statement is defamatory: Vuzix has "Revenues: $0.5 million per quarter (negative gross margins)." Am. Compl. ¶ 38. Again, its allegations fail to plausibly allege falsity.

Richard Pearson embedded in the Vuzix Report a detailed financial table from Bloomberg that showed revenues and gross margin for each year from 2013 to 2017, showing Vuzix's typical recurring revenues over varying periods of time. Vuzix Report, at 23. This table shows plainly that, in each of the four previous years, Vuzix generated revenues of $2.4 million, $3.0 million, $2.7 million, and $2.1 million, which averages $0.6 million per quarter during that period. *See id.* at 23.

On page 4 of the Vuzix Report, Richard addressed the most recent year only, stating that "Vuzix generates a mere $1.3 million per quarter in revenues." This statement shows that even this larger number of $1.3 million in revenue is still an example of the SEC's fraud warning regarding "minimal revenues." *See* Vuzix Report at 4 (citing SEC Warning Sign 4). Vuzix admits that its 2017 quarterly revenues were $1.3 million. Am. Compl. ¶ 39.

The Bloomberg table on page 23 of the Vuzix Report shows plainly that in both 2017 and 2016, Vuzix reported negative gross margins. The Amended Complaint does not specifically deny that Vuzix has negative gross margins. Vuzix has not and cannot allege facts to prove this statement is false. *See Maheu*, 569 F.2d at 466.

### *The Toshiba Contract*

Vuzix complains the following statement is defamatory:

> Meanwhile, Vuzix has made it a point to aggressively tout a $5 million 'purchase agreement' with Toshiba. In fact, this agreement is really just manufacturing agreement whereby Vuzix is the one paying $5 million to Toshiba. The wording

states clearly that Toshiba will 'fulfill the initial purchase order received by Toshiba.'

Vuzix argues that this statement implies that Vuzix does not have "any legitimate agreement with Toshiba." *See* Am. Compl. ¶ 44.

This is incorrect. Richard only pointed out that the substance of the overall arrangement with Toshiba was such that economic value was flowing out of Vuzix and into Toshiba as opposed to the other way around. There is nothing defamatory about this statement and it is not actionable as a matter of law.

Further, Richard's statement is fully supported by Vuzix's SEC filings, which show that Vuzix had deeply subsidized the overall relationship with Toshiba by absorbing R&D and engineering costs, which were in excess of $13 million during the development period of this product in 2016 and 2017.[19] And, Vuzix's own annual report for 2018 showed that Vuzix never ended up receiving the $5 million, and instead only received $1.3 million for the full year 2018.[20] As a result, Vuzix has not and cannot allege facts that would prove Richard's statement regarding the Toshiba contract is false.

For all of these reasons, Vuzix has not alleged facts sufficient to support a plausible claim for defamation.

---

[19] *See* Vuzix 10K (annual report) for FY2017: https://www.sec.gov/Archives/edgar/data/1463972/000114420418015310/tv488149_10k.htm.

[20] *Compare* Vuzix Annual Report FY2018 (filed with SEC on March 15, 2019), available at https://www.sec.gov/Archives/edgar/data/1463972/000114420419014093/tv514947_10k.htm, *with* Vuzix's 8K (filed with the SEC on December 7, 2017), https://www.sec.gov/Archives/edgar/data/1463972/000114420417062688/tv480979_8k.htm ("Pursuant to the supply agreement, the Company agreed to sell such product exclusively to Toshiba for a period of up to 12 months, subject to Toshiba's submitting a minimum of $5,000,000 of purchase orders.").

III.   **VUZIX'S AMENDED COMPLAINT SHOULD ALSO BE DISMISSED UNDER CALIFORNIA'S ANTI-SLAPP STATUTE.**

A.   **The Vuzix Report Is Protected Under California's Anti-SLAPP Statute.**

Consistent with this constitutional interest in disposing of meritless defamation claims early, California enacted an anti-SLAPP statute that allows a defendant to abbreviate litigation that inhibits expression by dismissing the action at an early stage to encourage continued participation in matters of public significance. C.C.P. § 425.16(a).[21] The California anti-SLAPP statute provides a substantive immunity from defamation lawsuits, arising out of acts in furtherance of one's right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b). To invoke the immunity afforded by the Act, a defendant needs only make a threshold showing that the claim at issue arises from a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *Id.* § 425.16(e)(3). Once a defendant makes a prima facie showing that the anti-SLAPP statute applies, the burden shifts to plaintiff to establish a probability of success on the merits. *Id.* § 425.16(b)(1); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 824 (1994). "In opposing the Anti–SLAPP motion, Plaintiff 'cannot simply rely on [his] pleadings, even if verified, but must adduce competent, admissible evidence' to establish a probability of prevailing on the merits." *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1051 (E.D. Cal. 2008).

Websites that are accessible to the public—like MoxReports.com—are public forums for purposes of California's anti-SLAPP statute. *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) (noting that websites are public forums even where "Defendant controls the content . . . with no ability for members of the public to express

---

[21] The Ninth and Second Circuits have unequivocally held that protections provided under state anti-SLAPP statutes, including California's anti-SLAPP statute, are available to litigants in federal court in diversity actions. *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).

their viewpoint"); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006). Likewise, serious allegations of securities fraud—like those contained in the Vuzix Report—are unquestionably matters of public interest. *See Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1154 (C.D. Cal. 2005) (finding email describing owners of a publicly traded company as the "biggest crooks on the planet" to be in the public interest because the company repeatedly used press releases to promote itself and its stock); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1005, 1007-08, 113 Cal. Rptr. 2d 625, 637, 639 (2001) (statements made online by investors claiming a company's products were inferior and that the company was running a stock scam were made in a public forum on a matter of public interest); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 151, 162 Cal. Rptr. 3d 831, 838 (2013) ("[I]nvestment scams are a matter of public interest. Investors turn to the markets to help secure their futures, pay for homes, and send children to college, making investor protection more compelling than ever.").

Therefore, the statements at issue fall squarely within the protections of California's anti-SLAPP statute.

**B.**     **Vuzix Cannot Meet Its Burden to Demonstrate It Is Likely to Prevail on Its Claims.**

Because Richard Pearson has clearly met his burden under the anti-SLAPP statute, Vuzix has the burden to demonstrate it is likely to prevail in this lawsuit. *Id.* § 425.16(b)(1); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 824 (1994); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

To meet this burden, a Plaintiff must "state and substantiate a legally sufficient claim." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002).[22] Because California's anti-

---

[22] In assessing the probability of prevailing, a court looks to the evidence that would be presented at trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on the pleadings, but must adduce competent, admissible evidence. *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007).

SLAPP statute requires that Plaintiff satisfy a higher burden than is required for a 12(b)(6) motion to dismiss, "[i]f Plaintiffs cannot plead a plausible cause of action under the [Fed. R. Civ. P.] 12(b)(6) standard, then Plaintiffs as a matter of law cannot meet the probability of success on the merits standard [under California's anti-SLAPP statute]." *Choose Energy, Inc. v. Am. Petroleum Inst.*, 87 F. Supp. 3d 1218, 1225 (N.D. Cal. 2015). Because Richard Pearson has established that Vuzix has failed to state a claim for libel or libel per se, Vuzix cannot satisfy the heightened burden of anti-SLAPP motion requiring likelihood of success on the merits.[23] Thus, for all of the foregoing reasons, the Amended Complaint should be dismissed pursuant to California's anti-SLAPP statute.

### C.   Richard Pearson Is Entitled to an Award of His Attorneys' Fees and Costs Incurred Since the Filing of This Lawsuit.

The Court *must* award attorneys' fees to a defendant who prevails on a special motion to strike under the anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16; *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 215, 123 Cal. Rptr. 2d 647, 650 (2002) (noting the award of attorneys' fees "is not discretionary but mandatory" and must be considered even after a case is voluntarily dismissed or dismissed by the court); *Barry v. State Bar of California*, 2 Cal. 5th 318, 326, 386 P.3d 788, 793 (2017) ("[A] court that lacks jurisdiction to determine the merits of an action may nevertheless consider 'collateral issues' such as whether the prevailing party should be awarded its litigation expenses or whether sanctions should be imposed for a litigant's abuse of the judicial process."). The fee provision should be "broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (affirming an award of attorneys' fees for hours spent on matters "not exclusively in pursuit of the

---

[23] For purposes of the anti-SLAPP motion to strike, the Court may consider the full Richard Pearson Declaration and exhibits.

anti-SLAPP motion," such as the motion to dismiss, reply, and document review). Richard Pearson therefore respectfully requests an award for the entirety of his attorneys' fees and costs incurred in defense of this meritless lawsuit.

## CONCLUSION

For all of the reasons set forth above, Richard Pearson respectfully requests that the Court grant his motion to dismiss and special motion to strike and award him his attorneys' fees and costs incurred in defending this action since the filing of this lawsuit.

Dated: March 27, 2019                                Respectfully submitted,

                                                     s/ Christine N. Walz
                                                     Christine N. Walz
                                                     HOLLAND & KNIGHT, LLP
                                                     31 West 52nd Street
                                                     New York, NY 10019
                                                     Phone: (212) 513-3368
                                                     Fax: (212) 385-9010
                                                     Christine.walz@hklaw.com

                                                     Cynthia A. Gierhart
                                                     HOLLAND & KNIGHT LLP
                                                     800 17th Street NW, Suite 1100
                                                     Washington, DC 20006
                                                     202-955-3000
                                                     202-955-5564
                                                     cindy.gierhart@hklaw.com
                                                     *SDNY admission application pending*

                                                     *Attorneys for Richard J. Pearson*