UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VUZIX CORPORATION,                          :
                                            :        Civil Action No..:  19-cv-00689-NRB
                        Plaintiff,          :
                                            :
            vs.                             :        **ORAL ARGUMENT**
                                            :        **REQUESTED**
                                            :
                                            :
RICARDO ANTONIO PEARSON a/k/a               :
RICHARD PEARSON                             :
                                            :
                        Defendant.          :
-------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS AND
<u>SPECIAL MOTION TO STIKE</u>**

SICHENZIA ROSS FERENCE LLP
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Tel. No. (212) 930-9700

*Attorneys for Plaintiff Vuzix Corporation*

<u>On the motion:</u>
Todd Manister, Esq.
Thomas McEvoy, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ........................................................................3

ARGUMENT ............................................................................................4

I. THE COURT LACKS SUBJECT MATTER JURISDICTION,
  AND THIS ACTION SHOULD BE REMANDED ……………………………………….…..4

II. NEW YORK HAS PERSONAL
  JURISDICTION OVER DEFENDANT …………….............................................6

III. PLAINTIFF HAS PLED A CAUSE OF ACTION FOR DEFAMATION IN
  CONFORMITY WITH FEDERAL PLEADING STANDARDS …………………………8

    A. Standard…………………………………………………………………………8
    B. Vuzix States Viable Claims for Defamation……………………………….......9

IV. THE COURT SHOULD CHOOSE NEW YORK LAW
  AS APPLICBALE TO THIS SUIT …………..…………………………..…………...19

V. THE CALIFORNIA ANTI-SLAPP STATUTE IS NOT
  APPLICABLE TO THIS ACTION AND DOES NOT
  FORM A BASIS FOR DISMISSAL ……………………………………………….…..22

CONCLUSION....................................................................................25

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                          <u>**Page(s)**</u>

<u>Adelson v Harris,</u>
    973 F. Supp.2d 467 (S.D.N.Y. 2013)……………………………..…..….....18, 19

<u>Adler v. Conde Nast Publications,</u>
    643 F. Supp. 1558 (S.D.N.Y. 1986)………………………………..…..…...……...10

<u>Armstrong v. Simon & Schuster, Inc.,</u>
    85 N.Y.2d 373 (1995)………….…..……………………………………....…….9

<u>Best Van Lines, Inc. v Walker,</u>
    490 F. 3d 239 (2d Cir. 2007) ………………….......……………………………7, 8

<u>Biro v. Conde Nast,</u>
    883 F. Supp.2d 441(S.D.N.Y. 2012) ………………….............……………...9, 12

<u>Broadspring, Inc. v. Congoo LLC,</u>
    2014 U.S. Dist. LEXIS 116070  (S.D.N.Y. Aug. 20, 2014)……………………..…18

<u>CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.,</u>
    14 F. Supp. 3d 463(S.D.N.Y. 2014)……………………………………………….4

<u>City of Almaty v. Ablyazov,</u>
    278 F. Supp.3d 776 (S.D.N.Y. 2017)………………………………………....…..6

<u>Conroy v. Spitzer,</u>
    70 Cal.App.4th 1446(Cal. Ct. App. 1999)………………………….………………24

<u>Condit v Dunne,</u>
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)…………………………………………...18

<u>Diario El Pais, S.L. v. Nielsen Co.,</u>
    2008 U.S. Dist. LEXIS 929872008 WL 4833012 (S.D.N.Y. Nov. 6, 2008)…………...…9

<u>Ehrlich-Bober & Co., Inc. v University of Houston,</u>
    49 NY2d 574 N.E.2d 726, 427 N.Y.S.2d 604 [1980]………………………..…….8

<u>Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC,</u>
    194 F. Supp. 3d 263(S.D.N.Y. 2016)……………………..………………....…17

<u>Epifani v. Johnson,</u>
    65 A.D.3d 224, 882 N.Y.S.2d 234 (2d Dept. 2009)…………………….…...…….8

Equilon Enters. v. Consumer Cause, Inc.,
 29 Cal. 4th 53 (2002)……………………………………………...…25

Exeltis USA Inc. v. First Databank, Inc.,
 2017 U.S. Dist. LEXIS 210482  (N.D. Cal. Dec. 21, 2017)……………………………...…25

Flores v. Emerich & Fike,
 416 F. Supp. 2d 885(E.D. Cal. 2006)……………………………………………………21

Frisone v. Pepsico, Inc.,
 369 F. Supp.2d 464 (S.D.N.Y. 2005)……………………………………………………..4

Geary v. Goldstein,
 831 F. Supp. 269(S.D.N.Y. 1993)………………………………………………………12

GetFugu, Inc. v. Patton Boggs LLP,
 220 Cal. App. 4th 141 (2013)…………………………………………….…22, 25

Gilot v. Equivity,
 2018 U.S. Dist. LEXIS 140100 (S.D.N.Y. Aug. 16, 2018)………………………….…...6

Grewal v. Jammu,
 191 Cal. App. 4th 977 (2011)……………………………………….…………….....22, 24

Hilton v. Hallmark Cards,
 599 F.3d 894 (9th Cir. 2009)…………………………………………………………21

Kashian v. Harriman,
 98 Cal.App.4th 892 (Cal. Ct. App. 2002)……………………………………...…………21

Klaxon Co. v Stentor Elec. Mfg. Co.,
 313 U.S. 487 (1941)………………………………………………………………....18

Ladany v. William Morrow & Co.,
 465 F. Supp. 870, 875 (S.D.N.Y. 1978)……………………………………………..…....8

Lee v. Bankers Trust Co.,
 166 F.3d 540 (2d Cir. 1999)……………………………………………………...…18

Liberty Synergistics, Inc. v. Microflo Ltd.,
 50 F. Supp. 3d 267 (E.D.N.Y. 2014)…………………………………………….………23

Liu v. 88 Harborview Realty, LLC,
 5 F. Supp.3d 443 (S.D.N.Y. 2014)……………………………………………………..4

Loeb v. New Times Communications Corp.,
    497 F. Supp. 85(S.D.N.Y. 1980)…………………………………………………………..15

Makaeff v. Trump University,
    715 F.3d 254  (9th Cir. 2013)…………………………………………………………......21

Martin v. Hearst Corp.,
    777 F.3d 546(2d Cir. 2015) ………………………………………….……………….........15

Matson v. Dvorak,
    40 Cal.App.4th 539 (Cal. Ct. App. 1995)…………………………………………....…24

McClatchy Newspapers, Inc. v. Superior Court,
    189 Cal. App.3d 961 (1987…………………..……………………………………....…10

Metabolife Int'l, Inc. v. Wornick,
    264 F.3d 832 (9th Cir. 2001)…………………………………………………………….22

Michtavi v. N.Y. Daily News,
    587 F.3d 551(2d Cir. 2009)…………………………………………………….…..……13

Mindsys Cosmetics, Inc. v. Dakar,
    611 F.3d 590 (9th Cir. 2010)…………………………………….…………………….…22

Noel v. River Hills Wilsons, Inc.,
    113 Cal. App. 4th Dist. 1363 (2003)……………………………………………....…10

O'Grady v. ConMed Corp.,
    2014 U.S. Dist. LEXIS 24732  (N.D. Cal. Feb. 26, 2014)…………………………….8

Paulus v. Bob Lynch Ford,
    139 Cal.App.4th 659(Cal. Ct. App. 2006)……………………………………………….24

Piping Rock Partners, Inc. v. David Lerner Assocs.,
    946 F. Supp.2d 957(N.D. Cal. 2013)…………………………………………………....8

PowerDsine, Inc. v. AMI Semiconductor, Inc.,
    591 F. Supp.2d 673 (S.D.N.Y. 2008)……………………………………….……..……17

Rogers v. Home Shopping Network, Inc.,
    57 F. Supp. 2d 973(C.D. Cal. 1999)……………………………………………….......21

Sanders v. Walsh,
    219 Cal. App. 4th 855 (2013)………………………………………………………....…8

Sino Clean Energy Inc. v Little,
    35 Misc. 3d 1226 (Sup Crt NY County 2012) …………………………..............…..8

Smartmatic USA Corp. v. Dominion Voting Sys. Corp.,
    2013 U.S. Dist. LEXIS 153727 WL 5798986 (S.D.N.Y. Oct. 22, 2013) ………….....2

Sorvillo v. St. Francis Preparatory Sch.,
    607 F. App'x 22  (2d Cir. 2015) ………………………………………………11, 13

Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
    160 F.3d 925, 930 (2d Cir. 1998)  …………………….....……………………...…..4

Steinhilber v. Alphonse,
    68 N.Y.2d 283 (N.Y. 1986) ……………….………...…………………...………12

Strelsin v Barrett,
    36 A.D.2d 923 (1st Dept 1971) ………..……………………………………...…..6

Thornbrough v. Western Placer Unified Sch. Dist.
    2010 U.S. Dist. LEXIS 53136  (E.D. Cal. May 27, 2010)……………………………22

Treppel v. Biovail Corp.,
    2005 U.S. Dist. LEXIS 18511, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)………..8-9

Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.,
    2017 U.S. Dist. LEXIS 196150, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017)………....7

Vanderhorst v. Heitner,
    2015 U.S. Dist. LEXIS 89937 WL 4162732 (E.D.N.Y. July 9, 2015) ……………....5

Wilbanks v. Wolk,
    121 Cal. App. 4th 883 (2004)…………………………………….……………..24

Wilcox v. Superior Court,
    27 Cal.App.4th 809(Cal. Ct. App. 1994)……………………………….....………24

Wojcik v. 42nd St. Dev. Project, Inc.,
    2005 U.S. Dist. LEXIS 4018 (S.D.N.Y. March 14, 2005)………………………….4

Zervos v. Trump,
    94 N.Y.S.3d 75 (1st Dept. March 14, 2019)……………………………………8

| **Statutes** | **Page(s)** |
|---|---|
| 28 U.S.C. § 1332…………………………………………………………..…6, 4 | |
| CPLR § 302(a)(1)……………………………………………...……6, 7, 8 | |
| Cal. Civ. Code § 47………………………………………………………10 | |

Plaintiff Vuzix Corporation ("Plaintiff" or "Vuzix") submits this memorandum of law in opposition to Defendant Ricardo Antonio Pearson a/k/a Richard Pearson's ("Defendant" or "Pearson") motion to dismiss and special motion to strike pursuant to California's Anti-SLAPP statute ("Motion").  For the reasons that follow, Defendant's meritless Motion should be denied.

## PRELIMINARY STATEMENT

Vuzix, a designer, manufacturer, marketer and seller of wearable display devices, and a leading supplier of Smart Glasses and Augmented Reality, is a publicly traded company with growing revenues, notable investors (for instance, almost $25 million from Intel Corporation), 74 patents (with 79 additional patents pending) and numerous IP licenses in the near-eye display field, and various accolades (including Consumer Electronics Show awards for innovation from 2005 through 2019).  Conversely, Defendant has no real credentials, and his "business" is to blog about companies in a "short-and-distort" scheme for his own financial gain.  In fact, although Defendant claims, without any factual support, that Vuzix is a fraud, a closer look into Pearson's online activities reveals that he is, in fact, a charlatan with a heavy online presence in at least two New York-based blogging websites: *Seeking Alpha* and *TheStreet.com*.  Not surprisingly, then, Defendant's Motion is nothing but another attempt by Pearson to defame and harass Vuzix for his own financial gain.

Indeed, Defendant's Motion, just like his published statements about Vuzix, lacks any merit.  First, at a pre-motion conference held on February 27, 2019, the Court noted that Pearson had failed to set forth "the magic words" with respect to his citizenship in his initial Declaration, (*see* Dkt. #1, Ex. B), and directed him to do so in a supplemental Declaration as part of his anticipated motion to dismiss so that the Court could determine whether it has subject matter jurisdiction.  Pearson has failed to do so.  His supplemental Declaration (hereinafter, "Pearson

Declaration" or "Pearson Decl."), like his initial Declaration, is cryptic and cagey, at best, with respect to his citizenship and domicile.  Because Defendant has failed to satisfy his burden with respect to his citizenship, this matter should be remanded to the New York State Supreme Court.[1]

In the event that the Court finds there to be diversity jurisdiction (which there is not), it still should deny the Motion because Plaintiff has more than adequately stated a cause of action against Defendant pursuant to the liberal notice pleading standards under Fed. R. Civ. P. 8.  As described herein and in the accompanying Declarations of Paul J. Travers (hereinafter, "Travers Declaration" or "Travers Decl.") and Matt Margolis (hereinafter, "Margolis Declaration" or "Margolis Decl."), Plaintiff has stated viable claims for libel and libel per se against Pearson. Moreover, this Court has personal jurisdiction over Pearson by virtue of his ties with the State of New York, insofar as he is a regular online contributor to various media outlets headquartered there, including *Seeking Alpha* and *TheStreet.com*.

Since this Court is sitting in New York, New York choice-of-law rules apply, which strongly militate in favor of applying New York substantive law since New York has the most significant ties to this action, insofar as the defamation and resulting harm occurred to Vuzix here.  On that basis alone, Defendant's special motion to strike pursuant to the California anti-SLAPP statute should similarly be denied, and Plaintiff be awarded its attorneys' fees in having to oppose the meritless Motion.

Lastly, even if the Court decides that the California anti-SLAPP statute is applicable (which it is not), Defendant has not established that his statements are a matter of public concern

---

[1] Currently, Plaintiff's motion to remand this matter back to State Court, where it originally filed this lawsuit, is still pending, (*see* Dkt. ##10-12).  As such, Defendant's Motion is premature.  *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, 2013 U.S. Dist. LEXIS 153727, *10 2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) (noting that court must decide remand motion before deciding a motion to dismiss because "fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction").

that fall within the ambit of the statute or that Plaintiff has shown the low probability of success as required, warranting denial of the Motion.

## STATEMENT OF FACTS

Pearson is not a journalist or a well-known public author but, rather, a self-confessed activist investor who self-publishes articles for his own financial gain. As a result of a series of defamatory articles about Vuzix that he published both at *MOXReports.com* and *Seeking Alpha* (hereinafter, collectively, the "Vuzix Report"), Pearson defamed Vuzix while short selling the its stock. Despite contentions to the contrary, Vuzix has neither "engaged in tactics" to prolong this litigation nor sought to "chill [Pearson's] future speech." (*See* Defendant's Memorandum of Law in Support (hereinafter, "MOL"), p. 1).[2] Instead, this action was commenced to recover damages as a result of Pearson's utterly false and defamatory writings. For purposes of judicial economy, Plaintiff refers the Court to, and incorporates by reference, the statement of facts as set forth within the Amended Complaint (*see* Declaration of Todd Manister, Esq., Ex. 1)[3] and the Travers and Margolis Declarations.

---

[2] Each of the so-called "tactics" Defendant alleges are easily refutable. First, Plaintiff filed suit against "Ricardo Antonio Pearson a/k/a Richard Pearson" and Pearson does not dispute he is called "Ricardo." (Pearson Decl., ¶ 57). Moreover, Plaintiff filed suit in New York State Supreme Court based upon its reasonable belief that Defendant resided in New York. Curiously, as noted herein, while Defendant has been elusive and difficult to find Plaintiff, a publicly traded company based in West Henrietta, New York, and its law firm are not. Nothing stopped Pearson from contacting us and/or accepting service. (*See* Travers Decl., ¶ 170). Further, because of Defendant's elusiveness, Plaintiff was unable to serve him within the required 120 days for personal service, and made an application to the Court for an extension of time to serve him and for alternative methods of service. (Manister Decl., Ex. 2). The Court granted the application and ordered Plaintiff to serve Pearson by electronic mail. (*Id.*, Ex. 3). Plaintiff complied with the Order. (*Id.*, Ex. 4). Finally, Plaintiff filed a motion to remand this action to New York State Supreme Court, where it was originally filed, because Pearson has failed to establish a basis for this Court's subject matter jurisdiction insofar as he has utterly failed to satisfy his burden of establishing his domicile both at the time Plaintiff commenced this action and at the time Pearson removed it to this Court. (*See* Dkt. ##10-12). That motion is still pending before the Court.

[3] Hereinafter, the Todd Manister's Declaration will be referred to as the "Manister Declaration" or "Manister Decl."

**ARGUMENT**

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION, AND THIS ACTION SHOULD BE REMANDED

As a threshold matter, this Court lacks subject matter jurisdiction to hear this dispute because there is a lack of complete diversity among the parties, warranting that the matter be remanded to the New York State Supreme Court, where Vuzix originally filed it.

"It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to ***citizenship***." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925, 930 (2d Cir. 1998) (emphasis added); *see also Wojcik v. 42nd St. Dev. Project, Inc.,* 2005 U.S. Dist. LEXIS 4018, at *3 (S.D.N.Y. March 14, 2005) (noting that a party's "citizenship depends upon their place of domicile… Allegations of residence are insufficient to establish diversity jurisdiction.").

As the party seeking to invoke this Court's subject matter jurisdiction, Pearson bears the burden of proving that complete diversity of citizenship exists between the parties. *See CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*, 14 F. Supp.3d 463, 472 (S.D.N.Y. 2014) ("The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction."); *Frisone v. Pepsico, Inc.*, 369 F. Supp.2d 464, 471-72 (S.D.N.Y. 2005) ("[T]he burden of establishing subject matter jurisdiction rests upon the party seeking exercise of that jurisdiction ….")  "With respect to individual parties, citizenship depends upon their places of domicile.  Even though a party may have several places of residence, he or she may have only one domicile at a given time….  Allegations of residence are insufficient to establish diversity jurisdiction.  It is well-established that when the parties allege residence but not citizenship, the court must dismiss the suit." *Wojcik*, 2005 U.S. Dist. LEXIS 4018, at *3.  "A person's 'domicile' is the place where a person has his true fixed

4

home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Liu v. 88 Harborview Realty, LLC*, 5 F. Supp.3d 443, 446 (S.D.N.Y. 2014).

Pearson has failed to meet his burden and establish his domicile both at the time Vuzix commenced this action and at present. Notably, the Pearson Declaration brazenly ignores the Court's clear directive to state expressly the "magic words" of his domicile and citizenship in his second bite at the apple.

The fragmented snapshots in are ***not*** dispositive of Pearson's domicile and only further underscore Pearson's elusive nature.[4] *See Vanderhorst v. Heitner*, 2015 U.S. Dist. LEXIS 89937, at *7-8, 2015 WL 4162732 (E.D.N.Y. Jul. 9, 2015) (granting plaintiff's motion to remand for want of diversity jurisdiction, noting that defendant's affidavit stated "only that she ***resides*** in an apartment in Lodi, New Jersey, not that she is a ***citizen*** of New Jersey…. Residence is not synonymous with domicile… and domicile cannot be conclusively established by a single factor, such as the state issuing the person's driver license") (emphasis added)); *Gilot v. Equivity*, 2018 U.S. Dist. LEXIS 140100, at *4 (S.D.N.Y. Aug. 16, 2018) (noting that a defendant's mailing address is "insufficient for purposes of alleging citizenship under § 1332). Pearson utterly fails to satisfy his burden of establishing complete diversity, and as such, the Court should remand this case to the State court.[5]

---

[4] In the face of the Court's unequivocal instruction, Pearson again attempts to evade and circumvent the issue of his domicile by distracting the Court with a myriad of inapposite "facts": (i) that he is "based in," "currently lives in," and has "continuously maintained the same mailing address in the Marina Del Ray area of Los Angeles since 2008" (Pearson Decl., ¶¶ 2-3); (ii) that he is a "tax resident" of California (*Id.*, ¶ 5); (iii) that he "treat[s] California as [his] home, and when [he] travel[s], [he] intend[s] to return to California" (*Id.*); (iv) that he "maintain[s] a California driver's license" and between 2016 and 2018 has "not had a driver's license from any state other than California (*Id.*, ¶ 8); (v) that he "do[es] not currently reside in New York and [has] not resided in New York since 2005" (*Id.*, ¶ 20); and (vi) that he "do[es] not do or solicit business in New York," which is belied by his role as recurring contributor for *Seeking Alpha*, a New York company that published the underlying Vuzix Report (*Id.*, ¶ 22). Curiously, and putting aside the fact that not once does the Pearson Declaration declare, under penalty of perjury, that he is a "citizen of" or "domiciled in" California, the ***only*** corroborating/supporting evidence that Pearson submits is a badge that was purportedly provided to him at CES 2019 (*Id.*, ¶ 29) which merely lists "Richard J. Pearson" and "Marina Del Rey, California"   (*i.e.*, not his driver's license or redacted tax forms).

[5] In the alternative, Plaintiff seeks jurisdictional discovery on the issue of Defendant's domicile. *See City of Almaty*

## II.     THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

To the extent the Court finds there to be diversity jurisdiction (which there is not), it should also find that the Court has personal jurisdiction over Pearson pursuant to New York's long-arm statute. *See* CPLR § 302(a)(1).[6] Pearson is subject to this Court's jurisdiction pursuant to CPLR § 302(a)(1) because he has engaged in "purposeful activities" within the State, and there is an articulable nexus between Pearson having caused his "Vuzix Report" to be distributed within the State and Vuzix' claims.[7] (*See* Travers Decl., ¶¶ 64, 165-66).

"[P]ersonal jurisdiction in a libel action may be based upon the transaction of business pursuant to CPLR § 302(a)(1)." *Seven Seas Merger, Corp. v. Ford*, 1994 U.S. Dist. LEXIS 193, at **16-17, 1994 WL 9778 (S.D.N.Y. Jan. 11, 1994). "There is no requirement that jurisdiction be grounded upon either the final act or the ultimate act causing injury…. It is sufficient if the cause of action is related to and grows out of the transaction of business in New York." *Southridge Capital Mgmt., LLC v. Lowry*, 188 F. Supp.2d 388, 398 (S.D.N.Y. 2002). "New York courts … have permitted jurisdiction under § 302(a)(1) in defamation cases where the defamation complained of arises from or is connected with the transaction of business within the state …." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp.2d 514, 533 (S.D.N.Y. 2001).

Through Pearson's contributions to *Seeking Alpha*, including publishing at least 104

---

*v. Ablyazov*, 278 F. Supp.3d 776, 809 (S.D.N.Y. 2017) ("Jurisdictional discovery is warranted where, even if plaintiff has not made a *prima facie* showing, [they have] made a sufficient start toward establishing personal jurisdiction…. A court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction ….")

[6] CPLR § 302(a), New York's long-arm statute, provides in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: 1. Transacts any business within the state …." Defendant has done just that.

[7] Defendant cites to *Strelsin v Barrett*, 36 A.D.2d 923, 320 N.Y.S.2d 885 (1st Dept 1971) as a "case remarkably similar to the matter at hand." It is not. In that case, the defendant gave regular live-performances in California, which were distributed throughout the country on television. The Court held that such activity did not give rise to doing business in New York since the performance was held elsewhere. Conversely, in the matter at bar, Pearson has been a regular contributor of *Seeking Alpha*, a New York-based entity, having published at least 104 articles (by his own account). (*See* Travers Decl., ¶¶ 64; 163-64).

articles (by his own account), Pearson has transacted business within New York. (*See* Travers Decl., ¶¶ 64, 165-66). Pearson's conduct was for his own financial gain, as he openly conceded that "author is short Vuzix," illustrating his intention to profit from his online activities through a New York-based website. (*See* Travers Decl., ¶ 151).[8]

Moreover, Pearson's repeated contribution of articles subjected him to the *Seeking Alpha* Terms of Use ("TOU"), which clearly provided that Pearson agreed to the exclusive jurisdiction of the State of New York, New York County, in his dealings with *Seeking Alpha*. (*See* Manister Decl., Ex. 5). Although Defendant contends that the TOU does not apply to this action since the agreement was between him and *Seeking Alpha*, not Vuzix, (MOL, pp. 8-9), courts have explicitly upheld forum-selection clauses in disputes between a signatory and non-signatory, such as here. *See, e.g., Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, 2017 U.S. Dist. LEXIS 196150, at **19-20, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) (acknowledging instances where signatory and non-signatory can be found to forum-selection clause insofar as they are "closely related"). Accordingly, Vuzix should be able to enforce the TOU against Pearson, who is bound by the agreement, so as to subject him to this Court's personal jurisdiction. (*See* Manister Decl., Ex. 5, ¶ 10). Accordingly, this Court may exercise personal jurisdiction over Pearson pursuant to CPLR § 302(a)(1).[9]

---

[8] Defendant principally relies on *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) for the proposition that this Court lacks personal jurisdiction over him. (*See* MOL, pp. 5-8). Nevertheless, *Best Van Lines* is distinguishable in that the website on which the alleged defamatory posts were made was *not* a New York-based company, but rather owned and operated by the defendant from his home in Iowa. Conversely, *Seeking Alpha* is a New York-based website, with its reported place of business at 52 Vanderbilt Avenue, New York, New York. (Travers Decl., ¶ 164). Further, the Court acknowledged that "New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more." *Best Van Lines, Inc.*, 490 F.3d at 249. Ultimately, the Court concluded that "traditional statutory and constitutional principles remain the touchstone of the inquiry" even for analyzing internet-based jurisdiction. *Id.*, at 252. Under that analysis, Pearson has the requisite "minimum contacts" with New York insofar as he has published at least 104 articles on *Seeking Alpha*, based in New York, for his own financial gain.

[9] Lastly, at this juncture, absent limited discovery, Vuzix has no way to know whether Pearson dealt, for instance, directly with a New York broker and/or maintained brokerage accounts in New York for purposes of conducting his

## III.   PLAINTIFF HAS PLED A CAUSE OF ACTION FOR DEFAMATION IN CONFORMITY WITH FEDERAL PLEADING STANDARDS

### A.   Standard

When bringing a defamation claim, New York law[10] requires a plaintiff's complaint to "set forth the particular words complained of and the person or persons to whom the alleged defamatory comments were made." *Mills v. Miteq, Inc.*, 2008 U.S. Dist. LEXIS 9209, at \*\*4-5, 2008 WL 350922 (E.D.N.Y. Feb. 7, 2008).  In a defamation case, if "contested statements are reasonably susceptible of a defamatory connotation" a motion to dismiss should be denied. *Armstrong v. Simon & Schuster, Inc.,* 85 N.Y.2d 373, 380 (1995).  Moreover, "a writing or printed article is libelous per se that is, actionable without allegations or proof of special damages if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community ... (or) tends to disparage a person in the way of his office, profession or trade." *Ladany v. William Morrow & Co.*, 465 F. Supp. 870, 875 (S.D.N.Y. 1978).  "Defamation per se may be defined as a statement that casts aspersions upon the basic character and integrity of an individual or business.  Thus, a statement which *tends* to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages because injury is assumed."

---

short selling.  Indeed, both New York State and federal courts have held that actively maintaining a brokerage account constitutes "transacting business" within the statutory definition.  *See Ehrlich-Bober & Co., Inc. v University of Houston*, 49 N.Y.2d 574, 404 N.E.2d 726, 427 N.Y.S.2d 604 (1980); *Sino Clean Energy Inc. v Little*, 35 Misc. 3d 1226 (N.Y. Sup. Ct. N.Y. Cty. 2012).

[10] Defendant erroneously assumes that the substantive law of California applies.  (*See* MOL, pp. 10-11, n.10).  As discussed in Section IV., *supra*, New York substantive law applies under well-established choice-of-law principles.  Nevertheless, even if the Court applied California law to Plaintiff's claims (which it should not), it would not change the conclusion that Vuzix has stated viable causes of action.  In *Zervos v. Trump*, 94 N.Y.S.3d 75, 88 (1st Dept. March 14, 2019), the Court noted that because there was no discernable difference between the defamation law of New York and California, no choice of law analysis was necessary and, thus, New York law applied.  *Id.*  The Court further noted that "California defamation law is the same as New York defamation law in all relevant ways."  *Id.*; *see also Piping Rock Partners, Inc. v. David Lerner Assocs.*, 946 F. Supp.2d 957, 978 (N.D. Cal 2013) ("[W]hether under California law or New York law, the Court would apply essentially the same test and analyze nearly the same elements" for a defamation claim); *O'Grady v. ConMed Corp.*, 2014 U.S. Dist. LEXIS 24732, at \*11 (N.D. Cal. Feb. 26, 2014) ("[D]efamation in either California or  New York requires generally similar elements ....") (*citing Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (2013).

*Treppel v. Biovail Corp.*, 2005 U.S. Dist. LEXIS 18511, at *23, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) (emphasis in original).

### B.  Vuzix States Viable Claims for Defamation

Pearson argues that the Amended Complaint fails to state a cause of action because (1) the Vuzix Report is "protected opinion" and/or "nonactionable opinion" and (2) Vuzix has made "no effort to rebut the substantial evidence set forth in the Vuzix Report demonstrating massive securities fraud." (MOL, p. 9).  These arguments are without merit.

"Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Biro v. Conde Nast*, 883 F. Supp.2d 441, 456 (S.D.N.Y. 2012).  Only if the plaintiff is a public figure must it prove "actual malice" as part of its defamation claim.  *See Diario El Pais, S.L. v. Nielsen Co., (US)*, 2008 U.S. Dist. LEXIS 92987, at *19, 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) (actual malice is a required element "when the party libeled is a public figure"). Here, there is no express contention by Defendant that Vuzix is a "public figure," but even if it is, Vuzix has satisfied the "actual malice" standard as demonstrated herein and in the accompanying Travers and Margolis Declarations.

In short, Vuzix has stated viable claims for libel and libel per se because Pearson wrote defamatory statements about Plaintiff in the Vuzix Report with actual malice and reckless disregard of whether the published statements were true, and because Pearson's statements are demonstrably false (as described herein and in the attached Declarations of Travers and Margolis), Vuzix has been damaged.  (*See* Manister Decl., Ex. 1, ¶¶ 61-70; *see generally* Travers

9

and Margolis Decls.).

### 1.  False and Defamatory Statements, Implications and Meanings Regarding Vuzix' General Business and Operations

Pearson defamed Vuzix by falsely stating that "Vuzix is a stock promotion which shows blatant signs of fraud.  The setup here is nearly identical to the dozens of other stock frauds or promotions I have exposed here at Seeking Alpha over the past few years."  (Manister Decl., Ex. 1, ¶ 31; Travers Decl., ¶ 69).  Pearson erroneously contends that this statement is opinion based on disclosed facts – namely, the six signs of securities fraud that were allegedly identified in a bulletin by the Securities and Exchange Commission ("SEC").  (MOL, pp. 14-16).[11]  This is patently false.  (*See* Travers Decl., ¶ 72).  To the contrary, Vuzix has been in business for over twenty (20) years.  (*Id.*)  Among other things, it has 74 issued U.S. and foreign patents, and 79 pending U.S. and foreign patent applications.  (*Id.*, at ¶ 23).  In January 2015, Intel Corporation purchased $24,813,000 of Vuzix' Series A Preferred Stock.  (*Id.*, at ¶ 9).  In December 2017, Vuzix entered into a three-year supply agreement with Toshiba Information Equipment (Hangzhou) Co., Ltd. ("Toshiba") for the supply of smart glasses designed and built for them by Vuzix.  (*Id.*)  In addition, Vuzix recently partnered with AccuWeather and Yelp and has entered into a three-year master reseller agreement with Verizon.  (*Id.*)  Vuzix has also received grants since its inception from various U.S. Government organizations.  (*Id.*, at ¶ 18).  In fact, Vuzix has supplied wearable display technology to the U.S. military's special forces.  (*Id.*).  Further, as

---

[11]  Remarkably, Pearson contends that his statements regarding SEC investigations is privileged under Cal. Civ. Code § 47.  (MOL, p. 15, n.13).  This is simply a misapprehension of the law.  First, again, Pearson is operating under the misguided impression that California law applies – it does not.  Second, even under Cal. Civ. Code § 47, Pearson's defamatory statements are *not* privileged.  Defendant's statements were *not made as part of* an official proceeding, but merely *discussed the contents* an alleged official proceeding.  This distinction is critical, and removes Pearson's statements from immunity under that statute.  *See McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App.3d 961, 974 (1987) ("[D]ifferent policy considerations [for absolute immunity under the statute] are involved when the media are reporting the *contents* of a judicial proceeding") (emphasis added).  Finally, when the defamatory statements are made with actual malice – as in this case – the privilege is obviated for communications under Section 47(c).  *See Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th Dist. 1363, 1368-69 (2003) ("[I]f malice is shown, the privilege is not merely overcome; it never arises in the first instance.")

of December 31, 2018, Vuzix had 69 institutional holders with 6.16 million total shares held, and the two largest institutional holders are Blackrock Inc. (1.6 million) and Vanguard Group Inc. (1.07 million).  (*Id.*, at ¶ 55).  Moreover, *Fox Business* recently published an article entitled "10 business techs for entrepreneurs at CES 2019," in which it listed the Blade's Smart Glasses by Vuzix as the third technology it would be seeking out at the CES 2019.  (*Id.*, at ¶ 161).  Thus, Vuzix is *not* a fraud, and Pearson's statements to the contrary constitute actionable libel.

### 2. False and Defamatory Statements, Implications and Meanings Regarding Vuzix Going Public

Pearson further defamed Vuzix by stating that "Vuzix Corp. is a reverse merger stock promotion which shows blatant signs of fraud."  (Manister Decl., Ex. 1, ¶ 34; Travers Decl., ¶ 73).  Pearson claims that this statement is not actionable because Vuzix' public filings are allegedly "consistent with Vuzix being formed via reverse merger," and, in any event, "there is nothing defamatory about the term 'reverse merger' because... it would [not] expose Vuzix to shame 'in the minds of right-thinking persons.'"  (MOL, p. 21, *citing Michtavi v. N.Y. Daily News*, 587 F.3d 551, 552 (2d Cir. 2009)).[12]  This argument is blatantly misguided.

First, Vuzix became a public entity by its initial public offering, *not* a reverse merger, by filing the acceptance of its S-1 Registration Statement by the SEC on December 24, 2009.  (Travers Decl., ¶ 74).  Second, and not surprisingly, the Motion glosses over the Amended Complaint's well-pleaded allegation that "[s]oon after the publication of the *Seeking Alpha* article, *Seeking Alpha* acknowledged the falsity of [Pearson's] statement" by appending an "Editor's Note" stating that "This article previously called Vuzix a reverse merger company.  We

---

[12] Despite Pearson's unwavering resistance to accept that New York law applies, he cites to the standard used in New York defamation cases.  (*Mitchtavi*).  Notwithstanding, *Michtavi* is distinguishable.  In that case, a *pro se* incarcerated plaintiff sued New York Daily News for, *inter alia*, defamation based on a publication that stated that plaintiff "planned to cooperate with prosecutors and testify against [an organized crime figure."  *Id.*, at 552.  The Court found that the statement was not actionable because, under New York law, "[t]he population of right-thinking persons unambiguously excludes 'those who would think ill of one who legitimately cooperates with law enforcement.'"  *Id.*

have removed that description from the article." (Travers Decl., ¶ 75). Indeed, the only mention of these discrete modifications can be found in the Pearson Declaration: "After the republication, *Seeking Alpha* made certain deletions to the Vuzix Report that ***I did not authorize or agree with*** and added commentary ***that I did not agree with***." (Pearson Decl., ¶ 51). (Emphasis added.) Pearson's attestation does not vindicate his initial false reporting, however, and tellingly implies that Pearson did in fact ***authorize and agree with*** the initial *Seeking Alpha* republication.

### 3. False and Defamatory Statements, Implications and Meanings Regarding Vuzix' Revenues

In the Vuzix Report, Pearson intentionally ignores Vuzix' growing sales and revenue and gives a demonstrably false and defamatory description and picture of our financial condition. (Manister Decl., Ex. 1, ¶¶ 38-40; Travers Decl., ¶ 79). In particular, Pearson's statement "Revenue $0.5 million per quarter (negative gross margins)" is both false and defamatory. (Travers Decl., ¶ 80). In fact, Vuzix' revenues by quarter in 2017 were approximately $1.2 million (Q1), $1.3 million (Q2), $1.4 million (Q3) and $1.6 million (Q4). As shown, overall revenues for 2017 *exceeded* $5 million, which was a 160% increase over the prior year. (*Id.*).

On the cover page of the Vuzix Report, Pearson identifies the then-current share price of Vuzix ($7.45) and then-current market cap ($240 million), yet incredulously asserts in his motion papers that the revenue figure of "$0.5 mn per quarter" relates to Vuzix' historical revenue figures between 2013 to 2016 as stated in a Bloomberg snapshot embedded on page 23 of the Vuzix Report and that the accompanying "negative gross margins" relates only to 2016 and 2017. (MOL, pp. 21-22).

This argument is untenable as there is no indication on the cover page that, notwithstanding the references to the ***current*** share price and ***current*** market price, the stated revenue figure "$0.5mn per quarter" represented the per-quarter average across the ***prior*** four-

12

year period (2013-2016) and the accompanying "negative gross margins" only relate to the two-year period between 2016-2017. Pearson cannot seriously argue that a reasonable reader would or should know that the first two metrics represented Vuzix' financials as of March 2018 and the third line item ("$0.5mn per quarter (negative gross margin)") was bifurcated – the first portion allegedly representing the period between 2013-2016 and the second portion representing the period between 2016-2017. If the Court is having difficulty following this absurd reasoning, as undersigned counsel does, then it is axiomatic that a reasonable reader would also have difficulty deciphering these varying timelines. *See Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015) ("Where a publication implies something false and defamatory by omitting or strategically juxtaposing key facts, the publication may be actionable even though all of the individual statements are literally true when considered in isolation.").

Moreover, Pearson's strategic omissions in his Report and in motion papers should not be lost on the Court. Indeed, the Motion papers tactically gloss over Vuzix' positive gross margins in 2013, 2014, 2015, and 2018, and blatantly ignores the last column from the Bloomberg snapshot which shows plainly that Vuzix had generated $4.6 million in the first three quarters of 2017, *i.e.*, over $1.5 million per quarter. (Travers Decl., ¶¶ 80-84). Thus, even if the Court accepts Pearson's manufactured explanation for his calculations, which it should not, the Court would necessarily need to find that Pearson acted with "actual malice" insofar as he published these statements with a "reckless disregard" of the truth because he has demonstrated his knowledge of these figures and purposeful exclusion of same from his presentation. *See Loeb v. New Times Communications Corp.*, 497 F. Supp. 85, 92 (S.D.N.Y. 1980) ("Reckless disregard may be found where the publisher of a statement had a high degree of awareness of (its) falsity … or in fact entertained serious doubts as to the truth of his publication …."). The Court should

not countenance Pearson's efforts to salvage his deceit by accepting his strained argument.

### 4. False and Defamatory Statements, Implications and Meaning Regarding Vuzix' Agreement with Toshiba

Defendant falsely claims in the Vuzix Report that Vuzix is *paying* Toshiba $5 million as part of a Master Supply Agreement.  (Manister Decl., Ex. 1, ¶ 41; Manister Decl., ¶ 85).  Pearson grasps at straws to defend his libelous statement that "Vuzix has made it a point to aggressively tout a $5 million 'purchase agreement' with Toshiba.  In fact, ***this agreement*** is really just a manufacturing agreement ***whereby Vuzix is the one paying $5 million to Toshiba***."  (MOL, p. 24) (Emphasis added).  The reasonable reader could *only* interpret this specific statement to mean that the express terms of the supply agreement between Vuzix and Toshiba require Vuzix to pay $5 million to Toshiba.[13]

Pearson resorts to a contrived argument, through his counsel and not his Declaration, that this statement is "fully supported by Vuzix' SEC filings, which show that Vuzix had deeply subsidized the overall relationship with Toshiba by absorbing R&D and engineering costs, which were in excess of $13 million during the development period of this product in 2016 and 2017." (MOL, pp. 22-23, n.19).  This is a mockery and defamatory.

There is simply no way that a reader could or would read this statement to imply that the $5 million dollars that Toshiba agreed to pay Vuzix in connection with a supply agreement, would be offset by alleged research and development costs incurred ***prior to*** the execution of said agreement and which stemmed from "the overall relationship with Toshiba."  (MOL, p. 22).

---

[13] To be clear, Pearson's statement is patently false.  Vuzix is not paying $5 million to Toshiba. Vuzix has a business relationship with Toshiba that includes a Master Supply Agreement requiring Toshiba to place a $5 million minimum of orders over the first 12 months of the agreement in order to maintain exclusivity for a custom pair of smart glasses that was developed and manufactured by Vuzix, and is being sold and delivered to Toshiba by Vuzix.  These amounts are in addition to the approximately $1.1 million Vuzix received from Toshiba Japan for the development of a custom co-branded product, originally announced by Vuzix in February 2017.  Vuzix received the first purchase order from Toshiba under the Master Supply Agreement on March 12, 2018 and filed a Form 8-K with financial details on the initial purchase order received from Toshiba, totaling approximately $1.1 million, on March 13, 2018.  (Travers Decl., ¶¶ 86-87).

14

Moreover, assuming, *arguendo*, that Pearson's arithmetic is correct, which it is not, Pearson provides no explanation as how to an "excess of $13 million" in costs could possibly translate to Vuzix **only** having to pay $5 million to Toshiba.  To that end, if the implication is that Vuzix only expended $5 million in research and development and engineering costs between 2016 and 2017, then that statement is demonstrably false and libelous per se.  *See Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 290 (S.D.N.Y. 2016) ("Under New York law, a written statement constitutes libel per se where it 'tend[s] to injure another in his or her trade, business, or profession.'").[14]

### 5.  False and Defamatory Statements, Implications and Meanings Regarding The Blade

Pearson further defamed Vuzix by falsely stating in the Vuzix Report that "The Blade appears to be a sham.  NONE of the journalists could get the critical Alexa feature to function, yet precisely ALL of them aggressively touted 'Alexa' in reviews.  The second video appears to be taken in someone's apartment, not at CES at all." (Manister Decl., Ex. 1, ¶ 45; Travers Decl., ¶ 94).  These statements are false and defamatory.  First, the Wi-Fi at large trade shows (including CES 2018) is spotty because the thousands of people in attendance and exhibitors are carrying and using electronic devices that operate on the 2.4 Ghz Wi-Fi band that these devices use.  (Travers Decl., ¶ 96).  Also, the shows are extremely noisy, which at CES 2018, interfered with the Blade's Alexa feature as it did (and does) with practically every other company's Wi-Fi devices.  (*Id.*).  These are facts, and not some excuse we offered at CES 2018.  (*Id.*).  Nonetheless, the Blade, in fact, did work as reported at CES 2018.  (*Id.*)

---

[14] For added effect, Pearson also creates a smokescreen that "Vuzix' annual report for 2018 showed that Vuzix never ended up receiving the $5 million, and instead only received $1.3 million or the full year."  (MOL, p. 25).  Paradoxically, this contention further contradicts Pearson's untruths that agreement called for monies to flow from Vuzix to Toshiba.

For instance, a *Tom's Guide* Senior Editor interviewed Vuzix representatives at CES 2018 and recorded a video while operating Alexa voice assistant on the Blade from CES on the public trade show floor at Vuzix' exhibit booth.  (Travers Decl., at ¶ 100).  The video interview and Alexa demonstration on the Blade was recorded and uploaded to the *Tom's Guide YouTube* page on January 12, 2018.  (*Id.*).  Pearson now tries to save himself by relying on subsequent articles concerning the Blade that he includes with his declaration, but to no avail.  (*Id.*, at ¶ 116).  None of those journalists called the Blade a "sham" or "low-tech mock up" or a fraud, and Pearson's statements to the contrary are actionable defamation.  (*See id.*).

### 6. False and Defamatory Statements, Implications and Meanings Regarding Vuzix' Public Relation Activities

As alleged in the Amended Complaint, Pearson falsely claimed in the Vuzix Report that Plaintiff has paid journalists or other media to give positive reviews about the Blade.  (Manister Decl., Ex. 1, ¶ 52; Travers Decl., ¶ 117).  These statements are false and defamatory.  (*Id.*).  While Vuzix engages in marketing activity and uses outside professionals and social media to help market its brand, Vuzix does not pay anyone to give it positive reviews, and it prohibits anyone it employs from doing so.  (Travers Decl., ¶ 118).  Like every other public and private company, Plaintiff attempts to get the word out about its products and company.  (*Id.*, at ¶ 119).  It does this both internally through its own staff and externally through investor relations and public relations firms.  (*Id.*).  Its marketing efforts do not include, however, paying any journalists or other media to give our products or company a positive review.  (*Id.*).  In fact, Vuzix has never paid any journalist or other media to give our products or company a positive review.  (*Id.*).

Pearson further defamed Vuzix by publishing the following statement:

> Showstoppers.com creates private closed door events which look

> (in the photos) like real public conferences. Showstoppers then
> hand selects all the journalists and submits to Vuzix weeks before
> any event. There is zero possibility of anyone saying anything
> negative or questioning the obvious problems.

(Manister Decl., Ex. 1, ¶ 53; Travers Decl., ¶ 127).

Pearson asserts that this statement is not defamatory, but rather "is a combination of truthful facts… and non-actionable opinions based on facts." (MOL, p. 18). This is unsupportable. Vuzix has no idea which journalists, if any, will visit its booth at ShowStoppers media events and there are no restrictions on what anyone can say. (Travers Decl., ¶ 128). In fact, *Vuzix did even not attend the ShowStoppers event at CES 2018 at all*, but rather attended a similar event called PepCom 2018. (*Id.*). Moreover, Vuzix does not pre-screen or screen journalists before they visit our booth at such media events. (*Id.*, at ¶ 130). Vuzix neither encouraged nor paid for any journalists to attend ShowStoppers events or its booths at either CES or MWC, or to write reviews of any of Vuzix' products. (*Id.*).

Pearson attempts to sidestep these facts by underscoring that "[t]he Vuzix Report does not specify the date or the city in which Vuzix attended the Showstoppers event, and the distinction is of no moment for purposes of litigation." (MOL, p. 19). Pearson is wrong and the Second Circuit's decision in *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22 (2d Cir. 2015) is particularly instructive:

> Under New York law, a plaintiff may maintain a mixed opinion-
> fact defamation claim where he makes otherwise non-actionable
> statements of opinion, but where…the statement of opinion implies
> that it is based upon facts which justify the opinion but are
> unknown to those reading or hearing it. . . . The actionable
> element of a "mixed opinion" is not the false opinion itself—**it is the
> implication that the speaker knows certain facts, unknown to
> his audience, which support his opinion and are detrimental to
> the person about whom he is speaking.**

*Id.*, at 24 *citing Steinhilber v. Alphonse*, 68 N.Y.2d 283 (N.Y. 1986). (Emphasis added.)

Thus, if Pearson did in fact know that Vuzix did not attend the Showstoppers 2018 CES event, then the juxtaposition of the Showstoppers CES 2018 image which lists "Some of the Media that Attend" alongside a screenshot from Vuzix' website which identifies various media outlets that reported on the Blade at CES 2018, constitutes the very type of conduct that the Second Circuit has held is actionable as a mixed opinion-fact defamation claim. *See id.* And, if Pearson was without knowledge as to whether Vuzix actually attended the Showstoppers' 2018 CES event, then his purposeful juxtaposition of these images coupled with his repetitive rhetoric about CES, also constitute actionable statements. *See, e.g. Geary v. Goldstein*, 831 F. Supp. 269, 277 (S.D.N.Y. 1993) ("I see no basis upon which to distinguish the implication made by the juxtaposition of two images in a videotape from that made by one standing image in a photograph, as long as the implication is itself one that a reasonable person would draw and the implication is actionable.")

Similarly unavailing is Pearson's argument that the above block quote, which is printed in bold-face font on page 11 of the Vuzix Report, somehow <u>does not</u> imply that Vuzix pays journalists for reviews. (MOL, p. 21). Indeed, Pearson's attempt to isolate this singular sentence from the sentence that immediately follows, which states that "[t]here is zero possibility of anyone saying anything negative or questioning the obvious problems," is nothing more than a last-ditch effort to escape liability for his nefarious conduct. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) ("Challenged statements are not to be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent' of the writing."). To that end, Pearson's suggestion that his statement "[t]here is zero possibility of anyone saying anything negative or questioning the obvious problems" is his "opinion" or "rhetorical hyperbole" must also fail because it is yet another attempt to isolate this statement

from the accentuated block quote. *See id.*; *see also Sorvillio v. St. Francis Preparatory Sch.*, 2014 U.S. Dist. LEXIS 186923, at *9 (E.D.N.Y. Aug. 12, 2014) ("The New York Court of Appeals instructs courts not to 'strain to interpret writing in their mildest and most inoffensive sense to hold them nonlibelous.'"). Pearson's statements are actionable libel.

## IV.   THE COURT SHOULD APPLY NEW YORK LAW TO THIS SUIT

Ignoring fundamental choice-of-law principles, Defendant relies on California law in alleging (erroneously) that Plaintiff has failed to state a cause of action and in simultaneously moving for dismissal under California Code of Civil Procedure § 425.16(b) (California's "anti-SLAPP statute"). In fact, Defendant decrees, without citing to any authority whatsoever, that "California law applies to this action." (MOL, p. 12). Plaintiff is unequivocally wrong.

As a preliminary matter, New York choice-of-law principles apply to this case. *PowerDsine, Inc. v. AMI Semiconductor, Inc.*, 591 F. Supp.2d 673, 679 (S.D.N.Y. 2008) ("As a federal court sitting in diversity, this Court utilizes the choice of law regime of the state in which it is located."); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that the conflict of law rules to be applied by a court sitting in diversity must conform those prevailing in that State's state courts).

Under New York choice-of-law rules, the location of publication is given particular weight in a defamation lawsuit. *Id.*, at 680. When defamatory context is posted nationally on the Internet, however, "there is a presumptive rule that the law of the plaintiff's domicile applies." *Broadspring, Inc. v. Congoo, LLC*, 2014 U.S. Dist. LEXIS 116070, *17, 2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014). In New York, the domicile of a corporation for choice-of-law purposes is the State where it maintains its principal place of business. *Id.*, at **17-18. In defamation cases, "New York applies the law of the state with the most significant interest in the

litigation…. In weighing interests, New York distinguishes between 'conduct regulating' and 'loss allocating' rules." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). "In this Circuit, [d]iscouraging defamation is a conduct regulating rule, and, so … the situs of the tort, should control." *Daniels v. Kostreva*, 2017 U.S. Dist. LEXIS 5534, at *15 (E.D.N.Y. Jan. 12, 2017). "Because the locus of the tort is where the plaintiff suffered injury, often the Court can resolve the choice of law analysis simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state." Adelson v. Harris, 973 F. Supp.2d 467, 476 (S.D.N.Y. 2013) (Emphasis added). In fact, "the state of the plaintiff's domicile has an interest in protecting its citizens from defamation…. This interest remains even when the speaker lives in another state." *Condit v. Dunne*, 317 F. Supp.2d 344, 353 (S.D.N.Y. 2004) (Emphasis added).

Here, there is no dispute that Vuzix maintains its principal place of business in New York. Defendant's place of domicile is irrelevant to which State's defamation laws apply, since the injury to Vuzix occurred in New York. Stated differently, Defendant creates a red herring by contending that he is a California resident, for purposes of applying California law, since under well-established New York choice-of-law principles, the key inquiry is where the plaintiff is domiciled and where the injury occurred – which in this case is New York. Accordingly, New York law applies, rendering the case law on which Plaintiff relies – and, more critically, California's anti-SLAPP statute – inapposite.

Ironically, Defendant relies on *Adelson* in contending that California's anti-SLAPP statute is available to him because this is Court is sitting in diversity. *Adelson* actually stands for the proposition that the interest of the State of defendant's domicile in protecting the First Amendment rights of its citizens, with nothing more, does not trump the State of the plaintiff's

20

domicile in protecting its citizens from defamation.   Accordingly, *Adelson* actually supports

Vuzix' position that the law of New York, *not* California, applies.   The Court noted that "there is

only a 'presumptive' rule that the law of plaintiff's domicile applies," and that "the Court must

determine whether some state other than that of Plaintiff's domicile … has a more significant

relationship to the issue or the parties."   *Adelson*, 973 F. Supp.2d at 477.   The Court concluded

that the interest of the State of the plaintiff's domicile (in that case, Nevada) in protecting its

citizens from tortious conduct outweighed the interest of the District of Columbia (the

defendant's domicile) from protecting the First Amendment rights of its citizens.   *Id.*, at 477-78.

In fact, the Court specified that while the interest of the State of the defendant's domicile in

protecting the First Amendment rights of its citizens "is important, it is not, without more,

sufficient to overcome the presumption that the law of Plaintiff's domicile should apply in this

type of case."   *Id.*, at 478.

In the matter at bar, Defendant has proffered absolutely no reason why California has a

greater interest than New York in having its defamation laws apply.   Indeed, Defendant refutes

neither the teaching of *Adelson* that a State's interest in protecting its citizens from tortious

conduct outweighs the interest of the Defendant's state in protecting his or her First Amendment

rights, nor the fact that Vuzix maintains its principal place of business in New York and that

Plaintiff's injury, as alleged, occurred there.   The Vuzix Report was written and distributed by

Pearson for publication solely to support his position as a short seller of Vuzix stock.[15]

---

[15] Vuzix further disagrees with Pearson's assertions about Vuzix' and this cases' supposed connections to California.  As stated, Vuzix' headquarters are located in the State of New York.  Virtually all of its 80 employees reside near our facility in West Henrietta, New York.  We use the services of well over 475+ businesses located in the State of New York.  *Although Vuzix it sells its products around the world, many of our dealings with third parties occur in the State of New York.*  Vuzix manufactures and designs many of its products in the State of New York.  Virtually all of its systems and operations are in, or centered around, New York.  Pearson attacked all of the foregoing and more as a "fraud" and the damage that Pearson did to Vuzix, its business and its employees occurred in New York.  In contrast, Vuzix' and this cases' connection to California are less than marginal and contrived.  Pearson has still not provided his address, and he distributed his defamatory article via a New York based

New York's interest in this case is significant and incontrovertible. New York has an interest in protecting its citizens from tortious conduct. Assuming *arguendo*, Pearson is actually a California citizen, that without more, is insufficient to overcome the presumption that the law of plaintiff's domicile should apply in this case. It is highly unlikely that Pearson, in pursuit of monetary gain, by short selling the stock of a New York company and then writing and distributing a report for the purpose of depicting that company as a fraud, had no reason to foresee that his actions would affect the Plaintiff, a New York corporation.

## V.   THE CALIFORNIA ANTI-SLAPP STATUTE IS NOT APPLICABLE TO THIS ACTION AND DOES NOT FORM A BASIS FOR DISMISSAL

Defendant cannot seek relief under California's anti-SLAPP statute because California law does not apply to the case at bar.  Even if the Court elects to apply the anti-SLAPP statute (which it should not based on clear choice-of-law principles), Vuzix succeeds in satisfying its burden under that statute for the same reasons that it defeats the Rule 12(b)(6) prong of Defendant's motion.  *Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999) ("If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.")  Since Plaintiff's claims must only have "minimal merit" in order to survive a special motion to strike under California's anti-SLAPP statute; *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989, 119 Cal. Rptr. 3d 835, 845 (2011); Plaintiff has sustained its burden to survive Pearson's special motion to strike for the reasons demonstrated herein and in the accompanying Travers and Margolis Declarations.

### A.   Standard

The anti-SLAPP statute was not designed to give publishers, on the web or otherwise,

---

company.  Also, while Vuzix does attend a few trade shows in California from time to time and IRTH does have an office there, those marginal connections cannot overcome Plaintiff's showing.  (Travers Decl., ¶ 168).

*carte blanche* to destroy a company's reputation by posting defamatory statements.  Instead, California's anti-SLAPP statute, was designed to combat strategic lawsuits against public participation, not to protect strategic intimidation against public participation.  Indeed, this lawsuit is not intended to punish Pearson for public participation; it is intended to stop Pearson's fraudulent and tortious conduct against Vuzix.  (*See generally*, Travers and Margolis Decls.).

Section 425.16(b) requires the court to undertake a two-step process.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009); *Kashian v. Harriman*, 98 Cal.App.4th 892, 906 (Cal. Ct. App. 2002).  First, Defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional rights to petition and to free speech. *Makaeff v. Trump University*, 715 F.3d 254, 261-62 (9th Cir. 2013); *Hilton v. Hallmark*, 599 F.3d at 903.  If the defendant is able to make that threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 896 (E.D. Cal. 2006).  As argued below, and as set forth within the Declaration of Paul J. Travers, Plaintiff should win on both prongs of this test.

Under this reasonable probability standard, the claim should be dismissed only if the "plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff."  *See Thornbrough v. Western Placer Unified Sch. Dist.,* 2010 U.S. Dist. LEXIS 53136, at *7-8 (E.D. Cal. May 27, 2010) (*citing Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)).  More specifically, "a plaintiff need only present sufficient evidence showing 'a case of 'minimal merit.'"  *See GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 155 (2013).  A plaintiff meets this low threshold by "stat[ing] and substantiat[ing] a legally sufficient claim," which, in turn, only requires a showing that "the complaint is both legally sufficient and supported by a sufficient

23

prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credit." *See Mindsys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010); see also *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989 (2011) ("[W]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law."). "In resisting such a motion, the plaintiff need not produce evidence that he or she can recover on every possible point urged. It is enough that the plaintiff demonstrates that the suit is viable." *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 905 (2004).

### B. Vuzix More Than Satisfies Its Burden Under the Anti-SLAPP Statute

Pearson argues that his Vuzix Report was a written statement or writing made in a place open to the public or public forum in connection with an issue of public interest. (*See* MOL, p. 23). Since Pearson's challenged statements are purely commercial speech implicating no broad issue of public interest, Defendant cannot satisfy the first prong of the anti-SLAPP suit test.[16] Pearson had a vested interest in causing harm to Vuzix in order to drive down the price of its stock so that he could reap a financial gain. (*See* Travers Decl., ¶ 84).

Pearson baldly and self-servingly asserts that he "has established that Vuzix has failed to state a claim for libel or libel per se, and therefore, Vuzix cannot satisfy the heightened burden of anti-SLAPP motion requiring a likelihood of success on the merits." (MOL, p. 25). Defendant's

---

[16] Generally, statements about the quality of a specific commercial product or about a particular business are not matters that concern a public issue or a matter of public interest within the meaning of California's anti-SLAPP statute. *Commonwealth Energy*, 110 Cal. App. 4th at 34-35 (denying anti-SLAPP motion to strike in case involving claims made about telemarketing pitch); *Consumer Justice Center*, 107 Cal. App. 4th at 601 (denying motion to strike in case involving ads for breast enlargement herbal supplements); *Nagel*, 109 Cal. App. 4th at 47-48 (denying anti-SLAPP motion in case involving dietary supplements); *Rivero*, 105 Cal. App. 4th at 924 (denying anti-SLAPP motion in libel suit about criticisms of university's workplace activities). Although a statement about the specific properties and efficacy of a particular product may affect consumers, this type of statement is directed primarily at protecting private commercial interests and, thus, does not generally implicate issues that are fundamentally "public" concerns. See *Commonwealth Energy*, 110 Cal. App. 4th at 34-35; *Consumer Justice Center*, 107 Cal. App. 4th at 601; *Nagel*, 109 Cal. App. 4th at 50-51.

conclusory allegations, like his Declaration, are meritless. Indeed, putting aside the fact that California's anti-SLAPP statute does not require a showing of "likelihood of success on the merits," the Travers Declaration expressly disputes each and every defamatory statement in the Vuzix Report by, *inter alia*, citing to Vuzix' public disclosures, which, on their face, entirely debunk many of the Vuzix Report's unsubstantiated assertions. *GetFugu, Inc.*, 220 Cal. App. 4th at 154-155 (finding that opposing declarations disputing alleged "truthful" assertions in a press release "were sufficient to the meet [the] slight threshold, so as to enable [Plaintiffs] to proceed on the defamation claim.").[17]

## CONCLUSION

Based on the foregoing, it is respectfully submitted that the Court deny Defendant's motion in its entirety and remand this matter back to New York State Supreme Court.[18]

Dated: April 22, 2019

SICHENZIA ROSS FERENCE LLP

_/s/ Todd Manister, Esq._

By:    Todd J. Manister, Esq.
       *Attorneys for Plaintiff*
       1185 Avenue of the Americas, 37th Floor
       New York, New York 10036
       (212) 930-9700
       tmanister@srf.law

---

[17] To the extent that the Court determines that there is complete diversity amongst the parties and thereafter applies California law (which it should not), Plaintiff respectfully request that it be awarded its attorneys' fees in opposing the meritless special motion to strike. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 63 (2002) (noting that California's anti-SLAPP statute's fee-shifting provision permits a plaintiff to recover its attorneys' fees when "defendant's motion to strike is 'frivolous or is solely intended to cause unnecessary delay.'").

[18] Defendant has raised multiple arguments in its Motion. Some of them ignore the amended allegations or otherwise fail to recognize the standard for this motion. To the extent any of Defendant's arguments are not directly addressed herein, they are disputed. Further, especially in light of additional defamatory statements made by Pearson, as noted in the Travers and Margolis Declarations, Vuzix requests leave to replead. *See* Fed. R. Civ. P. 15(a) ("leave [to amend] shall be freely given when justice so requires"); *see also Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend"). "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). None of the *Foman* factors are present here, and Vuzix' claims are clearly not futile.