UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VUZIX CORPORATION,<br><br>        Plaintiff,<br><br>  – against –<br><br>RICARDO ANTONIO PEARSON a/k/a<br>RICHARD PEARSON,<br><br>        Defendant. | Case No. 1:19-cv-00689-NRB |

**RICHARD PEARSON'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND SPECIAL MOTION TO STRIKE
<u>PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE</u>**

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
212-513-3200
212-385-9010 (fax)
christine.walz@hklaw.com

Cynthia A. Gierhart
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20006
202-955-3000
202-955-5564 (fax)
cindy.gierhart@hklaw.com

*Attorneys for Richard J. Pearson*

**TABLE OF CONTENTS**

I. THE COURT LACKS PERSONAL JURISDICTION OVER RICHARD PEARSON. ..................................................................................................................1

II. CALIFORNIA LAW APPLIES TO THIS LITIGATION GENERALLY AND THROUGH THE DOCTRINE OF DÉPEÇAGE. ..........................................................2

III. VUZIX HAS FAILED TO STATE A CLAIM FOR LIBEL OR LIBEL PER SE. ............4

   A. VUZIX DOES NOT MEANINGFULLY DISPUTE THAT STATEMENTS IDENTIFIED IN THE AMENDED COMPLAINT ARE PROTECTED STATEMENTS OF OPINION AND THUS ARE NOT DEFAMATORY. ..................................................................................................5

   B. THE REMAINING STATEMENTS IDENTIFIED IN THE AMENDED COMPLAINT ARE NOT CAPABLE OF DEFAMATORY MEANING AND ARE SUBSTANTIALLY TRUE. ..........................6

IV. THE CASE SHOULD BE DISMISSED PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE AND RICHARD PEARSON'S ATTORNEYS FEES AWARDED. ........................................................................................................................9

V. CONCLUSION............................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015) ............................................................................................3

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013), aff'd, 876 F.3d 413 (2d Cir. 2017) ..............................6

*Barry v. State Bar of California*,
   2 Cal. 5th 318, 386 P.3d 788 (2017) ........................................................................................10

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) .......................................................................................................1

*BofI Fed. Bank v. Seeking Alpha, Inc.*,
   Case No. 16-MC-00025, Dkt. 27 ..............................................................................................10

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) ...................................................................................................7, 9

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) .........................................................................................................1

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. 1984) ...........................................................................................3

*Dean v. Friends of Pine Meadow*,
   21 Cal. App. 5th 91, 229 Cal. Rptr. 3d 865 (Ct. App. 2018) .....................................................9

*Gang v. Hughes*,
   111 F. Supp. 27 (S.D. Cal. 1953) ...........................................................................................7, 9

*Guccione v. Hustler Magazine, Inc.*,
   800 F.2d 298 (2d Cir. 1986) .......................................................................................................8

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ..............................................................................................................4, 5

*Maheu v. Hughes Tool Co.*,
   569 F.2d 459 (9th Cir. 1977) .................................................................................................8, 9

*McClatchy Newspapers, Inc. v. Superior Court*,
   189 Cal. App. 3d 961 (Ct. App. 1987) .......................................................................................5

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
  No. 17CV07568PGGKHP, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018) ................................10

*Mondello v. Newsday, Inc.*,
  6 A.D.3d 586, 774 N.Y.S.2d 794 (2004) ..................................................................................8

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
  898 F.3d 243 (2d Cir. 2018)......................................................................................................1

*Pfeiffer Venice Properties v. Bernard*,
  101 Cal. App. 4th 211, 123 Cal. Rptr. 2d 647 (2002)..............................................................10

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) ....................................................................................4

*Thomas v. City of New York, No. 17CV06079ARRJO*,
  *2018 WL 5791965* (E.D.N.Y. Nov. 5, 2018) ...........................................................................6

*Trodale Holdings LLC v. Bristol Healthcare Inv'rs*,
  L.P., No. 16 CIV. 4254 (KPF), 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ........................2

**Statutes**

Cal. Civ. Code § 45................................................................................................................................7

Cal. Civ. Code § 47(d) ...........................................................................................................................5

Cal. Civ. Proc. Code § 425.16 .............................................................................................................10

Cal. Civ. Proc. Code § 425.16(a) ..........................................................................................................4

Cal. Civ. Proc. Code § 425.16(e)........................................................................................................10

Vuzix's Opposition to Richard Pearson's Motion to Dismiss the Amended Complaint and Special Motion to Strike Pursuant to the California Anti-SLAPP Statute ("the Combined Motion") is designed to confuse the issues before the Court in order to continue its ongoing campaign against Richard Pearson's legally protected speech. Each of Vuzix's arguments are based on mischaracterizations of governing case law and obfuscations of any relevant facts. Vuzix's Opposition is more of the same shell game,[1] and its Amended Complaint should be dismissed for lack of jurisdiction and because it fails to state a claim as a matter of law.[2]

## I. The Court Lacks Personal Jurisdiction over Richard Pearson.

Vuzix's Opposition ignores New York courts' explicit instructions that the state's long-arm statute is to be construed "more narrowly in defamation cases than . . . in the context of other sorts of litigation." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Under the long-arm statute, New York cannot exercise personal jurisdiction over a defendant who researched and wrote defamatory statements in another state and merely sent the statements into New York. *See* N.Y. C.P.L.R. 302(a) (specifically exempting defamation claims from the court's jurisdiction over tortious acts committed or causing injury in the state); *Best Van Lines, Inc.,* 490 F.3d at 249. Yet, Vuzix repeatedly references Richard Pearson's re-publications in *Seeking Alpha*, a New York-based online publication, to support its claim that New York courts have personal jurisdiction over Richard Pearson. *See* Dkt. 33 ("Opp'n"), at 6-7. Under the governing law, these allegations about re-publication are not enough for the Court to exercise jurisdiction. *See Best Van Lines*, 490 F.3d at 248 (affirming dismissal for lack of personal jurisdiction under long-arm statute because "New

---

[1] For a more complete recitation of Vuzix's misuse of legal process over the last 13 months, *see* Dkt. 24, at 1.
[2] Vuzix has had ample opportunity to attempt to state a viable claim: It has failed to do so and cannot do so. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018). Further, the issues that are fatal to Vuzix's Amended Complaint cannot be cured by better pleading, *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Therefore, Vuzix's request for leave to further amend its Complaint should be denied.

York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state").

Vuzix also erroneously alleges the forum-selection clause in the Terms of Use between *Seeking Alpha* and its users should govern this action. *See* Opp'n at 7. The only case that it cites in support of this argument is wholly irrelevant: It clearly states that a third party can benefit from a choice-of-law provision only where it has rights "completely derivative of" and "directly related to" the rights of a signatory – such as a successor in interest or assignee. *Trodale Holdings LLC v. Bristol Healthcare Inv'rs*, L.P., No. 16 CIV. 4254 (KPF), 2017 WL 5905574, at *8 (S.D.N.Y. Nov. 29, 2017). Vuzix has no direct relationship with *Seeking Alpha* at all, let alone a relationship akin to a successor in interest or assignee of *Seeking Alpha*. For all of these reasons and the reasons asserted in the Combined Motion, this Court lacks personal jurisdiction over Richard Pearson and the Complaint should be dismissed for this reason alone.[3]

## II. California Law Applies to This Litigation Generally and Through the Doctrine of Dépeçage.

As set forth in the Combined Motion, California law should apply to this action generally because California has a more significant relationship to the issues and parties.[4] Vuzix argues that New York law should apply because (1) Richard Pearson is not domiciled in California; and (2) Vuzix's domicile in New York should determine the substantive law. This Court has already rejected Vuzix's entirely fabricated arguments regarding Richard Pearson's domicile. *See* Dkt. 36. And Vuzix's remaining arguments ignore the governing case law, which provides that "[t]he

---

[3] This Court has already denied Vuzix's request for jurisdictional discovery on the issue of subject matter jurisdiction. *See* Dkt. 36, at n.3 (denying Vuzix's request for jurisdictional discovery and denying Vuzix's motion to remand). Vuzix's request for jurisdictional discovery on personal jurisdiction is no stronger and should also be denied. As already established (Dkt. 24, 25), Richard Pearson resides in, is domiciled in, and is a citizen of California and no other state. He does not do or solicit business in New York. *See id.*
[4] *See generally* Richard Pearson's argument in the Combined Motion, at 10, in particular n.10.

plaintiff's domicile 'should not be transferred into a rigid rule' for determining choice of law issues in libel actions." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1093 (S.D.N.Y. 1984).

However, the Court need not decide that California law applies to the action as a whole. As Vuzix acknowledged in its Opposition, New York courts apply New York choice-of-law principles in determining which state's law governs. *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015). And "[u]under New York law, the choice of law analysis is generally done separately for each claim and defense, under a doctrine called dépeçage." *Id.* at 200. This doctrine recognizes that one state may have a stronger interest in enforcing its laws in relation to a particular issue in the litigation, and another state may have a stronger interest in a separate issue. *Id.* As a result, courts are permitted to apply different states' laws to different issues in the same litigation, based on which state has the greater interest in the outcome of each particular issue. *Id.* For example, in *Hutner v. Greene*, the Second Circuit determined that the California legislature clearly believed "that substantial regulatory interests are served by requiring" brokers to be licensed to operate in California, whereas New York had no apparent interest in regulating the conduct of brokers in California. 734 F.2d 896, 901 (2d Cir. 1984). Therefore, the New York court applied California law relating to a question of whether a party was required to obtain a broker's license, and it applied New York law to other aspects of the contract dispute in the case. *Id.*

Here, the parties agree that New York and California law regarding the primary elements of a defamation claim are substantially the same, such that the court need not conduct a choice-of-law analysis regarding the claims and defenses addressed in Richard Pearson's Motion to Dismiss on Rule 12(b)(6) grounds. *See* Opp'n at 8, n.10; *2002 Lawrence R. Buchalter Alaska Tr.*, 96 F.

Supp. 3d at 199 ("[T]he first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws.").

Where the state laws diverge is with respect to California's anti-SLAPP statute. In enacting its anti-SLAPP statute, California expressed its strong interest in protecting its citizens against the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a).

New York's interest in protecting its citizens against defamatory statements is preserved regardless of the application of the anti-SLAPP statute because it has already been established that New York and California laws regarding the elements of Plaintiff's claim remain the same regardless of which state's law applies. And, regardless of which state's laws apply, a plaintiff has every opportunity to vindicate itself if it can show it has a meritorious case. But, if the case lacks merit (as it does here), New York has little interest in protecting a frivolous lawsuit, and California has every interest in ensuring its citizens can recoup the legal fees they spent in defending a meritless case brought to chill their speech. For all of these reasons, the California anti-SLAPP statute should apply to this case under the doctrine of dépeçage.

### III. Vuzix Has Failed to State a Claim for Libel or Libel Per Se.

Vuzix's Opposition is designed to obfuscate the issues and give the false impression that these issues cannot be decided as a matter of law. But, as the Combined Motion clearly established, each of the statements identified in Vuzix's Amended Complaint are opinion, not capable of defamatory meaning, and/or substantially true, and the Court should dismiss this action.[5]

---

[5] Vuzix also has not pled actual malice with sufficient particularity. *See Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017). "[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term," and "the fact that the defendant published the defamatory material in order to increase its profits [does not] suffice to prove actual malice." *Harte-Hanks Commc'ns,*

### A. Vuzix Does Not Meaningfully Dispute That Statements Identified in the Amended Complaint Are Protected Statements of Opinion and Thus Are Not Defamatory.

Vuzix does not meaningfully address the fact that six of the statements identified in the Amended Complaint are Richard Pearson's opinion, based on facts he meticulously disclosed in the Vuzix Report (which they failed to provide to the Court), and therefore are not defamatory. *See generally* Dkt. 28, Combined Motion, at § II(B)(1).

At least twice in its Opposition, Vuzix responds to an argument that a statement is protected opinion by reciting a litany of unrelated facts in an attempt to disprove the opinion. *See* Opp'n at 10, 17. This is a gross mischaracterization of opinion precedent in defamation law. By definition, an opinion cannot be proven true or false, which is why it cannot be defamatory. As an example, as set forth in the Combined Motion, Richard Pearson's conclusion that Vuzix "shows blatant signs of fraud" is his opinion based on the SEC's warning signs of fraud, dozens of facts, links to articles and videos, and screenshots of supporting documents – all of which he disclosed in his report. Furthermore, the disclosed facts underlying Richard Pearson's opinion that fairly and accurately reflect official proceedings are absolutely privileged.[6] A reader can read the same facts and reach his or her own conclusions about Vuzix. And, in fact, Richard Pearson told readers numerous times

---

*Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). Vuzix claims actual malice is described in the Travers and Margolis declarations, *see* Opp'n at 9, but neither declaration, nor more importantly does the Amended Complaint or Opposition, assert any facts to prove that Richard Pearson's statements were made "with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Harte-Hanks Commc'ns*, 491 U.S. at 667.

[6] Vuzix entirely misstates the fair report privilege by incorrectly claiming that the fair report privilege extends only to the *contents* of official proceedings and not to statements "merely discuss[ing] the contents" of official proceedings. *See* Opp'n at 10 n.11. Yet the plain language of the statute establishing the privilege and the case Plaintiff cites say exactly the opposite. *See* Cal. Civ. Code § 47(d); *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 974 (Ct. App. 1987) (holding that report of judicial proceeding was a privileged fair report).

Plaintiff also claims the fair report privilege is not absolute but can be defeated by a showing of actual malice. Opp'n at 10 n.11. Again, that is incorrect: Plaintiff cites Section 47(c) of the statute, which is the common interest privilege, not the fair report privilege. As explained at length in *McClatchy Newspapers*, by choosing to make one privilege conditional and the other absolute, the legislature clearly intended to make the fair report privilege absolute. 189 Cal. App. 3d 961.

5

to click on the links, do their own research, and form their own conclusions. *See, e.g.*, Dkt. 25-1, Ex. B, at 1 ("Vuzix Report") (noting in bold, red letters, "This report is the opinion of the author. . . . Do your own research, form your own opinions."). Neither Richard's opinion nor the reader's opinion can be proven true or false; thus, neither opinion is defamatory. *See Adelson v. Harris*, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013), aff'd, 876 F.3d 413 (2d Cir. 2017).

Rather than addressing these arguments, Vuzix states that it has been in business for over 20 years, that it has issued 74 patents, that Intel Corporation purchased a substantial portion of its stock, and so on. Opp'n at 10. These claims do not refute any of the challenged statements in the Vuzix Report and are also inadmissible at the motion to dismiss stage.[7] More importantly, these assertions also do nothing to rebut the Combined Motion's primary argument that Richard Pearson is free to state his opinions that Vuzix shows blatant signs of fraud, so long as he discloses the facts on which his opinion is based. Indeed, Vuzix offers no real response to any of the arguments contained in the Combined Motion on opinion, and thus all statements identified in section II(B)(1) of Richard Pearson's Combined Motion should be found to be protected opinion based on disclosed facts, which are not actionable as a matter of law.

    **B.**    **The Remaining Statements Identified in the Amended Complaint Are Not Capable of Defamatory Meaning and Are Substantially True.**

For the remaining statements at issue in the Amended Complaint, Vuzix bases its argument on extraneous statements contained in inadmissible declarations. Even accepting its facts as true for purposes of this Combined Motion, the factual statements identified in the Vuzix Report are not actionable. Specifically, Richard Pearson's statements that Vuzix operated as a "reverse

---

[7] The Court should not consider declarations in a motion to dismiss. *Thomas v. City of New York*, No. 17CV06079ARRJO, 2018 WL 5791965, at *5-6 (E.D.N.Y. Nov. 5, 2018). Even if the Court did consider Vuzix's declarations, there is nothing in them that refutes the fact that Richard Pearson's statements are protected opinion, not capable of defamatory meaning, and/or substantially true.

merger," that Vuzix had revenues of $0.5 million per quarter and negative gross margins, and that Vuzix entered into an agreement with Toshiba where Vuzix paid Toshiba, as a matter of law, are not capable of defamatory meaning and are substantially true.

"Not all (or even most) maligning remarks can be considered defamatory." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014). Rather, to be actionable, a "statement must do more than cause discomfort or affront." *Id.* It must expose the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce[] an evil opinion of one in the minds of right-thinking persons, and . . . deprive[] one of their confidence and friendly intercourse in society." *Id.*; *see also* Cal. Civ. Code § 45. "A statement, therefore, can meet all of the other elements of defamation—be factual, published, false, and about the plaintiff—but still not be actionable if it fails to rise to the necessary level of derogation." *Chau*, 771 F.3d at 127; *Gang v. Hughes*, 111 F. Supp. 27, 29 (S.D. Cal. 1953).

A reverse merger is a corporate transaction where a company with lesser operations is the surviving company after a combination with a business that has greater operational assets or capacity than its own. This is a legal transaction, and there is nothing about being a reverse merger that "rise[s] to the necessary level of derogation" to be actionable.[8] *See Chau*, 771 F.3d at 127.[9]

Likewise, Vuzix contends that Richard Pearson's statement that the company had revenues of $0.5 million per quarter is defamatory because it was based on data from the past four years. Importantly, Vuzix does not dispute this data: Vuzix instead argues that the statements do not

---

[8] Furthermore, as shown in public SEC filings, Vuzix was formed through a reverse merger. A reverse merger can be used for purposes other than an initial public offering (IPO), and the two terms are not mutually exclusive. The statement about Vuzix being formed as a reverse merger in the Vuzix Report concerned its formation in 1997, not when it became public in 2009. See Vuzix Report at 23, and the documents cited therein. Thus, Vuzix's straw man argument that it became a public entity by its IPO does not disprove that Vuzix was formed via a reverse merger.

[9] Vuzix contends that Seeking Alpha's removal of the phrase "reverse merger" from the republication has relevance here: It does not. It was Seeking Alpha, not Richard Pearson, who agreed to make this change on its website. And its decision to do so is not determinative of any legal or factual issue before the Court.

7

reflect the supposed current outlook for the company. *See* Opp'n at 12-13 (acknowledging that Vuzix had revenues around $0.5 million per quarter and negative gross margins in 2016, and continued to operate at negative gross margins in 2017). Reading the report as a whole, as the Court must, it is clear that the statement meant $0.5 million per quarter is the "typical" revenue of the company. The report explicitly discloses that Vuzix had revenues of $1.3 million a quarter in 2017 but that "Vuzix has *typically* generated only $2 million per year in total revenues and even this is only possible by selling at negative gross margins." Vuzix Report at 4, 17 (emphasis added). This is not actionable when Vuzix undisputedly had revenues of roughly $2 million a year, or $0.5 million per quarter, for four of the last five years. And even when Vuzix did earn approximately $1.3 million a quarter in 2017, it was *still* operating at negative gross margins. *See Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) (calling a man an adulterer is substantially true where the man "committed adultery for thirteen of the last seventeen years," even if he was not currently committing adultery).

That was the "gist" of the statement at issue: "Revenue: $0.5m per quarter (negative gross margins)" tells readers that Vuzix has relatively low revenues (compared to its market cap) and is operating at negative gross margins. Vuzix does not dispute this, and the "literal truth" of every word need not proven, "so long as the imputation is substantially true so as to justify the 'gist' or 'sting' of the remark." *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1977).[10]

Finally, Richard Pearson's statement that the Toshiba purchase agreement announced by Vuzix is really a manufacturing agreement where Vuzix is the one paying Toshiba cannot possibly

---

[10] It is also worth noting that the statement complained of is in the header of the report, much like the headline of a news article. "[T]o determine whether the headline of a concededly truthful article is actionable as a libel, the court must initially determine whether the headline was a fair index of the article with which it appears; if it was, then the headline is not actionable." *Mondello v. Newsday, Inc.*, 6 A.D.3d 586, 587, 774 N.Y.S.2d 794 (2004). Because the header containing the "$0.5 million" statement is a fair index, or reasonable synopsis, of what is contained within the report, it is not actionable.

rise to the level of exposing Vuzix to public hatred, shame, and ridicule. *Chau*, 771 F.3d at 127 (finding statement that an investor "sold everything out" and "almost giddily" told someone he had "passed all the risk" is not capable of defamatory meaning, because "passing risk is the business of a money manager, and we cannot characterize this as defamatory"). Even if Toshiba did pay Vuzix rather than Vuzix paying Toshiba,[11] there would have been nothing disgraceful or shameful about Vuzix paying to partner with a higher-profile company to benefit from the other's name recognition. Loss leading transactions and sponsored research and development are examples of projects or arrangements that companies may enter into for reasons other than the direct financial benefit.

Therefore, while Vuzix might feel affronted, maligned, or annoyed by the these claims, none of them "rise to the necessary level of derogation" required to prove defamation, and they are substantially true. *See Chau*, 771 F.3d at 127; *Gang*, 111 F. Supp. at 29; *Maheu*, 569 F.2d 459.

## IV. The Case Should Be Dismissed Pursuant to California's Anti-SLAPP Statute and Richard Pearson's Attorneys Fees Awarded.

Finally, Vuzix's claim that Richard Pearson's speech falls outside the scope of the anti-SLAPP statute because it is commercial speech is entirely without merit. *See* Opp'n at 24. "In typical commercial speech cases, the speaker is likely to be someone engaged in commerce—that is, generally, the production, distribution, or sale of goods or services— . . . and the intended audience is likely to be actual or potential buyers or customers of the speaker's goods or services." *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 103, 229 Cal. Rptr. 3d 865, 873 (Ct. App.

---

[11] Regardless, the "gist or sting" of Richard Pearson's statement is substantially true. Vuzix announced an agreement that was not as good as it sounded: The deal was not with Toshiba Corp. of Japan; it was with a small contract manufacturing subsidiary in Hangzhou, China. And Vuzix's own SEC filings show that Vuzix received only a small portion of the described $5 million. Vuzix's SEC filings show it spent $13 million during the development period for this product on R&D.

2018). Richard Pearson was not selling any goods or services through his report about Vuzix.[12] Instead, the Vuzix Report alerted the public at large to a potential fraudulent stock promotion at Vuzix, which Richard Pearson also reported to the SEC. These actions are the type that fall squarely within the anti-SLAPP statute, that is, a communication in "a public forum in connection with an issue of public interest." *See* Cal. Civ. Proc. Code § 425.16(e). Therefore, the California anti-SLAPP statute applies. After more than a year, it is far past time for Vuzix's case to be dismissed, and Richard Pearson's attorneys' fees should be awarded to him. *See* Cal. Civ. Proc. Code § 425.16; *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 215, 123 Cal. Rptr. 2d 647, 650 (2002) (finding party is entitled to a ruling on the merits of its anti-SLAPP motion and fees request after court dismissed the case for lack of jurisdiction); *Barry v. State Bar of California*, 2 Cal. 5th 318, 326, 386 P.3d 788, 793 (2017).

## V.     CONCLUSION

For all of the reasons set forth above and in his Combined Motion, Richard Pearson respectfully requests that the Court grant his motion to dismiss and special motion to strike and award him his attorneys' fees and costs incurred in defending this action.

Dated: May 3, 2019          Respectfully submitted,

| | |
|---|---|
| s/ Christine N. Walz<br>Christine N. Walz<br>HOLLAND & KNIGHT, LLP<br>31 West 52nd Street<br>New York, NY 10019<br>Phone: (212) 513-3368<br>Fax: (212) 385-9010<br>Christine.walz@hklaw.com | Cynthia A. Gierhart<br>HOLLAND & KNIGHT LLP<br>800 17th Street NW, Suite 1100<br>202-469-5416<br>Washington, DC 20006<br>cindy.gierhart@hklaw.com<br><br>*Attorneys for Richard J. Pearson* |

---

[12] *Cf. BofI Fed. Bank v. Seeking Alpha, Inc.*, Case No. 16-MC-00025, Dkt. 27, Tr. of Feb. 9, 2016 Proceedings (S.D.N.Y. Feb. 9, 2016) (declining to adopt plaintiff's argument that short seller's article on *Seeking Alpha* was commercial speech, instead finding the article was "core noncommercial speech" that "clearly involves speech on matters of public interest"); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17CV07568PGGKHP, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018) (finding short seller's article to be protected opinion and citing *BofI Fed. Bank*, Case No. 16-MC-00025, for the proposition that the speech at issue is not commercial).