UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
VUZIX CORPORATION,

            Plaintiff,


      - against -            **MEMORANDUM AND ORDER**

                        19 Civ. 689 (NRB)

RICARDO ANTONIO PEARSON a/k/a
RICHARD PEARSON

            Defendant.


-------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Vuzix Corporation ("Vuzix") brings this action against defendant Ricardo Antonio Pearson, also known as Richard Pearson, asserting claims of libel and libel per se based on a report and an article about the plaintiff's business and financial condition that defendant made available online.  Defendant now moves to dismiss the plaintiff's amended complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Defendant also seeks to strike the amended complaint pursuant to California Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b).  For the following reasons, the defendant's motion is granted.

## I.   Background

The Court recites here only those facts necessary for resolving the present motion.

### A. Plaintiff Vuzix Corporation

Plaintiff Vuzix is a Delaware corporation with its principal place of business in New York.  Am. Compl. (ECF No. 21) ¶ 3. Plaintiff is listed on NASDAQ under the symbol "VUZI."   Id. Plaintiff develops and manufactures wearable display devices.  Id. at ¶ 12.

### B. Defendant Ricardo Antonio Pearson

Plaintiff characterizes defendant Ricardo Antonio Pearson as a short-seller in its amended complaint.  Am. Compl. ¶ 4. Defendant Pearson is currently residing in Los Angeles, California and has maintained the same mailing address since 2008.  Pearson Decl. (ECF No. 1-2) ¶ 2.  Although Pearson frequently travels internationally, he is a tax resident of California.  Id. at ¶ 4. Pearson disclaims residing in New York since 2005.  Id. at ¶ 5.

Pearson operates a website with the domain name Moxreports.com.  Am. Compl. ¶ 4.  Pearson has also been a contributor to the Seeking Alpha website, an online forum where contributors make their articles focusing on the financial market available to the public.  Id.  Seeking Alpha is operated by Seeking Alpha Inc., an entity headquartered in New York.  Id. at ¶ 10. Defendant Pearson uses the name Richard Pearson in the bylines of

his report published on Moxreports.com and the articles he contributed to <u>Seeking Alpha</u>.  Pearson Decl. ¶ 11.

Since 2009, defendant Pearson has contributed 104 articles to <u>Seeking Alpha</u>. Am. Compl. at ¶ 5.  The <u>Seeking Alpha</u> website's Terms of Use include a forum selection clause requiring each individual user of <u>Seeking Alpha</u> to submit to personal jurisdiction of federal and state courts in New York County, New York.  <u>Id.</u> at ¶ 10; Manister Decl. (ECF No. 31), Ex. 5.

On March 16, 2018, defendant Pearson published a report about plaintiff Vuzix on Moxreports.com ("Vuzix Report").  Am. Compl. ¶ 25.  On March 20, 2018, Pearson also contributed an article entitled <u>Vuzix: Far Worse Than Anyone Had Imagined</u> (together with Vuzix Report, "Vuzix Articles") to <u>Seeking Alpha</u>.  <u>Id.</u>  Plaintiff alleges that the Vuzix Articles included a number of false, misleading and defamatory statements about it.  <u>Id.</u> at ¶ 27.

C. **Procedural History**

Plaintiff initially commenced this action by filing a complaint in New York State Supreme Court on April 5, 2018.  <u>See</u> ECF No. 1, Ex. 1.  On January 23, 2019, defendant removed this case to this Court pursuant to 28 U.S.C. § 1441(b), asserting that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 based on the diversity of citizenship.  <u>See</u> ECF No. 1.  Along with his notice of removal, defendant submitted a

declaration in support of his assertion of California citizenship.
Id. at Ex. 2.

On February 22, 2019, plaintiff moved to remand this action
to New York State Supreme Court, and the parties' briefing on that
motion followed.  See ECF Nos. 10; 12; 13.  The Court denied the
plaintiff's motion to remand on April 24, 2019, finding that
defendant was domiciled in California, and therefore the Court had
subject matter jurisdiction over this case.  See ECF No. 36.  While
the motion to remand was pending, during a teleconference on
February 27, 2019, the Court granted plaintiff leave to amend the
complaint.  See ECF No. 14.  Plaintiff filed the amended complaint
on March 20, 2019. See ECF No. 21.  Subsequently, defendant moved
to dismiss the amended complaint on March 27, 2019.[1]  See ECF No.
24.

## II.  **Discussion**

Before the Court is the defendant's motion to dismiss the
amended complaint in its entirety for lack of personal
jurisdiction, failure to state a claim, and immunity under
California anti-SLAPP statute (Cal. Civil Proc. Code §425.16(b)).
See ECF No. 23.  Concluding that the Court lacks personal

---

[1]    After reviewing the parties' submissions in connection with the
defendant's motion to dismiss, the Court held a teleconference with the parties
on October 23, 2019 and gave parties an opportunity to present their positions
on the issue of  personal jurisdiction, in lieu of having full oral argument on
all three asserted grounds for dismissal.

jurisdiction over defendant, the Court dismisses the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and refrains from addressing the other two grounds.

A. **Legal Standards**

i. Federal Rule of Civil Procedure 12(b)(2)

In opposing a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, it is the plaintiff's burden to demonstrate that the Court has jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). Such a showing "entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" Id. A plaintiff can make this showing through its "own affidavits and supporting materials." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). The court deciding a motion pursuant to Rule 12(b)(2) must "construe the pleadings and affidavits in plaintiff's favor." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

In resolving questions of personal jurisdiction in a diversity action, as here, "a district court must conduct a two-part inquiry." Met. Life Ins. Co. v. Robertson-Ceco Corp., 84

5

F.3d 560, 567 (2d Cir. 1996).  "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."  Id.

      ii. New York Long-Arm Statute

Plaintiff argues that the Court has personal jurisdiction over defendant, who is not domiciled in New York but in California, under New York's long-arm statute.

New York's long-arm statute is embodied in Section 302(a) of the New York Civil Practice Law & Rules.  It contains three subsections, each of which provides a separate basis for hailing a non-domiciliary defendant into the New York Court.  A notable aspect of the statute is that "Sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries in the state, respectively, explicitly exempt causes of action for the tort of defamation, [including the torts of libel,] from their scope."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244-45 (2d Cir. 2007).  Recognizing that exclusion from New York's long-arm statute, plaintiff relies only on Section 302(a)(1) of New York Civil Practice Law and Rules ("Section 302(a)(1)") as the asserted basis of the Court's jurisdiction.  Section 302(a)(1), in relevant part, provides that "a court may exercise personal jurisdiction

over any non-domiciliary . . . , who in person or through an agent, transacts any business within the state."

"To determine the existence of jurisdiction under [S]ection 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Best Van Lines, 490 F.3d at 246 (internal quotations omitted).

"In order to demonstrate that an individual is transacting business within the meaning of Section 302(a)(1), there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n, 963 N.E.2d 1226, 1228 (N.Y. 2012). New York courts construe the phrase "transacts any business within the state" in Section 302(a)(1) "more narrowly in defamation cases than they do in the context of other sorts of litigation." Best Van Lines, 490 F.3d at 248. "[T]he posting of defamatory material on a website accessible in New York does not, without more, constitute 'transacting business' in New York for the purposes of New York's long-arm statute." Id. at 250.

As to the second part of the test, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Id. at

248 (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)).
By contrast, "a connection that is 'merely coincidental' is
insufficient to support jurisdiction." Sole Resort, S.A. de C.V.
v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir. 2006)
(quoting Johnson v. Ward, 4 N.Y.3d 516, 520 (N.Y. 2005)).

   B. **Analysis**

   Plaintiff contends that the Court has personal jurisdiction
over defendant on three distinct bases: (1) defendant's operation
of his own website Moxreports.com; (2) defendant's contribution of
articles to the website Seeking Alpha, and (3) the forum-selection
clause in the Seeking Alpha Terms of Use.  The Court addresses
each alleged basis in turn.

        i. Operation of Moxreports.com

   The Court first addresses the plaintiff's reliance on the
defendant's operation of his own website, Moxreports.com, as the
asserted basis of personal jurisdiction.  The only allegations
about Moxreports.com in the amended complaint are that defendant
has been the operator of the website and posted the Vuzix Report
on it.  Am. Compl. ¶¶ 4; 25.  The Second Circuit has already held
in Best Van Lines that a defendant does not "transact business"
under Section 302(a)(1) by engaging in those activities outside
New York.  490 F.3d at 253 (holding that defendant posting a report
with allegedly defamatory statements on his website operated in
Iowa does not constitute "transacting business" under Section

302(a)(1)).  Nowhere in the amended complaint does plaintiff allege
that defendant conducted any activity in New York in connection
with operating Moxreports.com or posting the Vuzix Report on it.
Therefore, the Court rejects the plaintiff's assertion of personal
jurisdiction based on the defendant's operation of Moxreports.com.

           ii.  Contribution of Articles to Seeking Alpha Website

     Plaintiff next argues that defendant "transacted business" in
New York by contributing 104 articles to Seeking Alpha.  The
plaintiff's argument is without merit.

     The Court begins addressing this argument by reiterating the
Second Circuit's position in Best Van Lines that "the posting of
defamatory material on a website accessible in New York does not,
without more, constitute 'transacting business' in New York for
the purposes of New York's long-arm statute."  490 F.3d at 250.
The result is the same even when the allegedly defamed person or
entity is a resident of New York.  See SPCA of Upstate New York,
Inc. v. Am. Working Collie Ass'n, 74 A.D.3d 1464 (N.Y. App. Div.
3d Dep't 2010), aff'd 18 N.Y.3d 400 (N.Y. 2012).

     Here, the only activities by defendant plaintiff refers to as
the basis of personal jurisdiction are the alleged posting of
defamatory materials on his website and Seeking Alpha.  However,
there is no allegation in the amended complaint suggesting—and
plaintiff even do not contend so in their motion papers—that any
among the Vuzix Articles or the defendant's articles contributed

to Seeking Alpha was "purposefully directed to the residents of New York rather than a nationwide audience." Best Van Lines, 490 F.3d at 253.   Moreover, nowhere in the amended complaint does plaintiff allege any physical or commercial activity by defendant in or towards New York.   Therefore, plaintiff has failed to allege any "purposeful activities" by defendant in New York that would justify bringing defendant before this Court under Section 302(a)(1).[2]

Plaintiff attempts to distinguish Best Van Lines from this case on two separate grounds: (1) defendant contributed his articles to Seeking Alpha "for his own financial gain," and (2) the website at issue in Best Van Lines was based in Ohio whereas Seeking Alpha is based in New York.   Pl. Mem. of Law in Opp. (ECF No. 33) at 7 n. 8.   The Court addresses each ground in turn.

First, the allegation of defendant's financial motive in contributing articles to Seeking Alpha does not warrant a different

---

[2]     Plaintiff seeks to attach special significance to the defendant's online activities alleged here with the number of articles defendant allegedly contributed to Seeking Alpha.   See Mem. of Law in Opp. (ECF No. 33) at 7 n. 8. The plaintiff's reliance on the number of articles defendant contributed to Seeking Alpha to cure the defect in its pleading of jurisdiction is misplaced for two reasons.   First, the number of articles defendant contributed is immaterial in the jurisdictional inquiry under Section 302(a)(1) because "[t]ransacting business under the New York long-arm statute has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York."   Broad Horizons, Inc. v. Central Crude Ltd., No. 94 Civ. 1593 (PKL), 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (emphasis added).   Second, 103 articles that are not about Vuzix cannot be considered as part of the purported "transaction of business" by defendant because contribution of those articles would not pass the second step of jurisdictional inquiry under Section 302(a)(1): whether the cause of action at issue "arises from such a business transaction."   Best Van Lines, 490 F.3d at 246.

outcome.  In <u>Naples v. Janesville Apparel Co.</u>, 289 N.Y.S.2d 268, 269 (N.Y. App. Div. 2d Dep't 1968), a New York City fireman brought a product liability action against a Wisconsin corporation manufacturing fireman's "turnout" coats.  The plaintiff alleged that the New York state court had personal jurisdiction over the defendant under Section 302(a)(1) because the defendant "transacted business" in New York by advertising its product in a magazine that was published in New York and widely read by firemen across the country.  <u>Id.</u> at 269-70.  The Appellate Division concluded that such activity alone was insufficient to constitute a "transaction of any business within the state" for the purpose of Section 302(a)(1).[3]  <u>Id.</u> at 270.  The Appellate Division's approach in <u>Naples</u> has been expanded for the broader principle that "mere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state, or the solicitation is accompanied by a fair measure of the defendant's permanence and

---

[3]     In reaching this conclusion, the Appellate Division noted that, although the plaintiff alleged that he purchased the defendant's product at issue in New York, there was no allegation that the defendant itself shipped the product into New York.  <u>Naples</u>, 289 N.Y.S.2d at 270.  In the absence of such allegation, it was reasonable to infer the possibility of the defendant shipping the product to an intermediary outside of New York, which then shipped it into New York.  <u>Id.</u>  The Appellate Division opined that supplying a product to an out-of-state intermediary that might thereafter ship the product into New York in response to an order from New York does not constitute a "purposeful activity" requisite for conferral of personal jurisdiction under Section 302(a)(1).  <u>Id.</u>

continuity in New York which establishes a New York presence." O'Brien v. Hackensack U. Med. Ctr., 760 N.Y.S.2d 425, 427 (N.Y. App. Div. 1st Dep't 2003).  The plaintiff's amended complaint at most can be viewed as alleging that defendant, from outside New York, enabled a New York-based publication to circulate articles that might help him gain financially.  Without more, this conduct does not constitute "transacting business" under Section 302(a)(1).

Plaintiff alternatively attempts to distinguish Best Van Lines based on the domicile of website operator.  The Court finds this argument uncompelling.  As discussed above, the touchstone in Section 302(a)(1) jurisdictional inquiry is whether the defendant's activities were "purposefully directed to New Yorkers rather than a nationwide audience."  Best Van Lines, 490 F.3d at 253.  The amended complaint does not include any allegation about the residency distribution of Seeking Alpha audience and does not explain how the domicile of Seeking Alpha's operator would in any manner elevate the significance of the defendant's activities on the website under Section 302(a)(1).

In sum, plaintiff has failed to distinguish Best Van Lines from this case.  Therefore, the Court finds that Best Van Lines is controlling here and concludes that the alleged online activities by defendant fall short of "transacting business" under Section 302(a)(1).

iii.  Seeking Alpha Terms of Use

As an alternative to its assertion of personal jurisdiction under Section 302(a)(1), plaintiff contends that the Court has personal jurisdiction over defendant pursuant to the forum-selection clause in the Seeking Alpha's Terms of Use.  According to plaintiff, defendant had subjected himself to the forum-selection clause by contributing the Vuzix Articles to Seeking Alpha.  The Court disagrees.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  "[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."  Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009).  However, only when the "non-signatory is 'closely related' to a signatory," may a non-signatory enforce the forum selection clause against another signatory.  Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 723 (2d Cir. 2013).  A non-signatory has such close relationship with a signatory when "the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause."  Id.  Courts have generally found such "close relationship" in two kinds of situations: (1) "where the non-signatory had an active

13

role in the transaction between the signatories," or (2) "where the non-signatory had an active role in the company that was the signatory." Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc., 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018) (collecting cases). Also, "[n]on-signatory alter-egos, corporate executive officers, and successors-in-interest have all, at least in some instances, satisfied the 'closely related' test." Id.

Here, plaintiff does not allege that it had any role in the transaction between defendant and Seeking Alpha. Although plaintiff was the subject of defendant's article on Seeking Alpha at issue, plaintiff does not allege—and rather appears to explicitly disclaim—any involvement in defendant's preparation and contribution of the Vuzix Articles. Moreover, plaintiff does not allege any interaction with Seeking Alpha, let alone any active role in the operation of the website or its operator. Lastly, plaintiff does not allege that it is an alter ego, corporate executive officer, or a successor-in-interest of Seeking Alpha Ltd., which is the other signatory than defendant in the Seeking Alpha Terms of Use. Having failed to show—or even allege—that it is "closely related" to Seeking Alpha Ltd., plaintiff has failed to carry its burden to establish a prima facie case of its entitlement to enforce the forum selection clause in Seeking Alpha Terms of Use against defendant.

iv.  Due Process

As exercising personal jurisdiction over defendant would be inconsistent with New York's jurisprudence, we need not, and do not, consider whether exercising jurisdiction would comport with due process.  See Best Van Lines, 490 F.3d at 242 (a court conducts the due process analysis "if, but only if," it has concluded that jurisdiction is appropriate under New York law).

## III.  Conclusion

Having concluded that the Court does not have personal jurisdiction over defendant, the Court dismisses the plaintiff's amended complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Clerk of Court is respectfully directed to close the case.  This order resolves ECF Docket entry No. 23.

Dated:    New York, New York
          November 6, 2019

          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE